BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section
JAMES E. DOCHTERMAN (Cal. Bar No. 256396)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
    312 North Spring Street, 11th Floor
    Los Angeles, California 90012
    Telephone: (213) 894-2686
    Facsimile: (213) 894-6269
    E-mail:   James.Dochterman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 2:25-CV-04631 |
|---|---|
|        Plaintiff, | **COMPLAINT FOR FORFEITURE** |
|         v. | 18 U.S.C. § 981(a)(1)(A) and (C) [FBI] |
| VIRTUAL CURRENCY AND $2,061,517.68 IN U.S. CURRENCY, | |
|        Defendants. | |

Plaintiff United States of America brings this claim against defendants Virtual Currency and $2,061,517.68 in U.S. Currency, and alleges as follows:

1

**JURISDICTION AND VENUE**

2      1.     Plaintiff United States of America brings this in rem

3 forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).[1]

4      2.     This Court has jurisdiction over the matter under 28 U.S.C.

5 §§ 1345 and 1355.

6      3.     Venue lies in this District pursuant to 28 U.S.C. §§ 1355

7 and 1395.

8

**PERSONS AND ENTITIES**

9      4.     The plaintiff is the United States of America.

10      5.     The defendants Virtual Currency (the "defendant Virtual

11 Currency") and $2,061,517.68 in U.S. Currency (the "defendant

12 currency") are collectively referred to herein as "the defendant

13 assets."  The defendant Virtual Currency[2] consists of the following:

14          a.    The USDT[3] transferred to the government following the

15 issuance of a July 29, 2024 federal seizure warrant, consisting of an

16 equivalent amount of USDT frozen by the government on August 25,

17 2023, associated with the virtual currency addresses listed below

18 (collectively, the "USDT Addresses") and more specifically described

19 as (i) 1,867,051.090192 USDT associated with virtual currency

20 addresses ending in "d774", "43ac", and "2cfd" on the Ethereum

21

22

23

24          [1] All dates set forth in the Complaint are on or about the dates
indicated, and all amounts or sums are approximate.

25          [2] Virtual currencies are digital tokens of value circulated as
substitutes for traditional fiat currency and sent to and received
26 from virtual currency addresses.  Virtual currencies are not issued
by any government or bank like traditional fiat currency, such as the
27 U.S. dollar, but rather are generated and controlled through computer
software.

28          [3] USDT is also known as Tether and is a "stablecoin" type of
virtual currency whose value is pegged to the U.S. dollar.

1  network; and (ii) 131,864.958226 USDT associated with virtual

2  currency addresses ending in "diwg" and "Qnq1" on the Tron network;

3          b.    The virtual currency seized following the issuance of

4  a federal seizure warrant on August 25, 2023 from virtual currency

5  wallets (the "August 2023 Wallets"), which are more particularly

6  described as (i) 0.98764847 BTC, 0.748382350077596 ETH, 2,225.664765

7  TRX, 27,440.236603 USDT on the Ethereum network and 12,786.27805 USDT

8  on the Tron network; (ii) 0.0356658763729553 ETH, 1,000 USDT on the

9  Ethereum network, and 88.306384186 TON on the Ethereum network; (iii)

10  0.116887384939969 ETH, and 50 USDT on the Ethereum network; (iv)

11  0.00008155 BTC; (v) 80,248.604484476 TON on the Ethereum network;

12  (vi) 63,776.869432785 EVER; (vii) 0.00154878 ETH; (viii) 162.86215848

13  BTC; (ix) 1.44223059 BTC; (x) 78.74 XMR; (xi) 47.81 XMR; (xii)

14  1.84681961 XMR; (xiii) 0.0235862 XMR; (xiv) 125.0562078 XMR; (xv)

15  0.04399859 XMR; (xvi) 0.1599822 BTC; and (xvii) 5.31848493 BTC; and

16          c.    The virtual currency seized following the issuance of

17  a federal seizure warrant on April 18, 2025 from virtual currency

18  wallets (the "April 2025 Wallets"), which are more particularly

19  described as (i) 22,622.300445 TRX, and 718,191.493006 USDT on the

20  Tron network; (ii) 30.86066699 BTC; and (iii) 0.015326022542196328

21  ETH, and 262.30293 USDT on the Ethereum network.

22      6.    The defendant currency represents the U.S. dollar

23  equivalent to the USD Coin ("USDC")[4] frozen by the government,

24  associated with the virtual currency addresses listed below

25  (collectively, the "USDC Addresses"), transferred to the government

26  on October 27, 2023 following the issuance of a federal seizure

27

28          [4] USDC is a "stablecoin" type of virtual currency whose value is
pegged to the U.S. dollar.

