BILAL A. ESSAYLI
Acting United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section
JAMES E. DOCHTERMAN (Cal. Bar No. 256396)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
    312 North Spring Street, 11th Floor
    Los Angeles, California 90012
    Telephone: (213) 894-2686
    Facsimile: (213) 894-6269
    E-mail: James.Dochterman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>VIRTUAL CURRENCY AND $2,061,517.68 IN U.S. CURRENCY,<br><br>    Defendants. | Case No. 2:25-cv-04631-SB-MAR<br><br>**GOVERNMENT'S SUPPLEMENTAL STATUS REPORT PURSUANT TO COURT'S JULY 22, 2025, ORDER (Dkt. No. 17)**<br><br>Status Conf. Date: September 12, 2025<br>Status Conf. Time: 8:30 a.m. |

    Plaintiff United States of America ("the government") respectfully submits this supplemental status report pursuant to the Court's July 22, 2025, minute order. Dkt. No. 17. As reflected in the minute order, the Court heard from the government during the July 22, 2025, status conference regarding the government's plans to serve Rustam Rafailevich Gallyamov and notify Mr. Gallyamov's scheme victims of the lawsuit

pendency and their rights with respect thereto. In addition, the Court set a further status conference for September 12, 2025, at 8:30 a.m. Pursuant to the Court's minute order, the government hereby reports on subsequent events occurring after the July 22, 2025, status conference relative to the issues the Court has raised.

As the Court's file will reflect, on May 22, 2025, the government filed an *in rem* civil forfeiture complaint against defendants Virtual Currency and $2,061,517.68 in U.S. Currency (collectively, the "defendant property"). Dkt. No. 1. The government alleges in the complaint that the defendant property is subject to forfeiture because it represents traceable proceeds of ransomware attacks, and was involved in money laundering transactions when the ransom proceeds were moved through various wallets or addresses to frustrate tracing and avoid attention from law enforcement. *Id.* at ¶¶ 16-33. The ransomware attacks were orchestrated by Rustam Rafailevich Gallyamov, whom the government has indicted. *Id.* at ¶¶ 9 and 13. Mr. Gallyamov and his co-conspirators infected hundreds of thousands of victim computers with the Qakbot malware, thereby gaining access to those computers, then required victims to pay ransoms in order to regain access to their computers. *Id.* at ¶¶ 9 and 11. Mr. Gallyamov and victims of his Qakbot conspiracy are persons who may have an interest in the defendant property. *Id.* at ¶ 4.

The government's July 10, 2025, status report advised the Court that Fed. R. Civ. P. 4(m)'s 90-day deadline for personal service applied to this case relative to victims and was inapplicable to Mr. Gallyamov because that statute exempts from the deadline service on an individual in a foreign county (here Russia) under Fed. R. Civ. P. 4(f). Dkt. No. 1:26-2:3. However, the government's statement was inaccurate, and the government sincerely apologies to the Court for the filing's erroneous assertion because Fed. R. Civ. P. 4 is inapplicable to this case. As explained below, the government must provide notice to Mr. Gallyamov and the victims consistent with statutes other than the Federal Rules of Civil Procedure, the applicable United States treaty with Russia, and due process.

2

The instant case is an *in rem* civil forfeiture action. Accordingly, this action is governed by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"), as well as the Federal Rules of Civil Procedure, except that the Federal Rules of Civil Procedure do not apply "to the extent that they are inconsistent with the[] Supplemental Rules." *See* Supplemental Rule A(2). Because this is an *in rem* civil forfeiture action governed by the Supplemental Rules, the government is not required to personally serve its *in rem* civil forfeiture complaint pursuant to the Federal Rules of Civil Procedure. *Id.* As the Court noted in *United States v. $22,050 in U.S. Currency*, 595 F.3d 318, 320 n.1 (6th Cir. 2010):

> Under the Supplemental Rules, the government does not have to comply with the formal service of process provisions of Federal Rule of Civil Procedure 4 when providing notice of forfeiture to potential claimants. This is because potential claimants are not defendants in an *in rem* action, the seized objects or assets are.

The above-referenced Supplemental Rules themselves implicitly provide that service must be consistent with due process (*i.e.*, by providing that the government must "send[] notice . . . by means reasonably calculated to reach the claimant"), and case law recognizes that due process requires only that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950) (citations omitted). *See also $22,050 in U.S. Currency*, 595 F.3d at 320 n.1 (instead of Fed. R. Civ. P. 4 service, "all that is required is that the government provide notice of the action 'to any person who reasonably appears to be a potential claimant on the facts known to the government … by means reasonably calculated to reach the claimant.' (referencing Supplemental Rule G(4)(b)(iii)(A)). Thus, certified mail [used by the government to send notice in the case] was sufficient").

Furthermore, unlike *in personam* cases where a summons and complaint must be personally served on an individual or entity defendant, due process does not require actual notice or the actual receipt of notice of litigation proceedings. *Dusenbery v.*

*United States*, 534 U.S. 161, 170 (2002) ("[w]e note that none of our cases cited by either party has required actual notice in proceedings such as this"); *United States v. Real Prop.*, 135 F.3d 1312, 1316 (9th Cir. 1998) ("due process requires that the government send notice by mail or other means as certain to ensure actual notice, but does not require that the interested party actually receive notice.") (citations and internal quotation marks omitted). Nor does due process require the government to exert "heroic efforts" to provide notice. *Dusenbery*, 534 U.S. at 170. Furthermore, "[a] potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." Supplemental Rule G(4)(b)(v).