3

warrant for the contents of the USDC Addresses, and is more particularly described as (i) 839,993.06 USDC associated with a virtual currency address ending in "d774" on the Ethereum network (ii) 74,248.29 USDC associated with a virtual currency address ending in "TEPd" on the Tron network; (iii) 49,914.71 USDC associated with a virtual currency address ending in "43ac" on the Ethereum network; and (iv) 1,097,361.62 USDC associated with a virtual currency address ending in "2cfd" on the Ethereum network.

7.    The defendant assets were seized by the Federal Bureau of Investigation at 11000 Wilshire Boulevard, Suite 1700 in Los Angeles, California and are currently in or will be transferred to the custody of the United States Marshals Service in this District, where they will remain subject to this Court's jurisdiction during the pendency of this action.

8.    The interests of Rustam Rafailevich Gallyamov and the victims of the Qakbot conspiracy may be adversely affected by these proceedings.

**BASIS FOR FORFEITURE**

**I.    Gallyamov is Indicted as A Result of His Orchestration of a Scheme to Infect Victim Computers and Extort Ransom Payments from Victims.**

9.    Qakbot (or Qbot) was a malicious computer software developed, deployed, and controlled since 2008 by members of a cybercriminal conspiracy led by Gallyamov.  From at least 2019, Qakbot conspirators infected hundreds of thousands of victim computers in the Central District of California and elsewhere with

the Qakbot malware,[5] thereby gaining unauthorized access to and
control of those computers.  This network of compromised victim
computers was commonly referred to as the Qakbot botnet.[6]

10.  After the Qakbot botnet was disrupted in an international
law enforcement action in August 2023, the Qakbot conspirators
continued to seek and gain unauthorized access to victim computers
using means other than the Qakbot botnet.  One technique that they
used was conducting spam bomb attacks[7] on employees of victim
companies and then posing as information technology workers to trick
victims into executing malicious code or otherwise providing access
to company computers.

11.  Qakbot conspirators used their unauthorized access to
victim computers to facilitate the further infection of those victim
computers with additional malicious software in the form of
ransomware.  In coordination with the Qakbot conspiracy, ransomware
actors, including Prolock, Doppelpaymer, Egregor, REvil, Conti, Name
Locker, Black Basta and Cactus, infiltrated victim computer networks
and deployed ransomware.  Typically, as part of these ransomware
attacks, data was also stolen from victim computers.  Victims were
then extorted to regain access to their data and to prevent the
further dissemination of their private data by the attackers.

---

[5] "Malware" is malicious computer software intended to cause a
victim computer to behave in a manner inconsistent with the, and
typically unbeknownst by, the victim computer's owner or user.

[6] A "botnet" is a network of infected computers (each a "bot")
that have been infected with malware and are being controlled by a
group.

[7] A "spam bomb attack" is a type of cyberattack that floods a
victim's inbox by using automated techniques to sign the victim up
for a large number of email subscriptions.

12.    Ransomware victims typically paid ransoms in Bitcoin (BTC). Gallyamov and the Qakbot conspirators were paid a share of the ransom for each victim whose computers were compromised by the Qakbot conspiracy.

13.    On May 2, 2025, in case No. 2:25-CR-340-SB, a grand jury in the Central District of California returned an indictment charging Gallyamov with violations of 18 U.S.C. §§ 371 (conspiracy to violate 18 U.S.C. § 1030) and 1349 (conspiracy to violate 18 U.S.C. § 1343) for his role in the Qakbot conspiracy.  The indictment also includes a forfeiture allegation providing that upon his conviction, Gallyamov must forfeit all traceable proceeds, such as the defendant assets, of the Qakbot conspiracy.

14.    As discussed below, the defendant assets are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C) because they constitute traceable proceeds of and were involved in money laundering offenses pertaining to the payment of ransoms for computers infected by ransomware as a result of computer intrusions by members of the Qakbot conspiracy.

15.    The virtual currencies discussed in this complaint include:

a.    BTC, a virtual currency that exists on the Bitcoin blockchain.[8]

b.    Ether ("ETH"), a virtual currency that exists on the Ethereum blockchain (also referred to as the Ethereum network).

---

[8] Many virtual currencies publicly record all of their virtual currency transactions (as well as each virtual currency address balance) on what is known as a "blockchain." The blockchain is essentially a public ledger, run by a decentralized network of computers and containing an immutable and historical record of every transaction utilizing that blockchain's technology.  There are different blockchains for different types of virtual currencies.

c.    The stablecoin USDT ("Tether"), which exists on multiple blockchains, including the Ethereum and Tron blockchains.

d.    The stablecoin USDC, which exists on multiple blockchains, including the Ethereum and Tron blockchains.

e.    Tron ("TRX"), a virtual currency that exists on the Tron blockchain (also referred to as the Tron network).

f.    Toncoin ("TON"), a virtual currency that operates on the Ethereum blockchain; and

g.    Monero ("XMR"), a privacy-enhanced virtual currency that operates on the Monero blockchain.

## II.    The Defendant Assets Constitute Traceable Ransom and Laundered Proceeds.

16.    As part of the ransom and money laundering scheme, upon receipt of the initial ransom proceeds, Qakbot conspirators engaged in multiple transactions moving virtual currency through a series of intermediary addresses in a manner common to money laundering schemes and intended to conceal the criminal origin of the proceeds.  These transactions involved unnecessary or duplicative transactions into and out of wallets or addresses and through decentralized services on the blockchain to frustrate tracing and avoid attention from law enforcement.  As described below, ransom proceeds were also comingled with other victims' ransom proceeds as well as unknown sources, further demonstrating the coconspirators intent to conceal the criminal origin of the virtual currency.

### A.    The August 2023 Wallets Held Ransom and Laundered Proceeds.

17.    Based on their review of blockchain transaction records, records from virtual assets service providers, Qakbot conspirator communications and records, and analysis using commercial blockchain

7

analysis tools, law enforcement officers determined that numerous

deposits made to the August 2023 Wallets consisted of ransoms paid to

ransomware groups, which in turn paid Gallyamov.

18.    The deposits of ransoms to the August 2023 wallets

primarily came from clusters of addresses identified by law

enforcement as belonging to ransomware groups or known ransomware

actors.    Analysis by law enforcement showed that ransoms paid by

victims were often collected or pooled in clusters of addresses

associated with that ransomware group before shares of the ransom

payment were parceled out, including to Gallyamov.    Analysis by law

enforcement further showed that at times virtual currency held in the

August 2023 Wallets was converted from BTC to other forms of virtual

currency using blockchain-based services or virtual asset service

providers.

19.    Analysis of transactions involving the August 2023 Wallets

between September 2022 and April 2023 showed that ransom payments

made to Gallyamov in BTC made up more than 80 percent of the value of

the virtual currency seized from the August 2023 Wallets.

20.    The ransom payments to the August 2023 Wallets include but

are not limited to the following:

a.    On October 13, 2022, a New York law firm paid a ransom

of 15.61359 BTC to a ransomware group.    That payment moved through a

series of intermediary addresses associated with a known Qakbot

coconspirator ("Coconspirator 1").    That same day, 1.561359 BTC,

identified by Coconspirator 1 to Gallyamov as a 10% payment for the

New York law firm ransom was paid into an address in the August 2023

Wallets.    The source of the funds for that payment was a comingled

1   39.999865 BTC ransom paid by a Wisconsin marketing company to another

2   Qakbot-affiliated ransomware group on May 12, 2022.

3              b.    On November 16, 2022, an Indiana technology company

4   was the victim of a ransomware attack and paid a ransom.  On November

5   28, 2022, a deposit of 15.006 BTC was made from the cluster of

6   addresses associated with Coconspirator 1 to an address in the August

7   2023 Wallets.  Gallyamov identified that payment to a coconspirator

8   as his share of the ransom paid by the Indiana technology company.

9              c.    On December 16, 2022, a Missouri media company paid a

10  ransom of 58.4521985 BTC to a ransomware group.  After moving through

11  a series of intermediary addresses, 19.1543 BTC of the ransom was

12  paid to an address in the August 2023 Wallets.  Gallyamov recorded

13  that December 20, 2022, payment in his payment ledger, and identified

14  it to a coconspirator as his share of the comingled ransom paid by a

15  Tennessee music company in connection with a ransomware attack.

16             d.    In March 2023, a Colorado technology company paid a

17  ransom of 179.760005 BTC to a ransomware group.  Gallyamov recorded a

18  March 20, 2023, payment of 17.976 BTC, which was paid to an address

19  in the August 2023 wallets, in his payment ledger as his share of the

20  ransom paid by the Colorado technology company.

21             e.    In September 2022, a Maryland bank was the victim of a

22  ransomware attack and paid a ransom of approximately $175,000 in BTC.

23  On October 19, 2022, 0.8935 BTC, identified by Coconspirator 1 to

24  Gallyamov as a 10% payment for the Maryland bank ransom was paid into

25  an address in the August 2023 Wallets.

26             f.    On November 14, 2022, 8.631 BTC was paid into an

27  address in the August 2023 Wallets from the cluster of addresses

28  associated with Coconspirator 1.  Gallyamov recorded that payment in

his payment ledger as his share of the ransom paid by an Austrian hospitality company.

g.    On November 14, 2022, 5.5335 BTC was paid into an address in the August 2023 Wallets from the cluster of addresses associated with Coconspirator 1.  Gallyamov recorded that payment in his payment ledger as his share of the ransom paid by an Illinois engineering firm.

h.    On September 26, 2022, 1.0315 BTC was paid into an address in the August 2023 Wallets from the cluster of addresses associated with Coconspirator 1.  Gallyamov identified that payment to a coconspirator as his share of the ransom paid by a Canadian home furnishing company.  The source of the funds for that payment of 1.0315 BTC was a 5.14250156 BTC ransom paid by a Kentucky law firm to a ransomware group.

i.    On March 13, 2023, 4.9209 BTC was paid into an address in the August 2023 Wallets.  Gallyamov identified that payment in his payment ledger as his share of the ransom paid by a Virginia maritime engineering company. The source of the funds for that payment of 4.9209 BTC, in turn, was a 243.9422269 BTC ransom paid by a North Dakota legal outsourcing company.

j.    On March 7, 2023, a New York law firm paid a ransom of 40.204054 BTC to a ransomware group.  On March 13, 2023, 4.0204 BTC originating from that ransom payment was deposited into an address in the August 2023 Wallets.  Gallyamov identified that payment in his payment ledger as his share of the ransom paid by the New York law firm.

k.    On November 30, 2022, an Alabama bank paid a ransom of 11.595551815 BTC to a ransomware group.  On December 29, 2022,

1.1599433 BTC originating from that ransom payment was deposited into an address in the August 2023 Wallets. Gallyamov identified that payment in his payment ledger as his share of the ransom paid by the Alabama bank.

l.    On March 13, 2023, a Michigan manufacturing company paid a ransom of 4.08106996 BTC to a ransomware group. On March 16, 1.9895 BTC from that ransom payment was deposited into an address in the August 2023 Wallets. Gallyamov identified that payment in his payment ledger as his share of the ransom paid by a North Carolina freight company. Then, on April 13, 2023, an additional 1.6683 BTC originating from the ransom payment was deposited into another address in the August 2023 Wallets. Gallyamov identified that payment in his payment ledger as his share of the ransom paid by a New York food company.

m.    On September 29, 2022, 63.14 BTC was deposited into an address in the August 2023 Wallets. This payment originated from a cluster of addresses associated with a Qakbot-affiliated ransomware group. The address that sent the 63.14 BTC had received a total of 143.50 BTC in an earlier transaction and sent 40.459948 BTC to a cluster of addresses associated with Coconspirator 1. Gallyamov provided the address that received 63.14 BTC to Coconspirator 1, who sent Gallyamov the following calculation, indicating that the 63.14 BTC represented Gallyamov's share of ransom proceeds: "143.5 – 12% = 128.26 /2 = 63,14."

**B.    The USDC Addresses and USDT Addresses Held Ransom and Laundered Proceeds that Were Used to Promote the Qakbot Conspiracy.**

21.    In the same file where law enforcement identified information about the August 2023 Wallets, investigators also found

1  details identifying the USDC Addresses and the USDT Addresses.  Those

2  addresses corresponded to virtual currency stored on ledger hardware

3  wallets owned by Gallyamov.

4      22.  The wallet addresses stored in those ledger devices were on

5  the Ethereum and Tron blockchains, which are capable of holding

6  multiple types of virtual currency or tokens at a single wallet

7  address.  The four USDC Addresses are the same addresses as four of

8  the six USDT Addresses, with both USDC and USDT seized from the same

9  ledger addresses.  The majority of the virtual assets held in the

10  USDT Addresses and the USDC Address were held on the four overlapping

11  wallet addresses.

12      23.  Launderers often convert laundered virtual currency to

13  stablecoins and transfer those proceeds into pooling addresses and

14  thereafter use the laundered funds to pay expenses or coconspirators.

15  These transfers are made to conceal the underlying source of the

16  funds and to avoid alerting law enforcement to the criminal activity

17  connected to the laundered funds.  By moving crime proceeds through

18  numerous addresses before parking them in pooling accounts like the

19  USDT Addresses and USDC Addresses, Gallyamov attempted to conceal the

20  nature, source, location, ownership, or control of the proceeds.

21      24.  Based on their review of blockchain transaction records,

22  records from virtual assets service providers, Qakbot conspirator

23  communications and records, and analysis using commercial blockchain

24  analysis tools, law enforcement officers identified the funding

25  sources for the USDT Addresses and USDC Addresses.  They were funded,

26  primarily with USDC and USDT originating from virtual currency

27  exchanges outside the United States in 2021 and 2022.

28

25.  Analysis of transactions involving the USDT Addresses and USDC Addresses show that they were used in money laundering transactions and were also used to make payments of ransom proceeds to Qakbot coconspirators to facilitate the operation of the conspiracy.  Those transactions include but are not limited to the following:

a.   On August 2, 2022, receiving 1,381 USDT from a coconspirator.

b.   On April 17, 2023, sending 50,000 USDT to an address in the August 2023 Wallets, comingling the ransom proceeds.

c.   On July 3, 2023, sending 130,000 USDT in two transactions to an address in the August 2023 Wallets, comingling the ransom proceeds.

d.   On August 19, 2023, sending 10,000 USDT to an address in the August 2023 Wallets, comingling the ransom proceeds.

e.   On February 1, 2022, sending 200,000 USDT to an address provided by an individual who would exchange the USDT for fiat currency for a fee.

f.   On February 24, 2023, sending 300,000 USDT to an address provided by an individual who would exchange the USDT for fiat currency for a fee.

g.   On July 25, 2023, sending 133,900 USDT to an address provided by an individual who would exchange the USDT for fiat currency for a fee.

26.  Sending payments to addresses identified by Qakbot coconspirators for payment, including the following:

a.   On April 3, 2022, sending 1,800 USDT to a coconspirator.

13

b.    On July 4, 2022, sending 1,800 USDT to a

coconspirator.

c.    On July 8, 2022, sending 750 USDT to a coconspirator.

d.    On July 15, 2022, sending 20,400 USDT to one

coconspirator, and 15,000 USDT to a second coconspirator.

e.    On September 2, 2022, sending 1,800 USDT to a

coconspirator.

f.    On December 29, 2022, sending 3,000 USDT to one

coconspirator, 3,600 USDT to a second coconspirator, and 6,400 USDT

to a third coconspirator.

g.    On December 30, 2022, sending 15,000 USDT to each of

three coconspirators.

h.    On April 3, 2023, sending 1,500 USDT to one

coconspirator and 3,250 USDT to a second coconspirator.

i.    On June 30, 2023, sending 21,400 USDT to a

coconspirator.

**C.    The April 2025 Wallets Received Ransom and Laundered
        Proceeds.**

27.    Based on their review of blockchain transaction records,

records from virtual assets service providers, Qakbot conspirator

communications and records, and analysis using commercial blockchain

analysis tools, law enforcement officers determined that numerous

deposits made to the April 2025 Wallets consisted of ransoms paid to

ransomware groups, which in turn paid Gallyamov.  Those ransom

payments to the August 2023 Wallets include but are not limited to

the following:

a.    In December 2024, a New Jersey company was the victim

of a ransomware attack and paid a ransom of 15.94 BTC on December 23,

14

2024.  That payment was immediately split up, with 12.754 BTC going to an address in the April 2025 Wallets.  The funds were thereafter dissipated from the that wallet address in a series of transfers of roughly $40,000 to $50,000 in BTC to virtual asset service providers outside the United States.

b.   In January 2025, a Wisconsin Company was the victim of a ransomware attack and paid a ransom of 20.274 BTC on January 16, 2025.  That payment was immediately split up, with 14.189 BTC going to an address in the April 2025 Wallets.  The funds were thereafter dissipated from the that wallet address in a series of transfers to non-custodial instant cryptocurrency exchanges.

c.   In January 2025, a Pennsylvania company was the victim of a ransomware attack and paid a ransom of 28.31 BTC on January 17, 2025.  That payment was immediately split up, with 19.8142 BTC going to an address in the April 2025 Wallets.

d.   In January 2025, a Maryland company was the victim of a ransomware attack and paid a ransom of 9.417 BTC on January 24, 2025, to an address in the April 2025 Wallets.

1

**FIRST CLAIM FOR RELIEF**

2    28.  Paragraphs 1 through 27 are incorporated by reference as if

3    fully set forth herein.

4    29.  Based on the above, plaintiff alleges that the defendant

5    assets constitute property involved in multiple or attempted

6    transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i),

7    (a)(1)(B)(i), (a)(2)(A), (a)(2)(b)(i) and/or (h), or property

8    traceable to such property, with the specified unlawful activity

9    being a violation of 18 U.S.C. §§ 1030 (relating to computer fraud

10    and abuse) and/or 1343 (wire fraud).  The defendant assets are

11    therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

12

**SECOND CLAIM FOR RELIEF**

13    30.  Paragraphs 1 through 27 are incorporated by reference as if

14    fully set forth herein.

15    31.  Based on the above, plaintiff alleges that the defendant

16    assets constitute property involved in multiple or attempted

17    transactions in violation of 18 U.S.C. § 1957(a), with the specified

18    unlawful activity being a violation of 18 U.S.C. §§ 1030 (relating to

19    computer fraud and abuse) and/or 1343 (wire fraud).  The defendant

20    assets are therefore subject to forfeiture pursuant to 18 U.S.C. §

21    981(a)(1)(A).

22

**THIRD CLAIM FOR RELIEF**

23    32.  Paragraphs 1 through 27 are incorporated by reference as if

24    fully set forth herein.

25    33.  Based on the above, plaintiff alleges that the defendant

26    assets constitute or are derived from proceeds traceable to, or a

27    conspiracy to commit violations of 18 U.S.C. §§ 1030 (relating to

28    computer fraud and abuse), which is a specified unlawful activity as

16

defined in 18 U.S.C. § 1956(c)(7)(D), and/or 1343 (wire fraud), which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B).  The defendant assets are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff the United States of America prays:

(a)  that due process issue to enforce the forfeiture of the defendant assets;

(b)  that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c)  that this Court decree forfeiture of the defendant assets to the United States of America for disposition according to law; and

(d)  for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: May 22, 2025

BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section


 */s/ James E. Dochterman*
JAMES E. DOCHTERMAN
Assistant United States Attorney
Asset Forfeiture & Recovery Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**VERIFICATION**

I, Jacob T. Frederick, hereby declare that:

1.    I am a Special Agent with the Federal Bureau of Investigation.

2.    I have read the above Complaint for Forfeiture and know the contents thereof.

3.    The information contained in the Complaint is either known to me personally, was furnished to be my official government sources, or was obtained pursuant to legal process.  I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 22, 2025, at Los Angeles, California.

Jacob T. Frederick