With this clarification regarding the law and the government's legal obligations, the government addresses below the issues the Court has directed the government to discuss. As mentioned above, the government's complaint identifies Mr. Gallyamov and victims of his Qakbot conspiracy as persons who may have an interest in the defendant property. With respect to the victims, on August 13, 2025, the government sent letters by certified mail/return receipt requested to 83 victims the government was able to identify (*see* Supplemental Rule G(4)(b)), which notified those victims of the process to seek recovery outside the judicial proceedings via a petition for remission, or conversely of their right and the deadline to file in the instant judicial action a claim contesting forfeiture of the defendant property and an answer to the Complaint.[1] As to any Qakbot victims the government has not been able to identify, the government has published a notice on the internet advising them of their rights to submit petitions for remission, claims, and answers. The deadline for those unidentified victims to file a claim is October 18, 2025, (60 days after the first date of publication on an internet website) and

---

[1] Should the victims notified by the government's August 13, 2025, letter decide to proceed judicially, the deadline for those victims to file a claim is September 17, 2025 (*i.e.*, 35 days after the notice is sent) and an answer is October 8, 2025 (*i.e.*, 21 days after the claim is filed). *See* Supplemental. Rule G(4)(b)(ii)(B), G(5)(a)(ii)(A) and G(5)(b).

4

an answer is November 8, 2025 (21 days after the claim is due), respectively. *See* Supp. Rule G(5)(a)(ii)(B) and (b).

As to Mr. Gallyamov, while notice rather than personal service is all that is required as to individuals residing in the United States, the government must follow the Mutual Legal Assistance Treaty ("MLAT") process to provide notice to Mr. Gallyamov of the *in rem* civil forfeiture action. On July 25, 2025, the undersigned AUSA sent a draft MLAT request letter to the Department of Justice's Office of International Affairs ("OIA") relative to notification as to Mr. Gallyamov for review. On or about August 12, 2025, OIA informed the undersigned AUSA that the translation of the MLAT, transmission of the MLAT to the Russian government, and OIA's receipt of acknowledgement from the Russian government is estimated to take approximately ten weeks. The MLAT requests that the Russian government provide the notice letter (which like the above-referenced notice letters to victims sets forth deadlines for filing claims and answers) to Mr. Gallyamov in Russia.

However, if OIA's request is denied, the government currently plans to seek a default against Mr. Gallyamov's interest in the defendant property in this *in rem* case because, unlike an *in personam* case requiring personal service, the government's internet publication, coupled with the public indictment and MLAT transmission, arguably satisfies the reasonable steps the government must take to provide notice to him under the Supplemental Rules and due process. *See United States v. 1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, 324 F. Supp. 3d 38, 47 (D.D.C. 2018) (where the United States contacted embassies in China, the United Kingdom, and Switzerland and effected service consistent with those countries' laws, consisting of international package service as to China and the United Kingdom and a MLAT request to Switzerland "[t]hat is *more* than sufficient under Supplemental Rule G(4)(b) to warrant entry of a default judgment") (emphasis added); *United States v. Funds Up to & including the Amount of $56,634 in U.S. Currency on Deposit in Banesco Int'l, Panama, Acct.# XXXXXXXXXXX, Titled in the Name of Inversiones Cendeno C.A.,* 79 F. Supp.

1    3d 112, 114 (D.D.C. 2015) (where Panama froze funds but failed to provide contact
2    information for the account holders for the defendant bank account, the government's
3    efforts to provide notice "constituted notice 'sent by means reasonably calculated to
4    reach the potential claimant[s]' as required by Supplemental Rule G(4)(b)(iii).") (citation
5    omitted).

6       In addition, there are approximately six victims the government has identified
7    which reside in Austria, Canada, Germany, Netherlands, and Taiwan. Based on the
8    government's review of applicable treaties and OIA resources, sending notice to these
9    victims likely requires compliance with a MLAT or Mutual Legal Assistance Agreement
10   ("MLAA"). If so, the government anticipates providing MLAT/MLAA requests to OIA
11   for these victims by October 3, 2025.

12       In cases like the instant case involving ransomware activity orchestrated by
13   individuals residing in Russia, courts have permitted the government substantial periods
14   of time before requiring the government to seek defaults. *See United States v.*
15   *Approximately $1,044,080 Seized from a Binance Account in the Name of Evegnii*
16   *Polianin,* No. 3:22-CV-577-DCG (N.D. Tex. Nov. 6, 2023) (complaint filed March 11,
17   2022 [Dkt. No. 1], motion for default judgment not filed until one and one half years
18   later on November 1, 2023 [Dkt. No. 18], and default judgment granted on November 6,
19   2023, [Dkt. No. 19]); *United States v. Funds up to & including the Amount of $56,634 in*
20   *U.S. Currency on Deposit in Banesco Int'l, Panama*, No. 1:12-CV-00259 (ABJ), 2014
21   WL 31383, at *1 (D.D.C. Jan. 6, 2014) (case filed in 2012 [Dkt. No. 3, Complaint filed
22   February 15, 2012] but default was not entered by the Clerk until January 21, 2015 [Dkt.
23   No. 44, Entry of Default]) *aff'd* 79 F. Supp. 3d 112 (D.D.C. 2015).  The government
24   respectfully submits that a reasonably lengthy time to effect notifications is particularly
25   appropriate here in light of the number of victims, their remote locations and the
26   government's attempt to locate return the unlawful ransom payments to victims of the
27   Qakbot conspiracy.
28   //

The government will be available to provide any updates during and answer the Court's questions at the September 12, 2025, status conference. In addition, the government respectfully suggests that the Court require the government to submit reports every three months regarding the status of its efforts to provide the Supplemental Rule notifications.

Dated: August 20, 2025

Respectfully submitted,

BILAL A. ESSAYLI
Acting United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section

*/s/ James E. Dochterman*
JAMES E. DOCHTERMAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA