

**U.S. Department of Justice**

Criminal Division

VAA:MDR:JEC:AEP:ms
DOJ: CRM-182-40105

*Office of International Affairs*                    *Washington, D.C. 20530*

FROM:      The Central Authority of the United States of America

TO:         The Central Authority of the Russian Federation

SUBJECT:   Request for Assistance in the Civil Forfeiture of Virtual Currency and $2,061,517.68 in U.S. Currency.

DATE:      September 12, 2025

      The Central Authority of the United States of America requests the assistance of the Central Authority of the Russian Federation pursuant to the 1999 U.S.-Russian Federation Mutual Legal Assistance Treaty ("Treaty").

## **INTRODUCTION**

      The United States Attorney's Office for the Central District of California (the U.S. Prosecutor) is investigating ransomware attacks committed in violation of U.S. laws against fraud. By this request, the Prosecutor seeks the assistance of Russian authorities in providing documents, specifically notice of the attached U.S. forfeiture complaint, to Rustam Rafailevich Gallyamov, who is believed to be located in Russia.

      On May 22, 2025, the Prosecutor filed an *in rem* non-conviction-based forfeiture complaint (the "Complaint") with the United States District Court for the Central District of California seeking the forfeiture of various cryptocurrencies and $2,061,517.68 in U.S. currency (fiat currency) (collectively, the "seized property"). A copy of that civil forfeiture complaint,

**EXHIBIT C**

which describes the various cryptocurrencies and U.S. currency in detail, is included in the attachments.

The Prosecutor believes that a potential claimant to this seized and forfeitable defendant property is Rustam Rafailevich Gallyamov with last known addresses of Krasnogorskiy Bul'var, 19, 323, Krasnogorsk, Moskovskaya oblast', Russia, 143401, or Krasnogorskiy Bul'var, 25, Krasnogorsk, Moscow Oblast, Russia, 143401.  Mr. Gallyamov has the email address gallyamov@mail.ru.

The Prosecutor seeks the assistance of Russian authorities in providing a letter to Mr. Gallyamov.  The attachments to the letter include a copy of the Complaint and explanation of the procedure for Mr. Gallyamov to file a claim for the seized assets (**Attachment A**).

## <u>FACTS</u>

This request involves the malware variant known as "Qakbot" (or "Qbot").  From at least 2019, Qakbot conspirators infected hundreds of thousands of victim computers in the United States and elsewhere.  Once conspirators gained unauthorized computer access using Qakbot, they and others used the victims' computers to facilitate the further infection of further victims' computers with ransomware.  Qakbot conspirators then extorted victims to regain access to their private data and prevent further dissemination of this data by the attackers.

Victims typically paid ransoms in cryptocurrency and attackers then paid a share of the cryptocurrency ransom proceeds to Mr. Gallyamov and other Qakbot conspirators.   The seized property described in the Complaint (**Attachment A**) constitutes property involved in multiple transactions or attempted transactions involving ransoms paid in connection with ransomware attacks, or property traceable to such property; property involved in multiple or attempted transactions exceeding $10,000 of traceable ransomware proceeds; and property that constitutes

or is proceeds derived from proceeds traceable to, or a conspiracy to commit, computer fraud and abuse and wire fraud violations.

As alleged in the forfeiture Complaint, the seized property is subject to forfeiture pursuant to the following:

A. Title 18, U.S. Code, § 981(a)(1)(A) because the seized and forfeitable defendant property was property involved in a violation of 18 U.S.C. §§ 1956 and 1957 (money laundering), or any property traceable to that property, or involved in a conspiracy to violate §§ 1956 and 1957; and

B. 18 U.S.C. § 981(a)(1)(C) because the seized and forfeitable defendant property constitutes or was derived from proceeds traceable to a violation of, or conspiracy to violate, 18 U.S.C. §§ 1030 (computer fraud and abuse) and 1343 (wire fraud).

On May 22, 2025, the Prosecutor filed a Complaint to initiate civil forfeiture proceedings against the seized property in the United States District Court for the Central District of California (the District Court). The Complaint alleges that the seized property is subject to forfeiture as the proceeds of fraud and money laundering.

U.S. law requires that U.S. authorities publish notice of the forfeiture action of an asset on the U.S. Government Internet site *www.forfeiture.gov* for a period of 30 days to allow any interested party to file a claim for the asset prior to final forfeiture. Accordingly, U.S. authorities have published notice of the forfeiture of the seized and forfeitable defendant property on August 19, 2025. The deadline for claims will expire on October 18, 2025.

U.S. forfeiture law also requires that U.S. prosecutors provide notice of the forfeiture action to individuals or entities who may have an interest in property and provide them an opportunity to file a claim (if so desired) prior to final forfeiture of the assets. U.S. authorities

have determined that Rustam Rafailevich Gallyamov, who uses an email address of gallyamov@mail.ru, should be provided with notice of the forfeiture of the seized property. According to information obtained during the investigation, U.S. authorities determined that Rustam Rafailevich Gallyamov is a Russian citizen and appears to reside in Russia.

Once Mr. Gallyamov is notified of the forfeiture, he will have 35 days from the date of notification to file a claim for the seized assets, should he wish to do so. If no claim is filed, after the deadlines for claims have expired, or after a reasonable time for the Russian authorities to provide notice to Mr. Gallyamov has elapsed, the Prosecutor will ask the District Court to enter a default against Mr. Gallyamov, which will completely forfeit Mr. Gallyamov's interest in the seized property to the U.S. Government. The U.S. Prosecutor will then take the appropriate steps to return the funds to victims of the ransomware attacks.

## THE OFFENSES

**Title 18, United States Code, Section 1030. Fraud and related activity in connection with computers.**

> (a) Whoever— . . .
>     (5) . . . (A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;
> . . .
>     (7)  with intent to extort from any person any money or other thing of value, transmits in interstate or foreign commerce any communication containing any— . . . (C) demand or request for money or other thing of value in relation to damage to a protected computer, where such damage was caused to facilitate the extortion;
>
> shall be punished [by a fine of not more than $250,000 or twice the pecuniary gain derived from the offense or imprisonment for not more than 10 years, or both].

**Title 18, United States Code, Section 1343.  Fraud by wire, radio, or television.**

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent

pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . communication in . . . commerce, any writings [or] signals for the purpose of executing such scheme or artifice, shall be fined [not more than $250,000 or twice the pecuniary gain derived from the offense] or imprisoned not more than 20 years, or both.

## Title 18, United States Code, Section 1956.  Laundering of monetary instruments.

(a)
. . .
(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—
. . .)
(B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part—
(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; . . .

shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater, or imprisonment for not more than twenty years, or both.

## Title 18, United States Code, Section 1957.  Engaging in monetary transactions in property derived from specified unlawful activity.

(a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

(b) (1) Except as provided in paragraph (2), the punishment for an offense under this section is a fine [not more than $250,000 or twice the pecuniary gain derived from the offense], or imprisonment for not more than ten years or both.
. . .
(2) The court may impose an alternate fine to that imposable under paragraph (1) of not more than twice the amount of the criminally derived property involved in the transaction.

(c) In a prosecution for an offense under this section, the Government is not required to prove the defendant knew that the offense from which the criminally derived property was derived was specified unlawful activity.

(d) The circumstances referred to in subsection (a) are—

(1) that the offense under this section takes place in the United States or in the special maritime and territorial jurisdiction of the United States; or

(2) that the offense under this section takes place outside the United States and such special jurisdiction, but the defendant is a United States person (as defined in section 3077 of this title, but excluding the class described in paragraph (2)(D) of such section).

. . .

(f) As used in this section—

(1) the term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument (as defined in section 1956(c)(5) of this title) by, through, or to a financial institution (as defined in section 1956 of this title), including any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title, but such term does not include any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution;

(2) the term "criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense; and

(3) the terms "specified unlawful activity" and "proceeds" shall have the meaning given those terms in section 1956 of this title.

* * *

**Title 18, United States Code, Section 981.  Civil Forfeiture.**

(a)(1) The following property is subject to forfeiture to the United States:

(A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property.

* * *

(C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section  . . ., or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title [which includes wire fraud]), or a conspiracy to commit such offense.

* * *

**Rule G(4)(b) of the Supplemental Rules for Admiralty or Maritime Claims and
Asset Forfeiture Actions.**

(b) Notice to Known Potential Claimants.

(i) Direct Notice Required. The government must send notice of the action
and a copy of the complaint to any person who reasonably appears to be a
potential claimant on the facts known to the government before the end of
the time for filing a claim under Rule G(5)(a)(ii)(B).

(ii) Content of the Notice. The notice must state:

(A) the date when the notice is sent;

(B) a deadline for filing a claim, at least 35 days after the notice is
sent;

(C) that an answer or a motion under Rule 12 must be filed no later
than 21 days after filing the claim; and

(D) the name of the government attorney to be served with the
claim and answer.

(iii) Sending Notice.

(A) The notice must be sent by means reasonably calculated to
reach the potential claimant.

(B) Notice may be sent to the potential claimant or to the attorney
representing the potential claimant with respect to the seizure of
the property or in a related investigation, administrative forfeiture
proceeding, or criminal case.

(C) Notice sent to a potential claimant who is incarcerated must be
sent to the place of incarceration.

(D) Notice to a person arrested in connection with an offense
giving rise to the forfeiture who is not incarcerated when notice is
sent may be sent to the address that person last gave to the agency
that arrested or released the person.

(E) Notice to a person from whom the property was seized who is
not incarcerated when notice is sent may be sent to the last address
that person gave to the agency that seized the property.

(iv) When Notice Is Sent. Notice by the following means is sent on the date when it is placed in the mail, delivered to a commercial carrier, or sent by electronic mail.

(v) Actual Notice. A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice.

## PERSON TO RECEIVE DOCUMENTS

Name(s):     Rustam Rafailevich Gallyamov
             also known as "Cortes,"
             aka "Tomperz,"
             aka "Chuck."

Last Known
Addresses:   Krasnogorskiy Bul'var, 19, #323, Krasnogorsk, Moskovskaya oblast', Russia, 143401; or

             Krasnogorskiy Bul'var, 25, Krasnogorsk, Moscow Oblast, Russia, 143401.

Email:       gallyamov@mail.ru

## ASSISTANCE REQUESTED

Please ask the appropriate authorities in Russia to provide a copy of the letter  (with attachments) regarding the Complaint (**Attachment A**) to Rustam Rafailevich Gallyamov. Please email the documents to gallyamov@mail.ru, and, if possible, deliver by mail, by hand, or any other method of notice that conforms with Russian law.

## PROCEDURES TO BE FOLLOWED

In executing the request, please ask the appropriate authorities in Russia to take the following steps:

1.      Provide copies of the letter (with attachments) (**Attachment A**) to Rustam Rafailevich Gallyamov; and

2.      Cause the individual serving the Complaint and the accompanying letter (with attachments)  regarding the Complaint to execute an Affidavit for Providing

Seizure Notice and Forfeiture Notice (**Attachment B**) and return it to the U.S.

Department of Justice, Criminal Division, Office of International Affairs.

## **<u>CONCLUSION</u>**

Thank you for your consideration of this request.  Please contact the Office of

International Affairs at +1 202-514-0000 if you have any questions concerning this request.


<u>12 September 2025</u>
Date

Jason E. Carter
Associate Director
Office of International Affairs
Criminal Division
U.S. Department of Justice



# United States Department of Justice

### United States Attorney's Office
### Central District of California

---

*James E. Dochterman*
*Assistant United States Attorney*
*Asset Forfeiture and Recovery Section*
*Telephone: (213) 894-2686*
*E-mail:  James.Dochterman@usdoj.gov*

*1100 United States Courthouse*
*312 North Spring Street*
*Los Angeles, California 90012*

To: Rustam Rafailevich Gallyamov

Re:    *United States of America v. Virtual Currency and $2,061,517.68 in U.S. Currency*
Case No.:   2:25-cv-04631-SB-MAR

Dear Rustam Rafailevich Gallyamov:

This is to provide notification to you that a Complaint for Forfeiture has been filed against the above-referenced defendant property.   Enclosed with this letter are copies of (1) the Complaint for Forfeiture, (2) Notice of Related Civil Forfeiture and Criminal Cases, (3) Notice of Assignment to United States Judges, (4) Notice to Parties of Court-Directed ADR Program, (5) Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge, (6) Order re Transfer (Related Cases) and (7) Standing Order for Civil Cases Assigned to Judge Stanley Blumenfeld, Jr.   Also enclosed is a pamphlet issued by the District Court for the Central District of California concerning Civility and Professionalism Guidelines, which should guide the conduct of these proceedings.

You are receiving this notification regarding the filing of the enclosed Complaint because you may have the right to appear in this action and contest the forfeitability of the defendant property.   If you intend to contest forfeitability, you must file a Claim identifying your right or interest with the Clerk of the United States District Court for the Central District of California within 35 days from the date of notification, and a separate Answer within 21 days after the Claim is filed.   Contemporaneously with your filing of the Claim and Answer, you must serve this office with a copy of each pleading filed, directed to the attention of the undersigned.   You may serve these documents by personal delivery to the 11th Floor of the U.S. Courthouse, at the address above, or by regular mail.

Should you choose to file one, your Claim must comply with the provisions of Rule G (5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which Rules are a supplement to the Federal Rules of Civil Procedure.   The Claim must identify the claimant and the specific property claimed; describe your interest in the defendant property, *i.e.*, as owner, lienholder, *etc.*; state the circumstances under which you acquired the interest, including when the interest was acquired; and must be verified, *i.e.*, signed by you under oath. Please note that you are also required to comply with the Local Rules of the District Court for the Central District of California.

Letter
Page 2

It is essential that both the Claim and Answer be filed within the times noted above or within an extended time to which this office agrees and the court approves.   If no Claim is filed with the Clerk and a copy served on this office within 35 days from the date of notification, or if a Claim is filed on time, but no Answer is filed and served within 21 days after the Claim is filed (and this office has not agreed to an extension of either or both of said deadlines), the government will assume that you do not intend to contest the forfeiture of the defendant property, and will seek entry of default and default judgment against any interest that you may have in the defendant property.   This will prohibit you from taking any future steps to prevent the forfeiture without specific permission from the court.

Alternatively, or in addition to, filing a Claim and Answer, you may submit a Petition for Remission or Mitigation of Forfeiture to the Department of Justice with respect to this defendant property.   The regulations governing Petitions for Remission or Mitigation of Forfeiture are set out at Title 28, Code of Federal Regulations ("C.F.R."), section 9.1 *et seq.*, and the specific requirements for a Petition are set out at 28 C.F.R. § 9.4.   In general, the Petition must include the following information in clear and concise terms: (1) your name, address and social security number (or taxpayer ID number, as appropriate); (2) the seizing agency, asset identifier number, and date and place of seizure; (3) the district court case number (*see* above); (4) a detailed description of the property claimed, including the amount of any funds, the address or legal description of real property, and the make, model number and serial (or vehicle identification or hull) number of personal property, as appropriate; and (5) a description of your claimed interest in the property you are seeking to recover, supported by copies of receipts, bills of sale, contracts, mortgages, deeds, or other documentary evidence.   In addition, you should describe all extenuating and mitigating circumstances and other reasons why you believe the Petition should be granted.   The Petition must be sworn to by you or your attorney.   If sworn by an attorney, the Petition must be accompanied by your sworn notice of representation pursuant to 28 U.S.C. § 1746, and must be attested to by the attorney as set forth in 28 C.F.R. § 9.9(g).   The Petition must be submitted to this office promptly.

The Petition, **which is not to be filed with the Court**, may be submitted either electronically or by mail.   To submit a Petition electronically, please visit https://www.forfeiture.gov/FilingPetition.htm, which provides access to a standard Petition and a link that you can use to file your Petition online.   If you choose to submit your Petition by mail, it should be addressed to the Attorney General of the United States, and the original, together with two copies, should be forwarded to the attention of the undersigned.   You must also submit a separate copy of the Petition to the seizing agency in the district in which the seizure occurred, except in cases involving seizures by the Drug Enforcement Administration (in which case a copy of the Petition must be mailed to Forfeiture Counsel, Asset Forfeiture Section, Drug Enforcement Administration, Headquarters Forfeiture Response, P.O. Box 1475, Quantico, VA 22134-1475) or the Bureau of Alcohol, Tobacco, Firearms and Explosives (in which case a copy of the Petition must be mailed to Special Agent in Charge, Asset Forfeiture and Seized Property Branch, Bureau of Alcohol, Tobacco, Firearms and Explosives, 650 Massachusetts Avenue, NW., Washington, D.C. 20226).

Petitions received by this office or submitted will be investigated, and a decision to grant or deny the petition will be made by the Chief of the Money Laundering and Asset Recovery

Letter
Page 3

Section, Criminal Division, Department of Justice, without a hearing.    Please note that the Petition process is entirely separate from the judicial action in which the enclosed complaint has been filed.    There are no specific time limits for the granting or denial of a Petition.    The filing of a Petition will not protect any rights that you may have with respect to the defendant property. If you wish to contest the forfeiture of the defendant property, you must file a Claim and Answer with the Court within the time limits set out herein.

Pursuant to the Local Rules of the United States District Court for the Central District of California, you are further notified that this action is subject to the Electronic Case Filing System ("ECF").    If you are not already registered as an ECF User, then registration can be accomplished at http://www.pacer.gov/.

Very truly yours,

BILAL A. ESSAYLI
United States Attorney

/s/_____
JAMES E. DOCHTERMAN
Assistant United States Attorney
Asset Forfeiture and Recovery Section

Enclosures

# ATTACHMENT A

BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section
JAMES E. DOCHTERMAN (Cal. Bar No. 256396)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
 312 North Spring Street, 11th Floor
 Los Angeles, California 90012
 Telephone: (213) 894-2686
 Facsimile: (213) 894-6269
 E-mail: James.Dochterman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 2:25-CV-04631 |
|---|---|
| Plaintiff, | **COMPLAINT FOR FORFEITURE** |
| v. | 18 U.S.C. § 981(a)(1)(A) and (C) [FBI] |
| VIRTUAL CURRENCY AND $2,061,517.68 IN U.S. CURRENCY, | |
| Defendants. | |

Plaintiff United States of America brings this claim against defendants Virtual Currency and $2,061,517.68 in U.S. Currency, and alleges as follows:

1

**JURISDICTION AND VENUE**

2      1.    Plaintiff United States of America brings this _in rem_

3  forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).[1]

4      2.    This Court has jurisdiction over the matter under 28 U.S.C.

5  §§ 1345 and 1355.

6      3.    Venue lies in this District pursuant to 28 U.S.C. §§ 1355

7  and 1395.

8

**PERSONS AND ENTITIES**

9      4.    The plaintiff is the United States of America.

10     5.    The defendants Virtual Currency (the "defendant Virtual

11  Currency") and $2,061,517.68 in U.S. Currency (the "defendant

12  currency") are collectively referred to herein as "the defendant

13  assets."  The defendant Virtual Currency[2] consists of the following:

14         a.    The USDT[3] transferred to the government following the

15  issuance of a July 29, 2024 federal seizure warrant, consisting of an

16  equivalent amount of USDT frozen by the government on August 25,

17  2023, associated with the virtual currency addresses listed below

18  (collectively, the "USDT Addresses") and more specifically described

19  as (i) 1,867,051.090192 USDT associated with virtual currency

20  addresses ending in "d774", "43ac", and "2cfd" on the Ethereum

21

22

23
            [1] All dates set forth in the Complaint are on or about the dates
24  indicated, and all amounts or sums are approximate.

25         [2] Virtual currencies are digital tokens of value circulated as
    substitutes for traditional fiat currency and sent to and received
26  from virtual currency addresses.  Virtual currencies are not issued
    by any government or bank like traditional fiat currency, such as the
27  U.S. dollar, but rather are generated and controlled through computer
    software.

28         [3] USDT is also known as Tether and is a "stablecoin" type of
    virtual currency whose value is pegged to the U.S. dollar.

network; and (ii) 131,864.958226 USDT associated with virtual currency addresses ending in "diwg" and "Qnq1" on the Tron network;

   b.   The virtual currency seized following the issuance of a federal seizure warrant on August 25, 2023 from virtual currency wallets (the "August 2023 Wallets"), which are more particularly described as (i) 0.98764847 BTC, 0.748382350077596 ETH, 2,225.664765 TRX, 27,440.236603 USDT on the Ethereum network and 12,786.27805 USDT on the Tron network; (ii) 0.0356658763729553 ETH, 1,000 USDT on the Ethereum network, and 88.306384186 TON on the Ethereum network; (iii) 0.116887384939969 ETH, and 50 USDT on the Ethereum network; (iv) 0.00008155 BTC; (v) 80,248.604484476 TON on the Ethereum network; (vi) 63,776.869432785 EVER; (vii) 0.00154878 ETH; (viii) 162.86215848 BTC; (ix) 1.44223059 BTC; (x) 78.74 XMR; (xi) 47.81 XMR; (xii) 1.84681961 XMR; (xiii) 0.0235862 XMR; (xiv) 125.0562078 XMR; (xv) 0.04399859 XMR; (xvi) 0.1599822 BTC; and (xvii) 5.31848493 BTC; and

   c.   The virtual currency seized following the issuance of a federal seizure warrant on April 18, 2025 from virtual currency wallets (the "April 2025 Wallets"), which are more particularly described as (i) 22,622.300445 TRX, and 718,191.493006 USDT on the Tron network; (ii) 30.86066699 BTC; and (iii) 0.015326022542196328 ETH, and 262.30293 USDT on the Ethereum network.

   6.   The defendant currency represents the U.S. dollar equivalent to the USD Coin ("USDC")[4] frozen by the government, associated with the virtual currency addresses listed below (collectively, the "USDC Addresses"), transferred to the government on October 27, 2023 following the issuance of a federal seizure

_____

   [4] USDC is a "stablecoin" type of virtual currency whose value is pegged to the U.S. dollar.

1  warrant for the contents of the USDC Addresses, and is more

2  particularly described as (i) 839,993.06 USDC associated with a

3  virtual currency address ending in "d774" on the Ethereum network

4  (ii) 74,248.29 USDC associated with a virtual currency address ending

5  in "TEPd" on the Tron network; (iii) 49,914.71 USDC associated with a

6  virtual currency address ending in "43ac" on the Ethereum network;

7  and (iv) 1,097,361.62 USDC associated with a virtual currency address

8  ending in "2cfd" on the Ethereum network.

9          7.    The defendant assets were seized by the Federal Bureau of

10  Investigation at 11000 Wilshire Boulevard, Suite 1700 in Los Angeles,

11  California and are currently in or will be transferred to the custody

12  of the United States Marshals Service in this District, where they

13  will remain subject to this Court's jurisdiction during the pendency

14  of this action.

15         8.    The interests of Rustam Rafailevich Gallyamov and the

16  victims of the Qakbot conspiracy may be adversely affected by these

17  proceedings.

18                          **BASIS FOR FORFEITURE**

19  **I.   Gallyamov is Indicted as A Result of His Orchestration of a
20         Scheme to Infect Victim Computers and Extort Ransom Payments
         from Victims.**

21         9.    Qakbot (or Qbot) was a malicious computer software

22  developed, deployed, and controlled since 2008 by members of a

23  cybercriminal conspiracy led by Gallyamov.  From at least 2019,

24  Qakbot conspirators infected hundreds of thousands of victim

25  computers in the Central District of California and elsewhere with

26

27

28

1    the Qakbot malware,[5] thereby gaining unauthorized access to and

2    control of those computers. This network of compromised victim

3    computers was commonly referred to as the Qakbot botnet.[6]

4        10. After the Qakbot botnet was disrupted in an international

5    law enforcement action in August 2023, the Qakbot conspirators

6    continued to seek and gain unauthorized access to victim computers

7    using means other than the Qakbot botnet. One technique that they

8    used was conducting spam bomb attacks[7] on employees of victim

9    companies and then posing as information technology workers to trick

10   victims into executing malicious code or otherwise providing access

11   to company computers.

12        11. Qakbot conspirators used their unauthorized access to

13   victim computers to facilitate the further infection of those victim

14   computers with additional malicious software in the form of

15   ransomware. In coordination with the Qakbot conspiracy, ransomware

16   actors, including Prolock, Doppelpaymer, Egregor, REvil, Conti, Name

17   Locker, Black Basta and Cactus, infiltrated victim computer networks

18   and deployed ransomware. Typically, as part of these ransomware

19   attacks, data was also stolen from victim computers. Victims were

20   then extorted to regain access to their data and to prevent the

21   further dissemination of their private data by the attackers.

22

23

24       [5] "Malware" is malicious computer software intended to cause a
victim computer to behave in a manner inconsistent with the, and

25   typically unbeknownst by, the victim computer's owner or user.

26       [6] A "botnet" is a network of infected computers (each a "bot")
that have been infected with malware and are being controlled by a

27   group.

      [7] A "spam bomb attack" is a type of cyberattack that floods a

28   victim's inbox by using automated techniques to sign the victim up
for a large number of email subscriptions.

12.   Ransomware victims typically paid ransoms in Bitcoin (BTC). Gallyamov and the Qakbot conspirators were paid a share of the ransom for each victim whose computers were compromised by the Qakbot conspiracy.

13.   On May 2, 2025, in case No. 2:25-CR-340-SB, a grand jury in the Central District of California returned an indictment charging Gallyamov with violations of 18 U.S.C. §§ 371 (conspiracy to violate 18 U.S.C. § 1030) and 1349 (conspiracy to violate 18 U.S.C. § 1343) for his role in the Qakbot conspiracy.  The indictment also includes a forfeiture allegation providing that upon his conviction, Gallyamov must forfeit all traceable proceeds, such as the defendant assets, of the Qakbot conspiracy.

14.   As discussed below, the defendant assets are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C) because they constitute traceable proceeds of and were involved in money laundering offenses pertaining to the payment of ransoms for computers infected by ransomware as a result of computer intrusions by members of the Qakbot conspiracy.

15.   The virtual currencies discussed in this complaint include:

a.   BTC, a virtual currency that exists on the Bitcoin blockchain.[8]

b.   Ether ("ETH"), a virtual currency that exists on the Ethereum blockchain (also referred to as the Ethereum network).

---

[8] Many virtual currencies publicly record all of their virtual currency transactions (as well as each virtual currency address balance) on what is known as a "blockchain." The blockchain is essentially a public ledger, run by a decentralized network of computers and containing an immutable and historical record of every transaction utilizing that blockchain's technology.  There are different blockchains for different types of virtual currencies.

       c.   The stablecoin USDT ("Tether"), which exists on multiple blockchains, including the Ethereum and Tron blockchains.

       d.   The stablecoin USDC, which exists on multiple blockchains, including the Ethereum and Tron blockchains.

       e.   Tron ("TRX"), a virtual currency that exists on the Tron blockchain (also referred to as the Tron network).

       f.   Toncoin ("TON"), a virtual currency that operates on the Ethereum blockchain; and

       g.   Monero ("XMR"), a privacy-enhanced virtual currency that operates on the Monero blockchain.

## II.   The Defendant Assets Constitute Traceable Ransom and Laundered Proceeds.

16.   As part of the ransom and money laundering scheme, upon receipt of the initial ransom proceeds, Qakbot conspirators engaged in multiple transactions moving virtual currency through a series of intermediary addresses in a manner common to money laundering schemes and intended to conceal the criminal origin of the proceeds. These transactions involved unnecessary or duplicative transactions into and out of wallets or addresses and through decentralized services on the blockchain to frustrate tracing and avoid attention from law enforcement. As described below, ransom proceeds were also comingled with other victims' ransom proceeds as well as unknown sources, further demonstrating the coconspirators intent to conceal the criminal origin of the virtual currency.

### A.   The August 2023 Wallets Held Ransom and Laundered Proceeds.

17.   Based on their review of blockchain transaction records, records from virtual assets service providers, Qakbot conspirator communications and records, and analysis using commercial blockchain

1   analysis tools, law enforcement officers determined that numerous

2   deposits made to the August 2023 Wallets consisted of ransoms paid to

3   ransomware groups, which in turn paid Gallyamov.

4        18.  The deposits of ransoms to the August 2023 wallets

5   primarily came from clusters of addresses identified by law

6   enforcement as belonging to ransomware groups or known ransomware

7   actors.  Analysis by law enforcement showed that ransoms paid by

8   victims were often collected or pooled in clusters of addresses

9   associated with that ransomware group before shares of the ransom

10  payment were parceled out, including to Gallyamov.  Analysis by law

11  enforcement further showed that at times virtual currency held in the

12  August 2023 Wallets was converted from BTC to other forms of virtual

13  currency using blockchain-based services or virtual asset service

14  providers.

15       19.  Analysis of transactions involving the August 2023 Wallets

16  between September 2022 and April 2023 showed that ransom payments

17  made to Gallyamov in BTC made up more than 80 percent of the value of

18  the virtual currency seized from the August 2023 Wallets.

19       20.  The ransom payments to the August 2023 Wallets include but

20  are not limited to the following:

21            a.  On October 13, 2022, a New York law firm paid a ransom

22  of 15.61359 BTC to a ransomware group.  That payment moved through a

23  series of intermediary addresses associated with a known Qakbot

24  coconspirator ("Coconspirator 1").  That same day, 1.561359 BTC,

25  identified by Coconspirator 1 to Gallyamov as a 10% payment for the

26  New York law firm ransom was paid into an address in the August 2023

27  Wallets.  The source of the funds for that payment was a comingled

28

1    39.999865 BTC ransom paid by a Wisconsin marketing company to another

2    Qakbot-affiliated ransomware group on May 12, 2022.

3           b.   On November 16, 2022, an Indiana technology company

4    was the victim of a ransomware attack and paid a ransom.  On November

5    28, 2022, a deposit of 15.006 BTC was made from the cluster of

6    addresses associated with Coconspirator 1 to an address in the August

7    2023 Wallets.  Gallyamov identified that payment to a coconspirator

8    as his share of the ransom paid by the Indiana technology company.

9           c.   On December 16, 2022, a Missouri media company paid a

10    ransom of 58.4521985 BTC to a ransomware group.  After moving through

11    a series of intermediary addresses, 19.1543 BTC of the ransom was

12    paid to an address in the August 2023 Wallets.  Gallyamov recorded

13    that December 20, 2022, payment in his payment ledger, and identified

14    it to a coconspirator as his share of the comingled ransom paid by a

15    Tennessee music company in connection with a ransomware attack.

16           d.   In March 2023, a Colorado technology company paid a

17    ransom of 179.760005 BTC to a ransomware group.  Gallyamov recorded a

18    March 20, 2023, payment of 17.976 BTC, which was paid to an address

19    in the August 2023 wallets, in his payment ledger as his share of the

20    ransom paid by the Colorado technology company.

21           e.   In September 2022, a Maryland bank was the victim of a

22    ransomware attack and paid a ransom of approximately $175,000 in BTC.

23    On October 19, 2022, 0.8935 BTC, identified by Coconspirator 1 to

24    Gallyamov as a 10% payment for the Maryland bank ransom was paid into

25    an address in the August 2023 Wallets.

26           f.   On November 14, 2022, 8.631 BTC was paid into an

27    address in the August 2023 Wallets from the cluster of addresses

28    associated with Coconspirator 1.  Gallyamov recorded that payment in

his payment ledger as his share of the ransom paid by an Austrian hospitality company.

g. On November 14, 2022, 5.5335 BTC was paid into an address in the August 2023 Wallets from the cluster of addresses associated with Coconspirator 1. Gallyamov recorded that payment in his payment ledger as his share of the ransom paid by an Illinois engineering firm.

h. On September 26, 2022, 1.0315 BTC was paid into an address in the August 2023 Wallets from the cluster of addresses associated with Coconspirator 1. Gallyamov identified that payment to a coconspirator as his share of the ransom paid by a Canadian home furnishing company. The source of the funds for that payment of 1.0315 BTC was a 5.14250156 BTC ransom paid by a Kentucky law firm to a ransomware group.

i. On March 13, 2023, 4.9209 BTC was paid into an address in the August 2023 Wallets. Gallyamov identified that payment in his payment ledger as his share of the ransom paid by a Virginia maritime engineering company. The source of the funds for that payment of 4.9209 BTC, in turn, was a 243.9422269 BTC ransom paid by a North Dakota legal outsourcing company.

j. On March 7, 2023, a New York law firm paid a ransom of 40.204054 BTC to a ransomware group. On March 13, 2023, 4.0204 BTC originating from that ransom payment was deposited into an address in the August 2023 Wallets. Gallyamov identified that payment in his payment ledger as his share of the ransom paid by the New York law firm.

k. On November 30, 2022, an Alabama bank paid a ransom of 11.595551815 BTC to a ransomware group. On December 29, 2022,

1.1599433 BTC originating from that ransom payment was deposited into an address in the August 2023 Wallets. Gallyamov identified that payment in his payment ledger as his share of the ransom paid by the Alabama bank.

l. On March 13, 2023, a Michigan manufacturing company paid a ransom of 4.08106996 BTC to a ransomware group. On March 16, 1.9895 BTC from that ransom payment was deposited into an address in the August 2023 Wallets. Gallyamov identified that payment in his payment ledger as his share of the ransom paid by a North Carolina freight company. Then, on April 13, 2023, an additional 1.6683 BTC originating from the ransom payment was deposited into another address in the August 2023 Wallets. Gallyamov identified that payment in his payment ledger as his share of the ransom paid by a New York food company.

m. On September 29, 2022, 63.14 BTC was deposited into an address in the August 2023 Wallets. This payment originated from a cluster of addresses associated with a Qakbot-affiliated ransomware group. The address that sent the 63.14 BTC had received a total of 143.50 BTC in an earlier transaction and sent 40.459948 BTC to a cluster of addresses associated with Coconspirator 1. Gallyamov provided the address that received 63.14 BTC to Coconspirator 1, who sent Gallyamov the following calculation, indicating that the 63.14 BTC represented Gallyamov's share of ransom proceeds: "143.5 – 12% = 128.26 /2 = 63,14."

  **B. The USDC Addresses and USDT Addresses Held Ransom and Laundered Proceeds that Were Used to Promote the Qakbot Conspiracy.**

21. In the same file where law enforcement identified information about the August 2023 Wallets, investigators also found

details identifying the USDC Addresses and the USDT Addresses.  Those addresses corresponded to virtual currency stored on ledger hardware wallets owned by Gallyamov.

22.   The wallet addresses stored in those ledger devices were on the Ethereum and Tron blockchains, which are capable of holding multiple types of virtual currency or tokens at a single wallet address.  The four USDC Addresses are the same addresses as four of the six USDT Addresses, with both USDC and USDT seized from the same ledger addresses.  The majority of the virtual assets held in the USDT Addresses and the USDC Address were held on the four overlapping wallet addresses.

23.   Launderers often convert laundered virtual currency to stablecoins and transfer those proceeds into pooling addresses and thereafter use the laundered funds to pay expenses or coconspirators. These transfers are made to conceal the underlying source of the funds and to avoid alerting law enforcement to the criminal activity connected to the laundered funds.  By moving crime proceeds through numerous addresses before parking them in pooling accounts like the USDT Addresses and USDC Addresses, Gallyamov attempted to conceal the nature, source, location, ownership, or control of the proceeds.

24.   Based on their review of blockchain transaction records, records from virtual assets service providers, Qakbot conspirator communications and records, and analysis using commercial blockchain analysis tools, law enforcement officers identified the funding sources for the USDT Addresses and USDC Addresses.  They were funded, primarily with USDC and USDT originating from virtual currency exchanges outside the United States in 2021 and 2022.

25.  Analysis of transactions involving the USDT Addresses and USDC Addresses show that they were used in money laundering transactions and were also used to make payments of ransom proceeds to Qakbot coconspirators to facilitate the operation of the conspiracy.  Those transactions include but are not limited to the following:

a.  On August 2, 2022, receiving 1,381 USDT from a coconspirator.

b.  On April 17, 2023, sending 50,000 USDT to an address in the August 2023 Wallets, comingling the ransom proceeds.

c.  On July 3, 2023, sending 130,000 USDT in two transactions to an address in the August 2023 Wallets, comingling the ransom proceeds.

d.  On August 19, 2023, sending 10,000 USDT to an address in the August 2023 Wallets, comingling the ransom proceeds.

e.  On February 1, 2022, sending 200,000 USDT to an address provided by an individual who would exchange the USDT for fiat currency for a fee.

f.  On February 24, 2023, sending 300,000 USDT to an address provided by an individual who would exchange the USDT for fiat currency for a fee.

g.  On July 25, 2023, sending 133,900 USDT to an address provided by an individual who would exchange the USDT for fiat currency for a fee.

26.  Sending payments to addresses identified by Qakbot coconspirators for payment, including the following:

a.  On April 3, 2022, sending 1,800 USDT to a coconspirator.

b.   On July 4, 2022, sending 1,800 USDT to a coconspirator.

c.   On July 8, 2022, sending 750 USDT to a coconspirator.

d.   On July 15, 2022, sending 20,400 USDT to one coconspirator, and 15,000 USDT to a second coconspirator.

e.   On September 2, 2022, sending 1,800 USDT to a coconspirator.

f.   On December 29, 2022, sending 3,000 USDT to one coconspirator, 3,600 USDT to a second coconspirator, and 6,400 USDT to a third coconspirator.

g.   On December 30, 2022, sending 15,000 USDT to each of three coconspirators.

h.   On April 3, 2023, sending 1,500 USDT to one coconspirator and 3,250 USDT to a second coconspirator.

i.   On June 30, 2023, sending 21,400 USDT to a coconspirator.

**C.   The April 2025 Wallets Received Ransom and Laundered Proceeds.**

27.   Based on their review of blockchain transaction records, records from virtual assets service providers, Qakbot conspirator communications and records, and analysis using commercial blockchain analysis tools, law enforcement officers determined that numerous deposits made to the April 2025 Wallets consisted of ransoms paid to ransomware groups, which in turn paid Gallyamov.  Those ransom payments to the August 2023 Wallets include but are not limited to the following:

a.   In December 2024, a New Jersey company was the victim of a ransomware attack and paid a ransom of 15.94 BTC on December 23,

2024.  That payment was immediately split up, with 12.754 BTC going to an address in the April 2025 Wallets.  The funds were thereafter dissipated from the that wallet address in a series of transfers of roughly $40,000 to $50,000 in BTC to virtual asset service providers outside the United States.

      b.   In January 2025, a Wisconsin Company was the victim of a ransomware attack and paid a ransom of 20.274 BTC on January 16, 2025.  That payment was immediately split up, with 14.189 BTC going to an address in the April 2025 Wallets.  The funds were thereafter dissipated from the that wallet address in a series of transfers to non-custodial instant cryptocurrency exchanges.

      c.   In January 2025, a Pennsylvania company was the victim of a ransomware attack and paid a ransom of 28.31 BTC on January 17, 2025.  That payment was immediately split up, with 19.8142 BTC going to an address in the April 2025 Wallets.

      d.   In January 2025, a Maryland company was the victim of a ransomware attack and paid a ransom of 9.417 BTC on January 24, 2025, to an address in the April 2025 Wallets.

**FIRST CLAIM FOR RELIEF**

28. Paragraphs 1 through 27 are incorporated by reference as if fully set forth herein.

29. Based on the above, plaintiff alleges that the defendant assets constitute property involved in multiple or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i), (a)(2)(A), (a)(2)(b)(i) and/or (h), or property traceable to such property, with the specified unlawful activity being a violation of 18 U.S.C. §§ 1030 (relating to computer fraud and abuse) and/or 1343 (wire fraud). The defendant assets are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

**SECOND CLAIM FOR RELIEF**

30. Paragraphs 1 through 27 are incorporated by reference as if fully set forth herein.

31. Based on the above, plaintiff alleges that the defendant assets constitute property involved in multiple or attempted transactions in violation of 18 U.S.C. § 1957(a), with the specified unlawful activity being a violation of 18 U.S.C. §§ 1030 (relating to computer fraud and abuse) and/or 1343 (wire fraud). The defendant assets are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

**THIRD CLAIM FOR RELIEF**

32. Paragraphs 1 through 27 are incorporated by reference as if fully set forth herein.

33. Based on the above, plaintiff alleges that the defendant assets constitute or are derived from proceeds traceable to, or a conspiracy to commit violations of 18 U.S.C. §§ 1030 (relating to computer fraud and abuse), which is a specified unlawful activity as

16

defined in 18 U.S.C. § 1956(c)(7)(D), and/or 1343 (wire fraud), which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B).  The defendant assets are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff the United States of America prays:

(a)  that due process issue to enforce the forfeiture of the defendant assets;

(b)  that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c)  that this Court decree forfeiture of the defendant assets to the United States of America for disposition according to law; and

(d)  for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: May 22, 2025

BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery
Section


 */s/ James E. Dochterman*
JAMES E. DOCHTERMAN
Assistant United States Attorney
Asset Forfeiture & Recovery Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

1

**VERIFICATION**

2      I, Jacob T. Frederick, hereby declare that:

3      1.      I am a Special Agent with the Federal Bureau of

4      Investigation.

5      2.      I have read the above Complaint for Forfeiture and know the

6      contents thereof.

7      3.      The information contained in the Complaint is either known

8      to me personally, was furnished to be my official government sources,

9      or was obtained pursuant to legal process.  I am informed and believe

10     that the allegations set out in the Complaint are true.

11     I declare under penalty of perjury under the laws of the United

12     States of America that the foregoing is true and correct.

13     Executed on May 22, 2025, at Los Angeles, California.

14

15

16     Jacob T. Frederick

17

18

19

20

21

22

23

24

25

26

27

28

BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section
JAMES E. DOCHTERMAN (Cal. Bar No. 256396)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
        312 North Spring Street, 11th Floor
        Los Angeles, California 90012
        Telephone: (213) 894-2686
        Facsimile: (213) 894-6269
        E-mail:   James.Dochterman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:25-CV-04631 |
| Plaintiff, | **PLAINTIFF UNITED STATES OF AMERICA'S NOTICE OF RELATED CIVIL FORFEITURE AND CRIMINAL CASES PURSUANT TO LOCAL RULE 83-1.3.2** |
| v. | |
| VIRTUAL CURRENCY AND $2,061,517.68 IN U.S. CURRENCY, | |
| Defendants. | |

        PLEASE TAKE NOTICE that plaintiff United States of America

hereby files this Notice of Related Civil Forfeiture and Criminal

Cases pursuant to Local Rule 83-1.3.2 as follows:

1    The instant <u>in rem</u> civil forfeiture lawsuit against defendants

2  Virtual Currency and $2,061,517.68 in U.S. Currency (collectively,

3  the "defendant assets") is related to <u>United States v. Rustam</u>

4  <u>Rafailevich Gallyamov</u>, Case No. 25-cr-00340-SB (the "criminal case").

5  The instant civil forfeiture case and the earlier-filed criminal case

6  are related because they (a) arise from the same or a closely related

7  transaction, happening or event (Local Rule 83-1.3.2(a)); (b) call

8  for determination of the same or substantially related or similar

9  questions of law and fact (Local Rule 83-1.3.2(b)); or (c) involve

10  one or more defendants from the criminal case in common, and would

11  entail substantial duplication of labor if heard by different judges

12  (Local Rule 83-1.3.2(c)).

13    The complaint in the instant civil forfeiture lawsuit refers to

14  the criminal case and identifies criminal defendant Gallyamov as an

15  individual whose interests may be adversely affected by the civil

16  forfeiture lawsuit.  <u>See</u> forfeiture complaint ¶¶ 8 and 13 and

17  indictment.  In addition, the indictment charges Gallyamov with

18  violations of 18 U.S.C. §§ 371 (conspiracy to violate 18 U.S.C.

19  § 1030) and 1349 (conspiracy to violate 18 U.S.C. § 1343) and seeks

20  the forfeiture of all assets constituting traceable proceeds of the

21  offenses for which Gallyamov has been charged while the instant civil

22  forfeiture lawsuit seeks to forfeit the defendant assets on grounds,

23  among others, that they constitute traceable proceeds of 18 U.S.C.

24  §§ 1030 and 1343 violations.  <u>See</u> indictment forfeiture allegations

25  one and two and forfeiture complaint third claim for relief.  In

26  addition, both the criminal case and the civil forfeiture lawsuit

27  relate to the activities of Gallyamov and the Qakbot conspirators

28  infecting hundreds of thousands of victim computers and extorting

1    ransom payments from victims.  See indictment ¶¶ 1-11 and 19-25 and

2    forfeiture complaint ¶¶ 9-12.  Accordingly, the instant civil

3    forfeiture lawsuit is related to the criminal case because the

4    conditions of Local Rule 83-1.3.2(a), (b) or (c) are met.

5    Dated: May 22, 2025                Respectfully submitted,

6                                       BILAL A. ESSAYLI
                                        United States Attorney
7                                       CHRISTINA T. SHAY
                                        Assistant United States Attorney
8                                       Chief, Criminal Division
                                        JONATHAN GALATZAN
9                                       Assistant United States Attorney
                                        Chief, Asset Forfeiture & Recovery
10                                      Section

11
                                        /s/ James E. Dochterman
12                                      JAMES E. DOCHTERMAN
                                        Assistant United States Attorney
13                                      Asset Forfeiture & Recovery Section

14                                      Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to:

District Judge **Maame Ewusi–Mensah Frimpong**
Magistrate Judge **Margo A. Rocconi**

The case number on all documents filed with the Court should read as follows:

### 2:25–cv–04631 MEMF (MARx)

District judges in the Central District of California refer all discovery-related motions to the assigned magistrate judge pursuant to General Order No. 05-07. Discovery-related motions should be noticed for hearing before the assigned magistrate judge. Please refer to the assigned judges' Procedures and Schedules, available on the Court's website at www.cacd.uscourts. gov/judges-requirements, for additional information.

Clerk, U.S. District Court

May 23, 2025
Date

By  /s/ *Jeannine Tillman*
Deputy Clerk

---

### ATTENTION

*The party that filed the case-initiating document in this case (for example, the complaint or the notice of removal) must serve a copy of this Notice on all parties served with the case-initiating document. In addition, if the case-initiating document in this case was electronically filed, the party that filed it must, upon receipt of this Notice, promptly deliver mandatory chambers copies of all previously filed documents to the newly assigned-district judge. See L.R. 5-4.5. A copy of this Notice should be attached to the first page of the mandatory chambers copy of the case-initiating document.*

---

CV-18 (08/19)                    NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| | CASE NUMBER: |
| UNITED STATES OF AMERICA | |
| Plaintiff(s) | 2:25–cv–04631–MEMF–MAR |
| v. | |
| VIRTUAL CURRENCY, et al. | |
| Defendant(s). | **NOTICE TO PARTIES OF COURT–DIRECTED ADR PROGRAM** |

## NOTICE TO PARTIES:

It is the policy of this Court to encourage settlement of civil litigation when such is in the best interest of the parties. The Court favors any reasonable means, including alternative dispute resolution (ADR), to accomplish this goal. *See* L.R. 16-15. Unless exempted by the trial judge, parties in all civil cases must participate in an ADR process before trial. *See* L.R. 16-15.1.

The district judge to whom the above-referenced case has been assigned is participating in an ADR Program that presumptively directs this case to either the Court Mediation Panel or to private mediation. *See* General Order No. 11-10, §5. For more information about the Mediation Panel, visit the Court website, www.cacd.uscourts.gov, under "ADR."

Pursuant to L.R. 26-1(c), counsel are directed to furnish and discuss with their clients the attached ADR Notice To Parties *before* the conference of the parties mandated by Fed.R.Civ.P. 26(f). Based upon the consultation with their clients and discussion with opposing counsel, counsel must indicate the following in their Joint 26(f) Report: 1) whether the case is best suited for mediation with a neutral from the Court Mediation Panel or private mediation; and 2) when the mediation should occur. *See* L.R. 26-1(c).

At the initial scheduling conference, counsel should be fully prepared to discuss their preference for referral to the Court Mediation Panel or to private mediation and when the mediation should occur. The Court will enter an Order/Referral to ADR at or around the time of the scheduling conference.

Clerk, U.S. District Court

  May 23, 2025  
Date

By   /s/ *Jeannine Tillman*   
Deputy Clerk

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## NOTICE TO PARTIES: COURT POLICY ON SETTLEMENT
## AND USE OF ALTERNATIVE DISPUTE RESOLUTION (ADR)
### Counsel are required to furnish and discuss this Notice with their clients.

Despite the efforts of the courts to achieve a fair, timely and just outcome in all cases, litigation has become an often lengthy and expensive process. For this reason, it is this Court's policy to encourage parties to attempt to settle their disputes, whenever possible, through alternative dispute resolution (ADR).

ADR can reduce both the time it takes to resolve a case and the costs of litigation, which can be substantial. ADR options include mediation, arbitration (binding or non-binding), neutral evaluation (NE), conciliation, mini-trial and fact-finding. ADR can be either Court-directed or privately conducted.

The Court's ADR Program offers mediation through a panel of qualified and impartial attorneys who will encourage the fair, speedy and economic resolution of civil actions. Panel Mediators each have at least ten years of legal experience and are appointed by the Court. They volunteer their preparation time and the first three hours of a mediation session. This is a cost-effective way for parties to explore potential avenues of resolution.

This Court requires that counsel discuss with their clients the ADR options available and instructs them to come to the initial scheduling conference prepared to discuss the parties' choice of ADR option. The ADR options available are: a settlement conference before the magistrate judge assigned to the case or the magistrate judge in Santa Barbara, the Court Mediation Panel, and private mediation. Counsel are also required to indicate the client's choice of ADR option in advance of the initial scheduling conference. *See* L.R. 26-1(c) and Fed.R.Civ.P. 26(f).

Clients and their counsel should carefully consider the anticipated expense of litigation, the uncertainties as to outcome, the time it will take to get to trial, the time an appeal will take if a decision is appealed, the burdens on a client's time, and the costs and expenses of litigation in relation to the amounts or stakes involved.

Each year thousands of civil cases are filed in this district, yet typically no more than one percent go to trial. Most cases are settled between the parties, voluntarily dismissed, resolved through Court-directed or other forms of ADR, or dismissed by the Court as lacking in merit or for other reasons provided by law.

For more information about the Court's ADR Program, the Mediation Panel, and the profiles of mediators, visit the Court website, www.cacd.uscourts.gov, under "ADR."

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>PLAINTIFF(S),<br><br>v.<br><br>VIRTUAL CURRENCY, et al.<br><br>DEFENDANT(S). | CASE NUMBER:<br><br>2:25–cv–04631–MEMF–MAR<br><br>**Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge** |

The parties are advised they may consent to proceed before any available magistrate judge participating in the Voluntary Consent to Magistrate Judges Program to conduct all further proceedings in the case pursuant to 28 U.S.C. § 636(c) and Federal Rules of Civil Procedure 73. The consent list and consent form are available on the court's website at http://www.cacd.uscourts.gov/judges-requirements/court-programs/voluntary-consent-magistrate-judges-program. To confirm a particular magistrate judge's availability to schedule the trial in the time frame desired by the parties and/or willingness to accommodate any other special requests of the parties, please contact the magistrate judge's courtroom deputy prior to filing the consent.

Since magistrate judges do not handle felony criminal trials, civil trial dates are not at risk of being preempted by a felony criminal trial, which normally has priority. Further, in some cases, the magistrate judge may be able to assign an earlier trial date than a district judge. The parties can select a participating Magistrate Judge from any of the three divisions in the Central District of California. There may be other advantages or disadvantages which you will want to consider.

The plaintiff or removing party must serve this Notice on each named party in the case.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America | **CASE NUMBER** |
| | 2:25-cv-04631-MEMF-MARx |
| v.      **PLAINTIFF(S)** | |
| Virtual Currency | **ORDER RE TRANSFER** |
| | **(RELATED CASES)** |
| **DEFENDANT(S).** | |

## CONSENT

I hereby consent to the transfer of the above-entitled case to my calendar, pursuant to this Court's General Order in the Matter of Assignment of Cases and Duties to District Judges.

| June 27, 2025 | Stanley Blumenfeld, Jr. |
|---|---|
| Date | United States District Judge |

## DECLINATION

I hereby decline to transfer the above-entitled case to my calendar for the reasons set forth:

_____

_____

_____

_____

| _____ | _____ |
|---|---|
| Date | United States District Judge |

## REASON FOR TRANSFER AS INDICATED BY COUNSEL

Case    2:25-cr-00340-SB    and the present case:

☑ A.    Arise from the same or closely related transactions, happenings or events; or

☑ B.    Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.    For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.    Involve one or more defendants from the criminal case in common, and would entail substantial duplication of labor if heard by different judges (applicable only on civil forfeiture action).

## NOTICE TO COUNSEL FROM CLERK

      Pursuant to the above transfer, any discovery matters that are or may be referred to a Magistrate Judge are hereby transferred from Magistrate Judge _____ N/A _____ to Magistrate Judge _____ N/A _____ .

      On all documents subsequently filed in this case, please substitute the initials _SB (MARx)_ after the case number in place of the initials of the prior judge, so that the case number will read _2:25-cv-04631 SB (MARx)_ . This is very important because the documents are routed to the assigned judges by means of these initials

cc: ☐ *Previous Judge*    ☐ *Statistics Clerk*

CV-34 (06/23)           **ORDER RE TRANSFER (Related Cases)**

1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

9

10

UNITED STATES OF AMERICA

Plaintiff(s),

v.

VIRTUAL CURRENCY, et al.

Defendant(s).

Case No.  2:25−cv−04631−SB−MAR

**STANDING ORDER FOR CIVIL CASES ASSIGNED TO JUDGE STANLEY BLUMENFELD, JR.**

**[Updated 3/1/2024]**

11

12

13

14

15

16

17

18

19

**READ THIS ORDER CAREFULLY BECAUSE IT CONTROLS THIS CASE AND DIFFERS IN PART FROM THE LOCAL RULES. FAILURE TO COMPLY MAY RESULT IN SANCTIONS.**

20

21

22

23

24

Counsel for the plaintiff must immediately serve this Order on all parties, including any new parties to the action. If this case was removed from state court, the defendant that removed the case must serve this Order on all other parties. A hyperlinked table of contents appears below.

25

26

27

28

# TABLE OF CONTENTS

1.  **Counsel**

2.  **Communications with Chambers**

3.  **Pleadings**

4.  **Discovery**

5.  **Filing Requirements**

6.  **General Motion Requirements**

7.  **Specific Motion Requirements**

8.  **Hearings**

9.  **Ex Parte Applications**

10. **Continuances**

11. **Class Actions**

12. **ERISA Cases (Benefit Claims)**

13. **Bankruptcy Appeals**

14. **Consent to Magistrate Judge**

15. **Sanctions for Failing to Comply**

1.    **COUNSEL**

a.    **Civility**. All counsel must immediately review and comply with the Court's Civility and Professionalism Guidelines, available at (https://www.cacd.uscourts.gov/attorneys/admissions/civility−and− (professionalism−guidelines). Failure to do so may result in sanctions.

b.    **Presence of Lead Counsel**. Only one attorney for a party may be designated as lead counsel (and the designation must appear on the docket if a party has more than one attorney). Lead counsel must attend all proceedings set by this Court. For proceedings not set by the Court, (e.g., motion hearings), lead counsel are encouraged to permit junior lawyers to fully participate in them. Only one counsel may be designated to argue a motion absent Court approval.

c.    **Self-Represented Parties (a.k.a. "Pro Se" Litigants)**. Parties appearing in propria persona (pro se litigants) are required to comply with all Local Rules, including Local Rule 16 ("Pretrial Conferences; Scheduling; Management"). In this Order, the term "counsel" includes pro se

litigants. Only individuals may represent themselves. A corporation or other entity must be represented by counsel, and if counsel seeks to withdraw, counsel must advise the entity of the dire consequences of failing to obtain substitute counsel before seeking withdrawal–i.e., a plaintiff entity's case will be dismissed or a defendant entity will default. *See* Local Rule 83-2.3.4.

    **d.**    **Duty to Notify of Settlement**. Counsel must advise the Court immediately if (1) the case or any pending matter has been resolved or (2) a motion is pending and the parties are engaged in serious negotiations that appear likely to resolve the case or the pending motion (as discussed in more detail in 8(f), *infra*). Failure to provide timely notice of settlement may result in sanctions.

    **e.**    **No "Notice of Unavailability**." A "Notice of Unavailability" has no legal effect and should not be filed.

**2.**    **COMMUNICATIONS WITH CHAMBERS**

Counsel shall not (1) initiate contact with the courtroom deputy clerk (CRD) by telephone or (2) contact the CRD about the status of a pending matter. Nor should counsel contact the CRD to inquire about court procedure when the answer is readily available by consulting the Local Rules and the Court's standing orders. Any appropriate inquiry directed to the CRD must be by email with a copy to all parties and a list of all counsel's email addresses and telephone numbers in the body of the email.

**3.**    **PLEADINGS**

    **a.**    **Service of the Complaint**. The plaintiff(s) shall promptly serve the complaint in accordance with Fed. R. Civ. P. 4 and file the proofs of service pursuant to Fed. R. Civ. P. 4(l). Any defendant, including any "Doe" or fictitiously named defendant, not served within 90 days after the case is filed shall be dismissed pursuant to Fed. R. Civ. P. 4(m).

1    **b**.    **Removed Actions**. Any answer filed in state court must be refiled in this

2         Court as a supplement to the Notice of Removal. Any pending motion in

3         state court before the case was removed must be re-noticed in accordance

4         with Local Rule 7. If a removed action contains a "form pleading" (i.e., a

5         check-the-box pleading), the party (or parties) that filed the form

6         pleading must file with this Court a pleading that complies with the

7         federal rules within 30 days of the filing of the notice of removal. See

8         Fed. R. Civ. P. 7, 7.1, 8, 9, 10, and 11. An amended complaint filed

9         within 30 days after removal to replace a form complaint pursuant to this

10        instruction shall be deemed an amended complaint with "the court's

11        leave" pursuant to Rule 15(a)(2).

12   **c**.    **Status of Fictitiously Named Defendants**.

13        i.    The plaintiff should identify and serve any fictitiously named

14              defendant(s) before the date of the mandatory scheduling

15              conference (MSC) held pursuant to Fed. R. Civ. P. 16(b).

16        ii.   All Doe defendants remaining 60 days after the MSC (or on the

17              date set forth in the scheduling order, if applicable) are dismissed

18              by operation of this Order without further notice ***unless*** plaintiff

19              requests and justifies the need for additional time in the joint report

20              for the MSC and the Court grants an extension.

21        iii.  Before moving to substitute a defendant for a Doe defendant, the

22              plaintiff must seek the consent of counsel for all defendants,

23              including counsel for a represented Doe defendant. If denied

24              consent, the plaintiff must file a regularly noticed motion. In

25              diversity cases, the plaintiff's motion must address whether the

26              addition of the newly named party destroys diversity jurisdiction.

27              *See* 28 U.S.C. § 1447(c), (e).

28

4.   **DISCOVERY**.

    a.   **Magistrate Judge Referral**. All discovery matters are referred to the assigned magistrate judge. All discovery documents must include the words "DISCOVERY MATTER" in the caption to ensure proper routing. Do not deliver Chambers copies of these documents to Judge Blumenfeld. The decision of the magistrate judge shall be final, subject to limited review requiring a showing that the decision is clearly erroneous or contrary to law. Any party may file and serve a motion for review within 14 days of either (i) service of a written ruling or (ii) an oral ruling that expressly will not be followed by a written ruling. The motion must specify which portions of the ruling are clearly erroneous or contrary to law, supported by points and authorities. Counsel shall deliver a conformed copy of the moving papers and responses to the magistrate judge's clerk at the time of filing.

    b.   **Discovery Protective Orders**. Proposed protective orders for discovery must be submitted to the assigned magistrate judge. Such orders should not purport to allow, without further order of Judge Blumenfeld, the filing under seal of pleadings or documents filed in connection with a dispositive motion, a class certification motion, or trial before Judge Blumenfeld. The existence of a protective order does not alone justify the filing of pleadings or other documents under seal, in whole or in part.

    c.   **Juvenile Records**. In cases that will require access to juvenile records, the parties shall identify the necessary records and file all requests for such records with the appropriate state court as early as possible–generally no later than the MSC. If the parties fail to do so, the Court is unlikely to grant a continuance based on delay in the process for obtaining juvenile records.

5.   **FILING REQUIREMENTS**

a.   **Text Searchability**. All documents–including pleadings, motions, and exhibits–submitted to the Court must be text-searchable (i.e., "OCR'd").

b.   **Documents with Declarations, Exhibits, and Other Attachments**. Except for filings in support of motions for summary judgment (*see* MSJ Standing Order), if a filed or lodged document has declarations, exhibits, or other attachments, each attachment must be filed as a separately docketed attachment to the main docket entry with a description of the attachment (e.g., Dkt. 29-1 Smith Declaration, 29-2 Ex. 1 - License Agreement, 29-3 Request for Judicial Notice). The Court may strike or decline to consider motions, stipulations, or other documents with attachments that are not filed in accordance with this Order.

c.   **Artificial Intelligence**. Any party who uses generative artificial. intelligence (such as ChatGPT, Harvey, CoCounsel, or Google Bard) to generate any portion of a brief, pleading, or other filing must attach to the filing a separate declaration disclosing the use of artificial intelligence and certifying that the filer has reviewed the source material and verified that the artificially generated content is accurate and complies with the filer's Rule 11 obligations.

d.   **Proposed Orders**. Each party filing a motion or seeking the determination of any matter shall serve and lodge a proposed order setting forth the relief or action sought and a brief statement of the rationale for the decision with appropriate citations.

    i.   <u>Templates</u>. Use the "Proposed Order" or the "CMO Continuance Order" template–whichever is applicable–located on <u>Judge Blumenfeld's webpage</u> under "Orders & Additional Documents." Failure to do so may result in the striking of the request. Proposed orders should *not* contain: (1) attorney names, addresses, etc. on

the caption page; (2) a footer with the document name or other

information; or (3) a watermark or designation of the firm name.

Proposed orders should be formatted in the same fashion as

motions. *See infra* paragraph 6(c) (iii).

    ii.   <u>Email</u>. The Court requires strict compliance with Local Rule 5-

4.4.2, which states that "a Microsoft Word copy of the proposed

document, along with a PDF copy of the electronically filed main

document, shall be e-mailed to the assigned judge's generic

chambers e-mail address." The Court will not consider a

stipulation, ex parte application, or other request for relief until a

compliant proposed order is received by email. A filing may be

stricken for failure to timely comply.

**e.**   **Chambers Copies**. Chambers Copies (paper copies that are sent to

Chambers upon electronic filing of the document) are required for the

following documents only: (1) motion papers (motions, oppositions,

replies, and related documents[1] ), including motions in limine; (2)

ex parte applications for temporary restraining orders; and (3) pretrial

documents (memoranda of fact and law, witness and exhibit lists, pretrial

conference statement, jury instructions, verdict forms, etc.). Chambers

Copies must comply with the rules below.

    i.   <u>Timeliness and location</u>. Deliver Chambers Copies promptly to

Judge Blumenfeld's mailbox outside the Clerk's Office on the 4th

Floor of the First Street Courthouse. Applicable documents will not

be considered until Chambers Copies are submitted. Delay in

submitting such copies will delay consideration of the submission.

    ii.   <u>Format</u>. Chambers Copies, which do not need to be submitted

---

[1] A motion to dismiss should include a copy of the challenged pleading.

1    with blue backing, should be copies of the filed documcent–i.e.,

2    they should have the docket information on the top of each page.

3    Filings that include highlighting, color photographs, "redlining," or

4    the like should be printed in color. Short filings should be fastened

5    by a staple or binder clip in the top left corner. Larger filings

6    should be delivered in a three-ring binder. Binders should be no

7    larger than 4 inches. Binders must have both a cover sheet and a

8    spine label that includes the case name, case number, and a

9    description of the contents.

10        iii.    Exhibits. Separate all exhibits by a tab divider on the right or

11    bottom of the document. If the evidence exceeds 50 pages, the

12    Chambers Copy must: (1) include a table of contents; and (2) be in

13    a tabbed three-ring binder with each exhibit separated by a tab

14    divider on the right or the bottom. If the evidence exceeds 200

15    pages, the table of contents and evidence must be placed in a Slant

16    D-Ring binder.

17    f.    **Notices of Deficiency**. When a filing fails to comply with court rules,

18    the Clerk's Office may issue a notice of deficiency, which typically states

19    that no action is required unless the Court directs otherwise. The parties

20    should not treat the deficient filing as having been stricken unless the

21    Court separately orders it stricken. A deficiency notice by itself does not

22    relieve any party of its obligations with respect to a filing (e.g., timely

23    filing an opposition or appearing at a noticed hearing).

24    6.    **GENERAL MOTION REQUIREMENTS**

25    a.    **"Meet and Confer" Requirement**. Local Rule 7-3 requires counsel to

26    conduct a prefiling conference "to discuss thoroughly . . . the substance

27    of the contemplated motion and any potential resolution."

28        i.    Scope. This requirement applies in all cases, including those with

pro se litigants, and extends to all issues. If the parties are unable to fully resolve the dispute, they shall attempt to narrow the scope of the contested issues. Parties must meet and confer in person or by videoconference; email correspondence is insufficient. A motion not supported by the certification below may be stricken or summarily denied.

 ii. <u>Certification</u>. The moving party *shall* include a signed certification attached to the end of the filed motion as follows:

  "*I certify that the parties met in person or by videoconference, thoroughly discussed each and every issue raised in the motion, and attempted in good faith to resolve the motion in whole or in part.*"

  If a nonmoving party refuses to participate in good faith, the moving party shall explain the refusal in detail.

 iii. <u>Sanctions</u>. Failure by any party to comply in good faith with the "meet and confer" requirement shall result in an order to show cause re: sanctions–including, as appropriate, striking or denying the motion, deeming the motion unopposed, and/or awarding monetary sanctions.

 **b**. **Time for Filing and Hearing Motions**. This Court hears civil motions on Fridays at 8:30 a.m.

  i. <u>Holidays</u>. If Friday is a court holiday, select another Friday. Opposition or reply papers due on a Friday holiday may be filed the following Monday.

  ii. <u>Closed Dates</u>. Hearing dates are closed at least four weeks in advance, and closed hearing dates are noted on <u>Judge Blumenfeld's webpage</u>. A motion filed on a closed hearing date will be stricken or continued at the Court's discretion. *A party that*

*waits too long and files a motion to be heard on a date that turns*
*out to be unavailable risks having the motion stricken and not*
*considered at all.*

    iii.   <u>Non-Opposition</u>. Failure to timely oppose a motion will likely result in the motion being granted after the opposition would have been due. *See* Local Rule 7-12 (failure to timely file "may be deemed consent to the granting . . . of the motion").

    iv.   <u>Withdrawn</u>. If the parties resolve the issue(s) presented in a motion, by settlement or otherwise, the Court must be notified immediately to avoid unnecessary judicial work.

**c.**   **Length, Footnotes, and Format of Motion Papers**

    i.   <u>Length</u>. Unless stated otherwise, no supporting or opposing memorandum shall exceed 7,000 words (or 25 pages, double spaced, if handwritten), and no reply memorandum shall exceed 4,000 words (or 15 pages, double spaced, if handwritten)–excluding only indices and exhibits. Counsel shall certify compliance with the word count pursuant to Local Rule 11-6.2. Good cause to extend these limitations will rarely be found. A memorandum that exceeds the allowable length may be stricken.

    ii.   <u>Footnotes</u>. Use no more than eight footnotes in any supporting or opposing brief, and no more than five footnotes in any reply. Citations that support a statement in the main text must be included in the main text, not in footnotes.

    iii.   <u>Format</u>. Typeface and spacing shall comply with Local Rule 11-3.1.1, except that the parties are required to use only 14-point Times New Roman font. Footnotes shall be in the same font and the same size as the body of the memorandum and separated by 12-point spacing.

iv.   Reply Briefs. The purpose of a reply brief is to respond succinctly to the arguments in the opposition. A reply brief should not repeat the background or legal standard contained in the motion and should not repeat arguments except to the extent necessary to respond to the opposition.

d.   **Citations to Authority**. Any argument or statement of law not supported by legal authority may be deemed *waived or forfeited* to the extent allowed by law. The parties should comply with Bluebook formatting and the citation requirements below.

i.   Pin Cites. Case citations must identify both the case cited and the specific page referenced.

ii.   String Cites. Parties should not use string cites without a good reason. When using string cites, a party should include a parenthetical explanation for each cited case.

iii.   Legal Databases. When citing to unpublished materials in legal databases, cite to Westlaw (*not* Lexis) whenever possible. However, parties that do not have access to Westlaw will not be penalized for citing to other sources.

iv.   U.S. Statutes. Statutory references should identify with specificity the sections and subsections referenced. Citations should be to the relevant official statutory code (e.g., the U.S. Code) and should not merely reference the popular name of an act.

v.   Treatises, Manuals, and the Like. Citations to treatises, manuals, and other materials should include the volume, section, and relevant pages. Attach copies if these materials are not accessible on Westlaw, especially for historical materials (e.g., older legislative history).

# 7.  **SPECIFIC MOTION REQUIREMENTS**

a.  **Motions Pursuant to Rule 12**. Most motions to dismiss or strike, especially motions raising alleged defects in a complaint, answer, or counterclaim that could be corrected by amendment, can be avoided if the parties confer in good faith as required by Local Rule 7-3. In general, the Court will provide leave to amend upon granting a motion to dismiss unless it is clear the complaint is not correctible. *See Rosenberg Bros & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960) (requiring "extreme liberality" in favor of amendments). If the Ninth Circuit's "extreme liberality" standard applies to a meritoriously filed motion, the Court may summarily grant the motion with leave to amend. A good-faith "meet and confer" may avoid this costly and inefficient process. If the Court grants a motion to dismiss with leave to amend, the plaintiff must file an amended complaint within the time period specified by the Court. Failure to timely file an amended complaint will result in dismissal with prejudice.

b.  **Motions to Amend Pleadings**. A motion to amend the pleadings must describe and state the effect of the proposed amendment and be accompanied by a "redlined" version of the proposed amended pleading indicating all additions and deletions to the prior version of the pleading. The redlined version must be delivered to Chambers (in paper form) and to Chambers email (in electronic form using Word). Before the motion is filed, the redlined version also must be delivered to opposing counsel at least two hours in advance of the Local Rule 7-3 conference; and if the plaintiff later changes the delivered version, counsel will be required to meet again about the revised pleading. In addition to the requirements of the Local Rules, all amended pleadings must be serially numbered to differentiate each amendment (i.e., "First

Amended Complaint," "Second Amended Complaint").

c. **Motions for Summary Judgment**. Please refer to Judge Blumenfeld's Standing Order re: Motions for Summary Judgment found at https://www.cacd.uscourts.gov/honorable–stanley–blumenfeld–jr.

d. **PLRA Exhaustion Motions**. The issue of exhaustion under the Prison Litigation Reform Act (PLRA) must be raised at the beginning of the litigation. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). A party seeking to obtain a judicial determination of any material fact dispute precluding summary judgment on the exhaustion issue must file before this Court a request for a hearing *within 14 days of the filing of the order denying summary judgment*. The failure to file a timely request may be construed as a waiver of the exhaustion issue.

e. **Motions for Default Judgments**. Unless the Court orders otherwise, motions for default judgment shall be filed within 14 days after the later of (1) entry of default against the last remaining defendant or (2) resolution of all claims against all defendants who have not defaulted. The motion must include a showing of both subject-matter and personal jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). A plaintiff who moves for default judgment and wishes to seek attorney's fees and costs must include in the motion a properly supported request for attorney's fees and costs together with the motion for default judgment. Failure to do so will result in the striking of any subsequent motion for attorney's fees and costs absent a showing of good cause. The Court may vacate the hearing on a motion for default judgment if no opposition is timely filed, and the notice of motion should so state. Unless the Court orders otherwise, the movant must appear at the motion hearing prepared to argue the motion and respond to any tentative opinion even in the absence of an opposition.

66
13

**f.    Motions for Attorney's Fees**. A motion for attorney's fees must be supported by documentation of the billed hours for which the movant seeks to recover fees. For any motion requesting more than $50,000 in fees, the movant shall additionally provide by email to the CRD an Excel spreadsheet documenting the hours for which the movant seeks recovery, using the format in the following example:

| Date | Name | Position | Task | Category | Hours | Rate | Amount |
|------|------|----------|------|----------|-------|------|--------|
| 3/2/23 | John Smith | Associate | Research choice of law for motion to dismiss | MTD | 0.7 | $300 | $210.00 |
| 3/5/23 | Jane Doe | Partner | Spoke with client about medical history | CC | 0.2 | $500 | $100.00 |
| 3/5/23 | Jerry Roe | Paralegal | Assembled case folder | ADM | 01 | $150 | $15.00 |

If the parties use abbreviations in the category column (as in the example provided), they shall include a legend identifying the meaning of each abbreviation.

**g.    Applications to Seal**. If the Court has previously granted leave to seal a particular exhibit, the parties need not file a new application to file that exhibit under seal in connection with a new filing. The parties may simply file the exhibit under seal together with a statement that the Court has already permitted sealing of the exhibit, with a citation to the relevant order.

## 8.    MOTION HEARINGS

**a.    Remote Appearances**. Remote appearances are not permitted absent good cause shown in a declaration concurrently filed with the moving papers or the opposition. Absent a concurrent filing, a party requesting to appear remotely must submit a declaration establishing that the party is

unable to appear in person due to an unanticipated and unavoidable emergency and that the party made the request promptly upon learning of the emergency. Instructions for remote appearance can be found on Judge Blumenfeld's webpage. Counsel appearing remotely are responsible for ensuring that their equipment and the internet connection in the location from which they will be participating are reliable and adequate for uninterrupted video participation.

**b**. **Submission without Argument**. The Court may take a motion off calendar if it concludes the decision will not benefit from oral argument.

**c**. **Time**. If oral argument is permitted, the parties will have a total of 20 minutes, divided equally between the sides, unless the Court states otherwise. If the Court believes that the matter warrants less or more time, it will advise counsel at the hearing.

**d**. **Tentatives**. The Court often issues written tentative rulings and makes them available on Judge Blumenfeld's webpage the afternoon before the hearing by 6:00 p.m. The purpose of the tentative ruling is to focus the discussion at the hearing. No party shall file any written response to the tentative ruling without leave of court. A tentative ruling does not represent the final decision of the Court, and the parties are *strictly prohibited* from filing it as an exhibit or otherwise in any case.

**e**. **Oral Argument**. If a tentative has issued, the parties should be prepared to explain why the analysis is correct or incorrect. Also, the Court often tests its reasoning by asking questions and expects counsel to respond directly and candidly.

**f**. **Settlement**. Counsel *must* notify the Court at least two weeks before the scheduled hearing if the parties are conducting settlement discussions that may render the motion moot and *must* notify the Court immediately if a settlement is reached. A belated notice of settlement wastes scarce

judicial resources, and will subject the offending parties to sanctions–
and it may also result in the release of the tentative ruling.

**9.  EX PARTE APPLICATIONS**

A party seeking ex parte relief, including a temporary restraining order, must comply with Local Rule 7-19.

    **a.**    **Notice**. The applicant must (1) notify the other party (or parties) that opposing papers are to be filed no later than 48 hours following service or by 3:00 p.m. on the first court day after the service, whichever is later, and (2) advise the Court in a declaration whether any party opposes the application. If an opposing party did not disclose its position to the applicant before the application is filed, the opposing party should advise the CRD by email as soon as possible whether it intends to oppose the application.

    **b.**    **Submission**. The application will not be considered until a Chambers Copy has been provided. Once the application is submitted for decision, the Court will rule on the papers unless it elects to set a hearing. Do not contact Chambers about the status.

    **c.**    **No Tolling of Obligation**. An application or stipulation does not serve to toll, or relieve a party of, an underlying obligation (e.g., a soon-to-expire deadline). Parties should not assume that an unopposed ex parte application or stipulation will be granted; and a last-minute application or stipulation that is denied may result in a party's defaulting or on the underlying obligation.

**10.  CONTINUANCES**

The Court grants continuances of pretrial and trial deadlines only on a timely showing of good cause. The Court applies the same standard of good cause to all extension requests–whether opposed, unopposed, or jointly requested.

    **a.**    **Good Cause**. Good cause requires a specific, detailed, and non-

conclusory showing of diligence from the outset of the case, describing: (1) all relevant work previously done (including when each item was completed), (2) all relevant work that remains to be done, (3) why the remaining work could not previously have been done (including efforts made to complete each remaining item), and (4) why the amount of time requested is needed to complete the remaining work.

b. **Diligence**. The Case Management Order (CMO) that the parties will receive following the MSC contains an attachment with information that must be submitted in table form in showing diligence. Diligence generally will *not* be found when a party opts for strategic staging of discovery (or other tasks) or in-person depositions that prevent completion within the existing deadline. Moreover, a desire to engage in settlement discussions does not constitute good cause to extend existing deadlines. The parties are strongly encouraged to agree to exchange initial disclosures promptly and to actively commence discovery before the MSC.

c. **Proposed Order**. The parties must complete and submit the CMO Extension template on the Judge Blumenfeld's webpage under "Orders & Additional Documents." Please follow the highlighted directions at the end of the document. File the Proposed Order and submit an electronic Word copy to Judge Blumenfeld's Chambers email (SB_Chambers@cacd.uscourts.gov). Failure to use and properly submit the CMO Extension template will result in the striking or summary denial of the request.

d. **Denied with Prejudice**. Denial of an extension request, including summary denial, is *with prejudice*. The parties should therefore present all available information showing that the outstanding discovery or other litigation tasks cannot be completed within the existing deadlines despite

all reasonable diligence from the outset of the case. A party is *not* permitted to resubmit a denied extension request with information that was either previously submitted or previously available.

\*       \*       \*

*Failure to comply with the procedural requirements* above–including the use and proper submission of the table in the MSC Order attachment and the CMO Extension template–may result in the extension request being stricken or summarily denied. An improper resubmission of a denied extension request may result in sanctions.

## 11.   CLASS ACTIONS

The parties in a putative class action, are to act diligently and begin discovery immediately, so that the motion for class certification can be filed expeditiously. A motion for class certification must be filed no later than 120 days from the date initially set for the scheduling conference, unless the Court orders otherwise.

## 12.   ERISA CASES (BENEFIT CLAIMS)

The parties may receive an MSC Order as a matter of course. Because the ordinary pretrial and trial schedule does not apply to these ERISA cases, the parties need only submit a joint status report identifying any special issues that should be considered. The parties should proceed with the preparation of the administrative record and briefing without delay upon service of the complaint. If necessary, the Court will hear motions to determine the standard of review, whether discovery will be permitted, and the scope of the administrative record. Counsel are discouraged from filing motions for summary judgment or partial summary judgment for a merits determination. *See Kearney v. Standard Insurance Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (en banc) (noting the difference in procedures between Rule 56 and Rule 52). A court trial, ordinarily limited to oral argument on the administrative record, will be scheduled within six months from the filing of the original complaint, unless good cause for additional time is

shown in the status report. If the Court concludes that the decision would not

benefit from oral argument, the matter may be submitted for decision on the papers.

## 13.  **BANKRUPTCY APPEALS**

Counsel must comply with the Notice Regarding Appeal from Bankruptcy

Court issued at the time the appeal is filed in the district court. The matter is

deemed under submission on the filing of the appellant's reply brief. The Court

considers bankruptcy appeals on the papers and usually does not set these matters

for hearing.

## 14.  **CONSENT TO MAGISTRATE JUDGE**

The parties may consent to have a magistrate judge preside over the entire

case, including trial. The parties may choose any magistrate judge on the Voluntary

Consent List found on the Central District website. If the parties consent, they

should contact the courtroom deputy of the selected magistrate judge to confirm

his or her availability and, upon confirmation, promptly file a "Notice of Lodging

of Consent" along with Form CV-11D (*Statement of Consent to Proceed Before*

*a United States Magistrate Judge*) attached thereto.

## 15.  **SANCTIONS FOR FAILURE TO COMPLY**

If, without satisfactory explanation, counsel fail to file the required Joint Rule

26(f) report or the required pretrial documents, fail to appear at any scheduled

proceeding, or otherwise fail to comply with judicial orders or rules, the Court shall

take any action it deems appropriate, including: (i) dismissal of the case for failure

to prosecute, if the failure occurs on the part of the plaintiff; (ii) striking the

answer resulting in default if such failure occurs on the part of the defendant;

(iii) imposing monetary sanctions against the offending party and counsel,

and/or (iv) where applicable, revoking the pro hac vice status of attorneys so admitted.

Date: June 30, 2025

_____

Stanley Blumenfeld, Jr.
United States District Judge

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA



Clerk's Office

**Services for Attorneys and the General Public**

October 2010

---

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

~~~~~

**WESTERN DIVISION**
U.S. Courthouse
Clerk's Office, Room G-8
312 North Spring Street
Los Angeles, California 90012
213-894-1565

~~~~~

**SOUTHERN DIVISION**
Ronald Reagan Federal Building and Courthouse
Clerk's Office, Room 1-053
411 West 4th Street
Santa Ana, California 92701-4516
714-338-4750

~~~~~

**EASTERN DIVISION**
U.S. Courthouse
Clerk's Office, Room 134
3470 Twelfth Street
Riverside, California 92501
951-328-4450

~~~~~

www.cacd.uscourts.gov

---

## Court Reporters Office

### Ordering Transcripts

District court civil and criminal transcripts may be ordered by making financial arrangements with the individual court reporters. To identify which reporter to contact for a specific in-court matter before April 2002, please refer to the appropriate docket entry on the civil or criminal docket sheet which is now electronically available on PACER. For specific in-court matters after April 2002, the court reporter assignment schedule is on the website. Go to Court Reporter Schedule, then view all and select the date you need to check. Transcript orders from magistrate judge courts should be placed with the Court Recording Section of the Records Department. Please refer to the website for the necessary telephone numbers; applicable fees, and identification of court reporter assignments. For more information, you can call the court reporter scheduler's office at 213-894-0658.

### Ordering Realtime Connection

Realtime reporting connection should be requested in advance of the trial. Please contact the court reporter scheduler's office to request the realtime connection. There is a separate charge for the realtime connection. Please refer to the transcript rates to determine the cost. The only court reporters who may connect to realtime and charge for it are federally certified realtime court reporters. Many reporters will provide the realtime connection if a daily transcript is being ordered. The attorney must bring his or her own laptop computer.

### Ordering Dailies

A request for a daily transcript should be made as soon as possible before the trial begins. Please notify the court reporter scheduler's office at least a week in advance of the trial start date in order to request a daily. The daily will not commence until financial arrangements have been made. Please do not walk into court on the first day of trial and request a daily transcript as reporters need time to prepare.

### Touch Screens

A touch screen is available in the lobby of each division. This device provides court addresses, hours, telephone numbers, a daily master calendar, and the weekly Post Indictment Arraignment calendar.

74

The United States District Court, Central District of California is one of the largest federal courts in the nation. The clerk's office has put this brochure together to provide a quick reference for attorneys and the general public regarding the services that are currently available. Feedback and suggestions as to how we might improve our service are always appreciated.

## Website

Information about the district court may be obtained on-line. Users can gather information about attorney admissions and filing procedures; review master and daily calendars, requirements for court appearances, Local Rules, General Orders, and recently issued and published opinions; obtain extensive attorney assistance information and available court services; download court forms, and keep apprised of recent innovations in the clerk's office. Visit the court's website at www.cacd.uscourts.gov.

## Office Hours

The clerk's office hours are 10:00 a.m. - 4:00 p.m., Monday - Friday, excluding court observed holidays. The drop-off box service has been discontinued. For emergency filings between 4:00 p.m. - 5:00 p.m., call Western Division: 213-894-2127; Southern Division: 714-338-4764/4760; Eastern Division: 951-328-4470. After 5:00 p.m., call 213-894-2485.

## WebPACER

The "Public Access to Court Electronic Records" (PACER) is a browser based electronic retrieval system that provides criminal and civil summaries and docket information using a computer terminal. PACER also provides access to images of electronically filed court documents. The PACER service is available 24 hours a day, including weekends. To establish a PACER account, contact the PACER Service Center: 800-676-6856.

## Records

All pending criminal, civil, magistrate, and multi-district litigation (MDL) cases may be reviewed, at no charge, at the clerk's office. Case files and dockets may be viewed on the same day as requested unless the requested material is unavailable. Certain closed cases are located at the court's storage facility and may be ordered, viewed and copies obtained directly from National Archives and Records Administration (NARA) at 951-956-2000. You will need to provide the accession, location and box numbers to NARA for file retrieval. This information may be obtained from the court's website at www.cacd.uscourts.gov/nara. If there are no search results, call Western Division: 213-894-3863, email

to records_cacd@cacd.uscourts.gov; Southern Division: 714-338-4785; Eastern Division: 951-328-4450. To identify which clerk's office maintains the case file you wish to view, please refer to the prefix of the case number (two digits after the letters represent the filing year; for example, 09 is year 2009) as follows:

Western Division (Los Angeles)
CV 09-0000 – civil          CR 09-0000 - criminal
Southern Division (Santa Ana)
SACV 09-0000 - civil        SACR 09-0000 - criminal
Eastern Division (Riverside)
EDCV 09-0000 – civil        EDCR 09-0000 - criminal

There is a charge for copies, certifications, and exemplifications. For more information on closed or archived court records, visit the court's website at www.cacd.uscourts.gov/records.

## Photocopy Service

Photocopy services are available from outside copy services. Please note that exemplifications and certifications must still be obtained from the clerk's office. For payment options, contact the appropriate vendors: Western Division: 213-253-9413; Southern Division: 714-543-8123; Eastern Division: 951-328-4470.

## Interpreter Services

The interpreter services section of the clerk's office provides interpreters for all court proceedings instituted by the United States that require the use of a language other than English. The section also makes interpreter referrals in response to inquiries from law firms and the general public in cases where court-appointed interpreters are not indicated. For further information, please call 213-894-4370 or visit the court's website at www.cacd.uscourts.gov/interpreters.

## Jury Section

The court's website offers valuable information to prospective jurors. You may see responses to frequently asked questions, read the General Order 07-10 regarding the selection of Grand and Petit jurors; download the jury handbook; review jury information for all three divisions; and verify your status/instructions utilizing the Automated Juror Information System (AJIS). Submit questions or comments to the jury section at jury@cacd.uscourts.gov. Wired and wireless Internet access is available in jury assembly rooms.

## Attorney Work Room

For attorneys, a work room is located on the second floor of the Spring Street Courthouse, on the first floor of the

Roybal Federal Building, on the tenth floor of the Ronald Reagan Federal Building and U.S. Courthouse, and on the third floor of the Riverside Courthouse. The workrooms have Pentium personal computers with access to Westlaw, WordPerfect, and PACER; laser printers; wired and wireless Internet access; storage lockers; copy machines; and individual conference rooms.

## Evidence Presenters

The clerk's office has evidence presenters available for attorneys to use in court proceedings. This technology connects an overhead projector to monitors which display pictures for the judge, attorneys and the jury. There is no charge for using the equipment; however, due to the high demand for its use, the equipment is reserved on a first-come, first-served basis. For more information or to reserve the equipment, visit the court's website or contact the appropriate divisions: Western Division at 213-894-3061; Southern Division at 714-338-4785; and Eastern Division at 951-328-4450 or 951-328-4451.

## Videoconferencing

Videoconferencing allows parties at off-site locations to appear at court hearings by way of two-way audio and visual monitors. The appropriate courtroom deputy clerk should be contacted as to whether use of this equipment in the courtroom is permitted for the specific hearing or trial. There are minimal telephone charges but no equipment charges for use of the unit. For more information or to reserve the equipment, visit the court's website or contact the court's Space and Facilities Help Desk at 213-894-3061.

## E-Filing

With limited exceptions, all cases are subject to e-filing as governed by General Order 08-02, as amended by General Order 08-11. Please visit the CM/ECF web page at www.cacd.uscourts.gov/cmecf or call the CM/ECF Help Desk at 213-894-0242.

## Pro Se

The Federal Pro Se (Self-Represented Litigant) Clinic is located on the fifth floor, Room 525 in the Federal Courthouse at 312 North Spring Street, Los Angeles, California. The Pro Se Clinic, which is staffed by a lawyer, offers on-site information and guidance to individuals who are representing themselves (without an attorney) in civil actions in the United States District Court. For more information, call 213-385-2977, Ext. 270 or visit the court's website at www.cacd.uscourts.gov/prose.

# UNITED STATE DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA


# NOTICE TO COUNSEL

*The court has directed that the following rules be specifically called to your attention:*

      I.      Continuing Obligation to Report Related Cases (Local Rule 83-1.3.3)

      II.     Service of Papers and Process (Local Rule 4)


## I. CONTINUING OBLIGATION TO REPORT RELATED CASES

Parties are under the continuing obligation to promptly advise the Court whenever one or more civil actions or proceedings previously commenced and one or more currently filed appear to be related.

Local Rule 83-1.3.3 states: "It shall be the continuing duty of the attorney in any case promptly to bring to the attention of the Court, by the filing of a Notice of Related Case(s) pursuant to Local Rule 83-1.3, all facts which in the opinion of the attorney or party appear relevant to a determination whether such action and one or more pending actions should, under the criteria and procedures set forth in Local Rule 83-1.3, be heard by the same judge."

Local Rule 83-1.2.1. states: "It is not permissible to dismiss and thereafter refile an action for the purpose of obtaining a different judge."

Local Rule 83-1.2.2 provides: Whenever an action is dismissed by a party or by the Court before judgment and thereafter the same or essentially the same claims, involving the same or essentially the same parties, are alleged in another action, the later-filed action shall be assigned to the judge to whom the first-filed action was assigned. It shall be the duty of every attorney in any such later-filed action to bring those facts to the attention of the Court in the Civil Cover Sheet and by the filing of a Notice of Related Case(s) pursuant to L.R. 83-1.3.


## II.     SERVICE OF PAPERS AND PROCESS

Local Rule 4-2 states: "Except as otherwise provided by order of Court, or when required by the treaties or statutes of the United States, process shall not be presented to a United States Marshal for Service."   Service of process must be accomplished in accordance with Rule 4 of the Federal Rules of Civil Procedure or in any manner provided by State Law, when applicable. Service upon the United States, an officer or agency thereof, shall be served pursuant to the provisions of FRCP 4 (i).  Service should be promptly made; unreasonable delay may result in dismissal of the action under Local Rule 41 and Rule 4(m) of the Federal Rules of Civil Procedure.  Proof of service or a waiver of service of summons and complaint must be filed with the court.

This notice shall be given by the Clerk to the plaintiff at the time an action is filed (or to the defendant at the time a notice of removal is filed), and by the plaintiff to other parties as attachments to copies of the complaint and summonses, or by the defendant to other parties as attachments to copies of the notice to plaintiffs of removal to federal court, when served.

---

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# CIVILITY AND PROFESSIONALISM GUIDELINES

## Preamble

In its purest form, law is simply a societal mechanism for achieving justice. As officers of the court, judges and lawyers have a duty to use the law for this purpose, for the good of the people. Even though "justice" is a lofty goal, one which is not always reached, when an individual becomes a member of the legal profession, he or she is bound to strive towards this end.

gation costs and fails to advance the client's lawful interests. Perhaps just as importantly, this type of behavior causes the public to lose faith in the legal profession and its ability to benefit society. For these reasons, we find that civility and professionalism among advocates, between lawyer and client, and between bench and bar are essential to the administration of justice.

The following guidelines are de-

## ...there is a growing sense that lawyers regard their livelihood as a business, rather than a profession.

Unfortunately, many do not perceive that achieving justice is the function of law in society today. Among members of the public and lawyers themselves, there is a growing sense that lawyers regard their livelihood as a business, rather than a profession. Viewed in this manner, the lawyer may define his or her ultimate goal as "winning" any given case, by whatever means possible, at any cost, with little sense of whether justice is being served. This attitude manifests itself in an array of obstinate discovery tactics, refusals to accommodate the reasonable requests of opposing counsel re: dates, times, and places; and other needless, time-consuming conflicts between and among adversaries. This type of behavior tends to increase costs of litigation and often leads to the denial of justice.

The Central District recognizes that, while the majority of lawyers do not behave in the above-described manner, in recent years there has been a discernible erosion of civility and professionalism in our courts. This disturbing trend may have severe consequences if we do not act to reverse its course. Incivil behavior does not constitute effective advocacy; rather, it serves to increase liti-

signed to encourage us, the members of the bench and bar, to act towards each other, our clients, and the public with the dignity and civility that our profession demands. In formulating these guidelines, we have borrowed heavily from the efforts of others who have written similar codes for this same purpose. *The Los Angeles County Bar Association Litigation Guidelines*, guidelines issued by other county bar associations within the Central District, the *Standards for Professional Conduct within the Seventh Federal Judicial Circuit*, and the *Texas Lawyer's Creed* all provide excellent models for professional behavior in the law.

We expect that judges and lawyers will voluntarily adhere to these standards as part of a mutual commitment to the elevation of the level of practice in our courts. These guidelines shall not be used as a basis for litigation or for sanctions or penalties.

Nothing in these guidelines supersedes or modifies the existing Local Rules of the Central District, nor do they alter existing standards of conduct wherein lawyer negligence may be determined and/or examined.

## I. Guidelines

### A. Lawyers' Duties to Their Clients

1. We will practice our profession with a continuing awareness that our role is to advance the legitimate interests of our clients. We will endeavor to achieve our clients' lawful objectives in legal transactions and in litigation as quickly and economically as possible.

2. We will be loyal and committed to our clients' lawful objectives, but we will not permit that loyalty and commitment to interfere with our duty to provide objective and independent advice.

3. We will advise our clients that civility and courtesy are expected and are not a sign of weakness.

4. We will treat adverse parties and witnesses with fairness and due consideration. A client has no right to demand that we act in an abusive manner or indulge in any offensive conduct.

5. We will advise our clients that we will not pursue conduct that is intended primarily to harass or drain the financial resources of the opposing party.

6. We will advise our clients that we reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect our clients' lawful objectives. Clients have no right to instruct us to refuse reasonable requests made by other counsel.

7. We will advise our clients regarding availability of mediation, arbitration, and other alternative meth-

ods of resolving and settling disputes.

8.  We will advise our clients of the contents of this creed when undertaking representation.

## B.  Lawyers' Duties to Other Counsel

### 1.  Communications with Adversaries

a.  We will adhere to all express promises and to agreements with other counsel, whether oral or in writing, and will adhere in good faith to all agreements implied by the circumstances or local customs.

b.  When we reach an oral understanding on a proposed agreement or a stipulation and decide to commit it to writing, the drafter will endeavor in good faith to state the oral understanding accurately and completely. The drafter will provide the other counsel with the opportunity to review the writing. As drafts are exchanged between or among counsel, changes from prior drafts will be identified in the draft or otherwise explicitly brought to the attention of other counsel. We will not include in a draft matters to which there has been no agreement without explicitly advising other counsel in writing of the addition.

c.  We will not write letters for the purpose of ascribing to opposing counsel a position he or she has not taken, or to create "a record" of events that have not occurred. Letters intended only to make a record should be used sparingly and only when thought to be necessary under all of the circumstances. Unless specifically permitted or invited by the court, letters between counsel should not be sent to judges.

### 2.  Scheduling Issues

a.  We will not use any form of discovery or discovery scheduling as a means of harassment.

b.  We will consult other counsel regarding scheduling matters in a good faith effort to avoid scheduling conflicts.

c.  We will endeavor to accommodate previously scheduled dates for hearings, depositions, meetings, conferences, vacations, seminars, or other functions that produce good faith calendar conflicts on the part of other counsel, where it is possible to do so without prejudicing the client's rights. If we have been given an accommodation because of a calendar conflict, we will notify those who have accommodated us as soon as the conflict has been removed.

d.  We will notify other counsel and, if appropriate, the court or other persons, at the earliest possible time when hearings, depositions, meetings, or conferences are to be canceled or postponed. Early notice avoids unnecessary travel and expense of counsel and may enable the court to use the previously reserved time for other matters.

e.  Unless time is of the essence, as a matter of courtesy we will grant first requests for reasonable extensions of time to respond to litigation deadlines. After a first extension, any additional requests for time will be considered by balancing the need for expedition against the deference one should ordinarily give to an opponent's schedule of personal and professional engagements, the reasonableness of the length of extension requested, the opponent's willingness to grant reciprocal extensions, the time actually needed for the task, and whether it is likely a court would grant the extension if asked to do so.

f.  We will not request an extension of time solely for the purpose of unjustified delay or to obtain a tactical advantage.

g.  We will not attach to extensions unfair and extraneous conditions. We may impose conditions for the purpose of preserving rights that an extension might jeopardize, or for seeking reciprocal scheduling concessions. We will not, by granting extensions, seek to preclude an opponent's substantive rights, such as his or her right to move against a complaint.

### 3.  Service of Papers

a.  We will not time the filing or service of motions or pleadings in any way that unfairly limits another party's opportunity to respond.

b.  We will not serve papers sufficiently close to a court appearance so as to inhibit the ability of opposing counsel to prepare for that appearance or, where permitted by law, to respond to the papers.

c.  We will not serve papers in order to take advantage of an opponent's known absence from the office or at a time or in a manner designed to inconvenience an adversary, such as late on a Friday afternoon or the day preceding a secular or religious holiday.

d.  When it is likely that service by mail, even when allowed, will prejudice the opposing party, we will effect service personally or by facsimile transmission.

### 4.  Depositions

a.  We will take depositions only when actually needed to ascertain facts or information or to perpetuate testimony. We will not take depositions

2

for the purpose of harassment or to increase litigation expense.

b. We will not engage in any conduct during a deposition that would be inappropriate in the presence of a judge.

c. During depositions we will ask only those questions we reasonably believe are necessary for the prosecution or defense of an action. We will not inquire into a deponent's personal affairs or question a deponent's integrity where such inquiry is irrelevant to the subject matter of the deposition. We will refrain from repetitive or argumentative questions or those asked solely for purposes of harassment.

d. When defending a deposition, we will limit objections to those that are well founded and necessary to protect our client's interests. We recognize that most objections are preserved and need be interposed only when the form of a question is defective or privileged information is sought.

e. When a question is pending, we will not, through objections or otherwise, coach the deponent or suggest answers.

f. We will not direct a deponent to refuse to answer questions unless they seek privileged information or are manifestly irrelevant or calculated to harass.

g. When we obtain documents pursuant to a deposition subpoena, we will make copies of the documents available to opposing counsel at his or her expense, even if the deposition is canceled or adjourned.

### 5.  Document Demands

a. We will carefully craft document production requests so they are limited to those documents we reason-

ably believe are necessary for the prosecution or defense of an action. We will not design production requests to harass or embarrass a party or witness or to impose an undue burden or expense in responding.

b. We will respond to document requests in a timely and reasonable manner and not strain to interpret the request in an artificially restrictive manner to avoid disclosure of relevant and non-privileged documents.

c. We will withhold documents on the grounds of privilege only where it is appropriate to do so.

d. We will not produce documents in a disorganized or unintelligible manner, or in a way designed to hide or obscure the existence of particular documents.

e. We will not delay document production to prevent opposing counsel from inspecting documents prior to scheduled depositions or for any other tactical reason.

### 6.  Interrogatories

a. We will carefully craft interrogatories so that they are limited to those matters we reasonably believe are necessary for the prosecution or defense of an action, and we will not design them to harass or place an undue burden or expense on a party.

b. We will respond to interrogatories in a timely and reasonable manner and will not strain to interpret them in an artificially restrictive manner to avoid disclosure of relevant and non-privileged information.

c. We will base our interrogatory objections on a good faith belief in their merit and not for the purpose of withholding or delaying the disclosure of relevant information. If

an interrogatory is objectionable in part, we will answer the unobjectionable part.

### 7.  Settlement and Alternative Dispute Resolution

a. Except where there are strong and overriding issues of principle, we will raise and explore the issue of settlement in every case as soon as enough is known about the case to make settlement discussion meaningful.

b. We will not falsely hold out the possibility of settlement as a means for adjourning discovery or delaying trial.

c. In every case, we will consider whether the client's interest could be adequately served and the controversy more expeditiously and economically disposed of by arbitration, mediation, or other forms of alternative dispute resolution.

### 8.  Written Submissions to a Court, Including Briefs, Memoranda, Affidavits, Declarations, and Proposed Orders.

a. Before filing a motion with the court, we will engage in more than a mere *pro forma* discussion of its purpose in an effort to resolve the issue with opposing counsel.

b. We will not force our adversary to make a motion and then not oppose it.

c. In submitting briefs or memoranda of points and authorities to the court, we will not rely on facts that are not properly part of the record. We may present historical, economic, or sociological data, if such data appears in or is derived from generally available sources.

3

d. In civil actions, we will stipulate to relevant matters if they are undisputed and if no good faith advocacy basis exists for not stipulating.

e. Unless directly and necessarily in issue, we will not disparage the intelligence, morals, integrity, or personal behavior of our adversaries before the court, either in written submissions or oral presentations.

f. We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety.

g. We will not move for court sanctions against opposing counsel without first conducting a reasonable investigation, and unless fully justified by the circumstances and necessary to protect our client's lawful interests.

h. We will not cause any default or dismissal to be entered without first notifying opposing counsel, when we know his or her identity.

i. When a draft order is to be prepared by counsel to reflect a court ruling, we will draft an order that accurately and completely reflects the court's ruling. We will promptly prepare and submit a proposed order to other counsel and attempt to reconcile any differences before the draft order is presented to the court.

9. *Ex Parte* Communications With the Court

a. We will avoid *ex parte* communication on the substance of a pending case with a judge (or his or her law clerk) before whom such case is pending.

b. Even where applicable laws or rules permit an *ex parte* application or communication to the court, before making such an application or com-

munication we will make diligent efforts to notify the opposing party or his or her attorney. We will make reasonable efforts to accommodate the schedule of such attorney, so that the opposing party may be represented on the application.

c. Where the rules permit an *ex parte* application or communication to the court in an emergency situation, we will make such an application or communication only where there is a *bona fide* emergency such that the lawyer's client will be seriously prejudiced by a failure to make the application or communication on regular notice.

## C. Lawyers' Duties to the Court

1. We will speak and write civilly and respectfully in all communications with the court.

2. We will be punctual and prepared for all court appearances so that all hearings, conferences, and trials may commence on time; if delayed, we will notify the court and counsel, if possible.

3. We will be considerate of the time constraints and pressures on the court and court staff inherent in their efforts to administer justice.

4. We will not engage in any conduct that brings disorder or disruption to the courtroom. We will advise our clients and witnesses appearing in court of the proper conduct expected and required there and, to the best of our ability, prevent our clients and witnesses from creating disorder or disruption.

5. We will not write letters to the court in connection with a pending action, unless invited or permitted by the court.

6. Before dates for hearing or trials are set, or if that is not feasible, immediately after such date has been set, we will attempt to verify the availability of necessary participants and witnesses so we can promptly notify the court of any likely problems.

7. We will act and speak civilly to court marshals, court clerks, court reporters, secretaries, and law clerks with an awareness that they, too, are an integral part of the judicial system.

## D. Judges' Duties to Others

1. We will be courteous, respectful, and civil to the attorneys, parties, and witnesses who appear before us. Furthermore, we will use our authority to ensure that all of the attorneys, parties, and witnesses appearing in our courtrooms conduct themselves in a civil manner.

2. We will do our best to ensure that court personnel act civilly toward attorneys, parties and witnesses.

3. We will not employ abusive, demeaning, or humiliating language in opinions or in written or oral communications with attorneys, parties, or witnesses.

4. We will be punctual in convening all hearings, meetings, and conferences.

5. We will make reasonable efforts to decide promptly all matters presented to us for decision.

6. While endeavoring to resolve disputes efficiently, we will be aware of the time constraints and pressures imposed on attorneys by the exigencies of litigation practice.

7. Above all, we will remember that the court is the servant of the people, and we will approach our duties in this fashion.

4

# PACER

PUBLIC ACCESS TO COURT ELECTRONIC REGISTRATION

UNITED STATES COURTS

## PACER

### Public Access to Court Electronic Records

(PACER) is an electronic public access service that allows users to obtain case information from federal courts. PACER is a service of the United States Judiciary, provided by the Administrative Office of the United States Courts.

PACER offers an inexpensive, easy-to-use alternative for obtaining case information from the Judiciary's Case Management and Electronic Case Files system (CM/ECF), without having to visit the courthouse. PACER allows an Internet user to request information about a particular case or party. The data is immediately available for printing or downloading.

81

## CM/ECF

CM/ECF is the federal courts' system used to manage cases and to allow attorneys to file case documents over the Internet.

Identifying requirements for the next generation of CM/ECF is in process. Refer to the "What's New with PACER" section of the PACER website, for information and updates to PACER and CM/ECF.

## REGISTRATION

To register for access, visit the PACER Service Center website at www.pacer.gov. Click on the Registration tab and select the account type. Then fill out an online form and provide a valid email address.

- Provide credit card information to establish an account and receive same-day access.

- Choose to register without credit card information, and you will receive account login information by U.S. mail, usually within one week.

There is no cost for registration.

## FEES and BILLING

Congress has authorized the Judiciary to charge fees to fund the costs of PACER and CM/ECF.

The Judicial Conference of the United States has set fees and conditions for services as follows:

- Ten cents per page for access via the Internet, with a total charge of any document, docket sheet, or case-specific report not to exceed $3.00, the fee for 30 pages.

- Transcripts of federal court proceedings are not subject to the 30-page fee limit.

- Digital Audio files are available for $2.40 per file, for courts that provide the service.

- Fees are waived for users who incur less than $15 of use in a quarterly billing cycle.

- Parties entitled to documents as part of a legal process receive one free electronic copy.

- Parties will be charged for replacement copies, whether in paper or electronic form.

- Users are billed quarterly and are allowed to enter a client code of their own choosing to facilitate costs tracking.

# ATTACHMENT B

**<u>AFFIDAVIT FOR PROVIDING FORFEITURE NOTICE</u>**

Plaintiff:      United States of America

Addressee:    **RUSTAM RAFAILEVICH GALLYAMOV**, also known as, **aka "Cortes," aka "Tomperz," aka "Chuck."**

Type:        Provision of Forfeiture Notice


I, _____, acting on behalf of the Russian Federation pursuant to a Request for Legal Assistance from the United States of America dated September 12, 2025, certify, in accordance with the instructions set forth in the referenced request:

1. That I provided a copy of the Complaint for Forfeiture (**Attachment A**), and the Letter (with attachments) regarding the Complaint (**Attachment B**) on the _____ day of _____, 2025, to the following:


    _____.
    (EMAIL ADDRESS AND / OR STREET ADDRESS, CITY, COUNTRY)

    By one of the following methods (CIRCLE ALL METHODS THAT WERE USED)

    a.   By hand delivery to the addressee who accepted it voluntarily.
    b.   By mail or other carrier.
    c.   By email.


    The documents referred to herein have been delivered to:

    _____
    (NAME AND DESCRIPTION OF PERSON RECEIVING DOCUMENTS)

    _____
    (RELATIONSHIP TO ADDRESSEE, E.G., FAMILY, BUSINESS, OR OTHER)

OR:

2.  That the Complaint for Forfeiture (**Attachment A**), and the Letter (with attachments) regarding the Complaint (**Attachment B**) have not been delivered to the above-listed addressee for the following reasons (please describe steps taken to attempt to locate and provide the documents to addressee):

_____

I declare that the foregoing is true and correct.

_____
Signature of Affiant

Executed on this _____ day of _____, 2025.

[Печать
МИНИСТЕРСТВО ЮСТИЦИИ
QUI PRO DOMINA JUSTIA SEQUITUR]

**МИНИСТЕРСТВО ЮСТИЦИИ США**

*Отдел по уголовным делам*

VAA:MDR:JEC:AEP:ms
МИНИСТЕРСТВО ЮСТИЦИИ: CRM-182-40105

*Управление иностранных дел*                          *Вашингтон, округ Колумбия. 20530*

ОТ:              Центрального Органа Соединенных Штатов Америки

КОМУ:        Центральному Органу Российской Федерации

ПРЕДМЕТ:   Просьба об Оказании Помощи в Гражданско-Правовой Конфискации Виртуальной Валюты и 2 061 517,68 долларов США в валюте США.

ДАТА:         12 Сентября, 2025

Центральный Орган Соединенных Штатов Америки обращается за помощью к Центральному Органу Российской Федерации в соответствии с Договором о взаимной правовой помощи между США и Российской Федерацией 1999 года («Договор»).

## ВВЕДЕНИЕ

Прокуратура США по Центральному округу Калифорнии (прокуратура США) расследует атаки программ-вымогателей, совершенные в нарушение законов США о борьбе с мошенничеством. Настоящим ходатайством Прокурор просит российские власти оказать содействие в предоставлении документов, в частности уведомления о приложенном иске США на конфискацию, Рустаму Рафаилевичу Галлямову, который, как предполагается, находится в России.

22 мая 2025 года прокурор подал в Окружной суд США по Центральному округу Калифорнии иск о конфискации имущества без вынесения обвинительного приговора (далее — «Иск»), требуя конфискации различных криптовалют и 2 061 517,68 долларов

1

США в валюте США (фиатной валюте) (совместно именуемых «арестованное имущество»). Копия иска о гражданской конфискации, в котором подробно описываются различные криптовалюты и валюта США, включена в приложения.

Прокурор полагает, что потенциальным претендентом на арестованное и подлежащее конфискации имущество ответчика является Рустам Рафаилевич Галлямов, последний известный адрес проживания: Красногорский бульвар, д. 19, кв. 323, г. Красногорск, Московская область, Россия, 143401, или Красногорский бульвар, д. 25, г. Красногорск, Московская область, Россия, 143401. У г-на Галлямова есть адрес электронной почты gallyamov@mail.ru.

Прокурор обращается к российским властям с просьбой оказать содействие в направлении письма г-ну Галлямову. В приложениях к письму содержится копия Иска и разъяснение процедуры подачи г-ном Галлямовым иска в отношении арестованных активов (**Приложение А**).

## **ФАКТЫ**

Этот запрос касается варианта вредоносного программного обеспечения, известного как «Qakbot» (или «Qbot»). Начиная, как минимум, с 2019 года участники преступного сговора, создавшие Qakbot, инфицировали сотни тысяч компьютеров пострадавших в США и в других странах. Получив несанкционированный доступ к компьютеру с помощью Qakbot, участники преступного сговора и другие использовали компьютеры жертв для дальнейшего заражения компьютеров других жертв программой-вымогателем. Затем участники преступного сговора Qakbot вымогали у жертв доступ к их личным данным чтобы прекратить дальнейшее распространение этих данных взломщиками.

Жертвы обычно платили выкуп в криптовалюте, а затем взломщики выплачивали часть выкупа в криптовалюте г-ну Галлямову и другим мошенникам Qakbot. Изъятое имущество, описанное в Иске (**Приложение A**), представляет собой имущество, задействованное в нескольких транзакциях или попытках транзакций с выкупами, уплаченными в связи с атаками программ-вымогателей, или имущество, прослеживаемое к такому имуществу; имущество, задействованное в нескольких транзакциях или попытках транзакций, на сумму свыше 10 000 долларов США отслеживаемых доходов от программ-вымогателей; и имущество, которое представляет собой доход или является доходом, полученным от доходов, прослеживаемых к компьютерному мошенничеству и злоупотреблениям, а также к нарушениям в области электронного мошенничества, или сговору с целью их совершения.

Как утверждается в иске о конфискации, арестованное имущество подлежит конфискации в соответствии со следующими положениями:

A. Раздел 18, Свод законов США, § 981(a)(1)(A), поскольку арестованное и подлежащее конфискации имущество ответчика было имуществом, связанным с нарушением 18 Свода законов США §§ 1956 и 1957 (отмывание денег), или любым имуществом, связанным с этим имуществом, или вовлеченным в сговор с целью нарушения §§ 1956 и 1957; и

B. Раздел 18 Свод законов США § 981(a)(1)(C), поскольку арестованное и подлежащее конфискации имущество ответчика представляет собой или было получено из доходов, которые можно отнести к нарушению или сговору с целью нарушения раздела 18 Свода законов США. §§ 1030 (компьютерное мошенничество и злоупотребление) и 1343 (электронное мошенничество).

22 мая 2025 года прокурор подал иск о возбуждении гражданского производства по конфискации арестованного имущества в Окружной Суд США по Центральному округу Калифорнии (Окружной Суд). В иске утверждается, что арестованное имущество подлежит конфискации как доход, полученный в результате мошенничества и отмывания денег.

Законодательство США требует, чтобы власти США публиковали уведомление о конфискации актива на веб-сайте правительства США www.forfeiture.gov в течение 30 дней, чтобы позволить любой заинтересованной стороне подать иск на актив до окончательной конфискации. Соответственно, власти США опубликовали уведомление о конфискации арестованного и подлежащего конфискации имущества ответчика 19 августа 2025 года. Срок подачи исков истекает 18 октября 2025 года.

Закон США о конфискации также требует, чтобы американские прокуроры уведомляли о конфискации лиц или организации, которые могут иметь интерес в имуществе, и предоставляли им возможность подать иск (при желании) до окончательной конфискации активов. Власти США постановили, что Рустаму Рафаилевичу Галлямову, использующему адрес электронной почты gallyamov@mail.ru, следует направить уведомление о конфискации арестованного имущества. Согласно информации, полученной в ходе расследования, власти США установили, что Рустам Рафаилевич Галлямов является гражданином России и, по всей видимости, проживает в России.

После того, как г-н Галлямов будет уведомлен о конфискации, у него будет 35 дней с даты уведомления, чтобы подать иск на арестованные активы, если он пожелает это сделать. Если иск не будет подан после истечения сроков подачи исков или по истечении разумного срока, в течение которого российские власти должны были уведомить г-на Галлямова, прокурор обратится в Окружной Суд с просьбой объявить дефолт г-ну

Галлямову, что приведет к полной утрате г-ном Галлямовым права на арестованное имущество в пользу правительства США. После этого, прокурор США предпримет соответствующие шаги для возврата средств жертвам атак программ-вымогателей.

## ПРАВОНАРУШЕНИЯ

**Раздел 18, Свод законов США, Статья 1030. Мошенничество и связанная с ним деятельность с использованием компьютеров.**

(a) Всякий, кто—. . .

(5). . . (А) сознательно инициирует пересылку программы, информации, кода или команды и, в результате такого действия, намеренно наносит ущерб без авторизации защищенному компьютеру; . . .

(7) с намерением вымогать у любого лица деньги или другие ценные вещи, используя междуштатную или внешнюю торговлю передает любые сообщения, содержащие какие-либо—. . . (С) требование или просьба о выплате денег или других материальных ценностей, касающиеся ущерба защищенному компьютеру, если такой ущерб был нанесен с целью содействия вымогательству;

наказывается [штрафом в размере не более 250 000 долларов США или двойной суммой материальной выгоды, полученной в результате преступления, или тюремным заключением на срок не более 10 лет, или обоими наказаниями].

**Раздел 18, Свод законов США, статья 1343. Мошенничество с использованием проводной связи, радио или телевидения.**

Любой, кто, разработал или намеревается разработать какую-либо схему или план обмана, или получения денег или имущества посредством ложных или мошеннических предлогов, заявлений или обещаний, передает или обеспечивает передачу посредством проводной связи. . . коммуникация в . . .торговле, любые письменные материалы [или] сигналы, предназначенные для осуществления такой схемы или мошенничества, подлежат штрафу [не более 250 000 долларов США или в размере двойной материальной выгоды, полученной в результате преступления] или тюремному заключению на срок не более 20 лет, или обоим наказаниям.

**Раздел 18, Свод законов США, Статья 1956. Отмывание денежных инструментов.**

5

(a)

. . .

(2) Любой, кто перевозит, передает или переводит, или пытается перевезти, передать или перевести денежный инструмент или средства из места в Соединенных Штатах в место за пределами Соединенных Штатов или через место за пределами Соединенных Штатов или в место в Соединенных Штатах из места за пределами Соединенных Штатов или через место за пределами Соединенных Штатов —

. . . )

(B) зная, что денежный инструмент или средства, участвующие в транспортировке, передаче или переводе, представляют собой доходы от какой-либо формы незаконной деятельности, и зная, что такая транспортировка, передача или перевод предназначены полностью или частично —

(i) для того, чтобы скрыть или замаскировать характер, местонахождение, источник, владельца или контроль над доходами от определенной незаконной деятельности; . . .

наказывается штрафом в размере не более 500 000 долларов США или двойной стоимостью денежного инструмента или средств, задействованных в перевозке, передаче или переводе, в зависимости от того, какая из этих сумм больше, или тюремным заключением на срок не более двадцати лет, или обоими наказаниями.

## Раздел 18, Свод законов США, Статья 1957. Участие в денежных операциях с имуществом, полученным в результате определенной незаконной деятельности.

(a) Любой, кто при любых обстоятельствах, указанных в подпункте (д), сознательно совершает или пытается совершить денежную операцию с имуществом, полученным преступным путем, стоимостью более 10 000 долларов США и полученным в результате определенной незаконной деятельности, подлежит наказанию, предусмотренному в подпункте (б).

(b) (1) За исключением случаев, предусмотренных в пункте (2), наказанием за правонарушение в соответствии с настоящим разделом является штраф [не более 250 000 долларов США или в два раза больше материальной выгоды, полученной в результате правонарушения] или тюремное заключение на срок не более десяти лет, или или оба наказания.

. . .

(2) Суд может наложить альтернативный штраф, предусмотренный пунктом (1), в размере, не превышающем двукратную стоимость имущества, полученного преступным путем и вовлеченного в сделку.

(c) При судебном преследовании за правонарушение в соответствии с настоящим разделом правительство не обязано доказывать, что ответчик знал, что правонарушение, в результате которого было получено имущество, полученное преступным путем, являлось определенной

6

незаконной деятельностью.

(d) Обстоятельства, указанные в подпункте (a), следующие:

(1) что правонарушение, предусмотренное настоящим разделом, имеет место в Соединенных Штатах или в особой морской и территориальной юрисдикции Соединенных Штатов; или

(2) что правонарушение, предусмотренное настоящим разделом, имеет место за пределами Соединенных Штатов и такой специальной юрисдикции, но ответчик является резидентом Соединенных Штатов (как определено в статье 3077 настоящего раздела, но за исключением класса, описанного в пункте (2)(D) указанной статьи).

. . .

(f) Как используется в этой статье —

(1) термин «денежная операция» означает депозит, снятие, перевод или обмен, в или влияющей на междуштатную или внешнюю торговлю, средств или денежного инструмента (как определено в статье 1956(c)(5) настоящего раздела) финансовым учреждением (как определено в статье 1956 настоящего раздела), через него или в пользу финансового учреждения (как определено в статье 1956 настоящего раздела), включая любую операцию, которая была бы финансовой операцией в соответствии со статьей 1956(c)(4)(B) настоящего раздела, но такое определение не включает в себя любую операцию, необходимую для сохранения права человека на представительство, гарантированного шестой поправкой к Конституции;

(2) термин «имущество, полученное преступным путем» означает любое имущество, состоящее или полученное из доходов, полученных в результате совершения уголовного преступления; и

(3) термины «определенная незаконная деятельность» и «доходы» имеют значение, данное этим терминам в статье 1956 настоящего раздела.

* * *

**Раздел 18, Свод законов США, Статья 981. Гражданская Конфискация.**

(a)(1) Следующее имущество подлежит конфискации в пользу Соединенных Штатов:

(A) Любая собственность, движимая или недвижимая, вовлеченная в сделку или попытку сделки с нарушением статей 1956, 1957 или 1960 настоящего раздела, или любая собственность, имеющая отношение к такой собственности.

* * *

7

(C) Любое имущество, как движимое, так и недвижимое, которое представляет собой или получено из доходов, связанных с нарушением статьи ... или любое правонарушение, представляющее собой «определенную незаконную деятельность» (как указано в статье 1956(c)(7) настоящего раздела [включая мошенничество с использованием электронных средств связи]), или сговор с целью совершения такого правонарушения.
* * *

**Правило G(4)(b) Дополнительных Правил по Адмиралтейским или Морским Искам и Искам о Конфискации Активов.**

(б) Уведомление для Известных Потенциальных Истцов.

(i) Требуется прямое уведомление. Правительство должно направить уведомление о действии и копию иска любому лицу, которое обоснованно рассматривается как потенциальный истец по фактам, известным правительству, до окончания срока подачи иска в соответствии с Правилом G(5)(a)(ii)(B).

(ii) Содержание Уведомления Уведомление должно    излагать следующее:

(A) дата отправки уведомления;

(B) крайний срок подачи ходатайства — не менее 35 дней с момента отправки уведомления;

(C) что ответ или ходатайство в соответствии с Правилом 12 должны быть поданы не позднее 21 дня после подачи иска; и

(D) имя государственного поверенного, которому будут направлены иск и ответ.

(iii) Отправка уведомления.

(A) Уведомление должно быть отправлено разумно рассчитанным способом, позволяющим дойти до потенциального заявителя.

(B) Уведомление может быть направлено потенциальному истцу или адвокату, представляющему потенциального истца в отношении ареста имущества или в связанном с этим расследовании, административном производстве по конфискации или уголовном деле.

(C) Уведомление, направляемое потенциальному заявителю,

8

находящемуся в заключении, должно быть отправлено в место заключения.

(D) Уведомление лицу, арестованному в связи с правонарушением, повлекшим за собой конфискацию, которое не находится в заключении на момент отправки уведомления, может быть отправлено по адресу, который это лицо последний раз предоставило органу, арестовавшему или освободившему это лицо.

(E) Уведомление лицу, у которого было изъято имущество, которое не находится в заключении на момент отправки уведомления, может быть отправлено по последнему адресу, который это лицо предоставило органу, изъявшему имущество.

(iv) Когда уведомление отправлено. Уведомление, отправленное следующими способами, считается отправленным в день его отправки по почте, доставки коммерческому перевозчику или отправки по электронной почте.

(v) Фактическое уведомление. Потенциальный заявитель, который получил фактическое уведомление о конфискации, не может возражать против конфискации или требовать освобождения от нее из-за неспособности правительства направить требуемое уведомление.

### ЛИЦО, ПОЛУЧАЮЩЕЕ ДОКУМЕНТЫ:

| | |
|---|---|
| Имя(на): | Рустам Рафаилевич Галлямов так же известный как "Кортес", он же "Томперц", он же "Чак". |
| Последние Известные Адреса: | Красногорский бульвар, 19, № 323, г. Красногорск, Московская область, Россия, 143401; или |
| | Красногорский бульвар, 25, Красногорск, Московская область, Россия, 143401. |
| Электронная почта: | gallyamov@mail.ru |

### ТРЕБУЕМАЯ ПОМОЩЬ

Прошу компетентные органы России предоставить копию письма (с приложениями)

9

относительно иска (**Приложение А**) Рустаму Рафаилевичу Галлямову. Пожалуйста, отправьте документы по электронной почте на адрес gallyamov@mail.ru, а также, если возможно, доставьте по почте, лично в руки или любым другим способом уведомления, не противоречащим российскому законодательству.

## ПРОЦЕДУРЫ, КОТОРЫЕ НЕОБХОДИМО СОБЛЮДАТЬ

При исполнении данной просьбы, пожалуйста, попросите соответствующие органы Российской Федерации предпринять следующие шаги:

1.  Предоставьте копии письма (с приложениями) (**Приложение А**) Рустаму Рафаилевичу Галлямову; и

2.  Обязать лицо, доставляющее иск и сопроводительное письмо (с приложениями) относительно иска, подписать Аффидевит о предоставлении уведомления об изъятии и уведомления о конфискации (**Приложение В**) и вернуть его в Министерство юстиции США, Отдел по уголовным делам, Управление иностранных дел.

## ЗАКЛЮЧЕНИЕ

Благодарим Вас за рассмотрение этого запроса. Если у вас возникнут какие-либо вопросы по данному запросу, пожалуйста, свяжитесь с Управлением иностранных дел по телефону +1 202-514-0000.

12 сентября 2025
Дата

[Подпись]
Джейсон Е. Картер
Заместитель Директора
Управление иностранных дел
Отдел по уголовным делам
Министерство Юстиции США

10



# Министерство Юстиции США

## Прокуратура Соединенных Штатов
## Центральный Округ Калифорнии

[Печать:
Министерство
Юстиции]

*Джеймс Е. Дохтерман*                          *1100 Юнайтед Стейтед Кортхаус*
*Помощник Прокурора Соединенных Штатов*        *312 Норс Спринг Стрит*
*Подразделение Конфискации и Возвращения Активов*   *Лос Анджелес, Калифорния 90012*
*Телефон: (213) 894-2686*
*Электронная почта:*
*James.Dochterman@usdoj.gov*

Кому: Рустаму Рафаиловичу Галлямову

      Касательно:   *Соединенные Штаты Америки против Виртуальной Валюты и*
             *$2,061,517.68 в долларах США*
             Дело №:  2:25-cv-04631-SB-MAR

Уважаемый Рустам Рафаилевич Галлямов:

      Настоящим уведомляем вас о том, что в отношении вышеуказанного имущества ответчика подан иск о конфискации.  К настоящему письму прилагаются копии _Hlk166244794 (1) Иска о Конфискации, (2) уведомления о взаимосвязанных гражданских конфискациях и уголовных делах, (3) уведомления о назначениях судей Соединенных Штатов, (4) уведомления сторонам о программе альтернативного разрешения споров под руководством суда, (5) уведомления адвокату о согласии на рассмотрение дела мировым судьей США _Hlk166244794 , (6) постановления о передаче (соответствующих дел) и (7) правила поведения в гражданских делах, рассматриваемых судьей Стэнли Блюменфельдом младшим. Также прилагается брошюра, выпущенная Окружным судом Центрального округа Калифорнии, относительно правил вежливости и профессионализма, которые должны служить руководством при проведении этих разбирательств.

      Вы получаете это уведомление из за подачи прилагаемой жалобы, поскольку вы можете иметь право участвовать в этом деле и оспорить конфискацию имущества ответчика.  Если вы намерены оспаривать конфискацию, вы должны подать иск, в котором излагаются ваши права или интересы, клерку Окружного Суда Соединенных Штатов по Центральному округу Калифорнии в течение 35 дней с даты уведомления, а также отдельный Ответ в течение 21 дня с момента подачи иска.  Одновременно с подачей ваших Иска и Ответа вы должны направить в данный офис копию каждого поданного искового заявления, направленную на имя нижеподписавшегося.  Вы можете вручить эти документы лично на 11-й этаж здания суда США по указанному выше адресу или отправить их по почте.

      Если вы решите подать иск, ваш иск должен соответствовать положениям Правила G (5) Дополнительных правил по Адмиралтейским или Морским Искам и Искам о

Письмо
Страница 2

Конфискации Имущества, которые являются дополнением к Федеральным Правилам Гражданского Судопроизводства.  В иске необходимо указать истца и конкретное имущество, на которое подана претензия; описать ваши интересы в имуществе ответчика, например, как владельца, залогодержателя и т. д.; указать обстоятельства, при которых вы приобрели интерес, включая дату его приобретения; иск должен быть удостоверен, например, подписан вами под присягой. Обратите внимание, что вы также обязаны соблюдать. Правила местной юрисдикции Окружного суда Центрального округа Калифорнии.

Очень важно, чтобы Иск и Ответ были поданы в указанные выше сроки или в течение продленного срока, на который согласится данное ведомство и одобрит суд.  Если иск не будет подан секретарю, а копия не будет направлена в этот офис в течение 35 дней с даты уведомления, или если иск будет подан вовремя, но ответ не будет подан и вручен в течение 21 дня после подачи иска (и этот офис не согласился на продление одного или обоих указанных сроков), правительство будет считать, что вы не намерены оспаривать конфискацию имущества ответчика, и будет добиваться вступления в силу заочного решения и вынесения заочного решения против любых интересов, которые вы можете иметь в имуществе ответчика.  Это запретит вам предпринимать какие-либо дальнейшие шаги по предотвращению конфискации без специального разрешения суда.

В качестве альтернативы или в дополнение к подаче иска и ответа вы можете подать ходатайство о смягчении или уменьшении конфискации в Министерство юстиции в отношении данного имущества ответчика.  Правила, регулирующие ходатайства об освобождении от ответственности или смягчении конфискации, изложены в статье 9.1 и далее раздела 28 Свода федеральных предписаний («C.F.R.»), а конкретные требования к ходатайству изложены в статье 9.4 раздела 28 C.F.R.  В целом, ходатайство должно содержать следующую информацию, изложенную ясно и кратко: (1) ваше имя, адрес и номер социального страхования (или идентификационный номер налогоплательщика, в зависимости от ситуации); (2) конфискующий орган, идентификационный номер актива, а также дата и место конфискации; (3) номер дела в окружном суде (см. выше); (4) подробное описание истребуемого имущества, включая сумму любых средств, адрес или юридическое описание недвижимого имущества, а также марку, номер модели и серийный (или идентификационный номер транспортного средства или корпуса) номер личного имущества, в зависимости от ситуации; и (5) описание вашего заявленного интереса в имуществе, которое вы пытаетесь вернуть, подтвержденное копиями квитанций, счетов купли-продажи, контрактов, ипотечных кредитов, актов о совершении сделки или других документальных доказательств.  Кроме того, вам следует описать все смягчающие и отягчающие обстоятельства, а также другие причины, по которым вы считаете, что ходатайство должно быть удовлетворено.  Ходатайство должно быть заверено под присягой Вами или Вашим адвокатом.  Если ходатайство заверено под присягой адвокатом, оно должно сопровождаться вашим заверенным под присягой уведомлением о представительстве в соответствии со статьёй 1746 раздела 28 Кодекса США  и должно быть заверено адвокатом, как указано в статье 9.9(g)  раздела 28 Кодекса США.  Ходатайство необходимо подать в этот офис незамедлительно.

Ходатайство, **которое не подлежит подаче в суд**, может быть подано в электронном виде или по почте.  Чтобы подать ходатайство в электронном виде, посетите сайт

Письмо
Страница 3

https://www.forfeiture.gov/FilingPetition.htm, где вы найдете стандартноеходатайство и ссылку, которую вы можете использовать для подачи петиции в электронном виде. Если вы решили отправить ходатайство по почте, его следует адресовать Генеральному прокурору Соединенных Штатов, а оригинал вместе с двумя копиями следует направить нижеподписавшемуся лицу. Вы также должны подать отдельную копию ходатайства в конфискационное агентство в округе, в котором была произведена конфискация, за исключением случаев, когда конфискацию проводит Управление по борьбе с наркотиками (в этом случае копию ходатайства необходимо отправить по почте в Forfeiture Counsel, Asset Forfeiture Section, Drug Enforcement Administration, Headquarters Forfeiture Response, P.O. Ящик 1475, Квантико, Вирджиния 22134-1475) или Бюро по контролю за оборотом алкоголя, табака, огнестрельного оружия и взрывчатых веществ (в этом случае копию ходатайства необходимо отправить по почте специальному ответственному агенту, Special Agent in Charge, Asset Forfeiture and Seized Property Branch, Bureau of Alcohol, Tobacco, Firearms and Explosives, 650 Massachusetts Avenue, NW., Washington, D.C. 20226).

Полученные или поданные в этот офис ходатайства будут изучены, и решение об удовлетворении или отклонении ходатайства будет принято начальником подразделения по борьбе с отмыванием денег и возвратом активов Уголовного отдела Министерства юстиции без проведения слушания. Обратите внимание, что процесс подачи ходатайства полностью отделен от судебного разбирательства, в ходе которого была подана прилагаемый иск. Конкретных сроков для удовлетворения или отклонения ходатайства не установлено. Подача ходатайства не защитит никаких прав, которые вы можете иметь в отношении имущества ответчика. Если вы желаете оспорить конфискацию имущества ответчика, вы должны подать Иск и Ответ в суд в сроки, указанные в настоящем документе.

В соответствии с Правила местной юрисдикции Окружного суда США по Центральному округу Калифорнии, вам также сообщается, что данное действие подпадает под действие Электронной Системы Подачи Дел («ECF»). Если вы еще не зарегистрированы как пользователь ECF, регистрацию можно осуществить на сайте http://www.pacer.gov/

Искренне Ваш,

БИЛАЛ А. ИССАЙЛИ
Прокурор Соединенных Штатов

/n
ДЖЕЙМС Е. ДОХТЕРМАН
Помощник Прокурора Соединенных Штатов
Подразделение Конфискации и Возвращения Активов

Приложения

# ПРИЛОЖЕНИЕ A

1   БИЛАЛ А. ИССАЙЛИ
    Прокурор Соединенных Штатов
2   КРИСТИНА Т. ШЭЙ
    ПОМОЩНИК ПРОКУРОРА СОЕДИНЕННЫХ ШТАТОВ
    НАЧАЛЬНИК, УГОЛОВНЫЙ ОТДЕЛ
3   ДЖОНАТАН ГАЛАТЗАН
    ПОМОЩНИК ПРОКУРОРА СОЕДИНЕННЫХ ШТАТОВ
4   НАЧАЛЬНИК ОТДЕЛА ПО КОНФИСКАЦИИ И ВОЗВРАТУ АКТИВОВ
    ДЖЕЙМС Е. ДОХТЕРМАН (Кал. номер лицензии 256396)
5   ПОМОЩНИК ПРОКУРОРА СОЕДИНЕННЫХ ШТАТОВ
     ОТДЕЛ КОНФИСКАЦИИ И ВОЗВРАТА АКТИВОВ
6       312 Норс Сринг Стрит, 11-й этаж
        Лос Анджелес, Калифорния 90012
7       Телефон: (213) 894-2686
        Факсимиле: (213) 894-6269
8       Электронная почта:   James.Dochterman@usdoj.gov

9   Адвокаты Истца
    СОЕДИНЕННЫЕ ШТАТЫ АМЕРИКИ
10

11                   ОКРУЖНОЙ СУД СОЕДИНЕННЫХ ШТАТОВ

12                  ОТ ЦЕНТРАЛЬНОГО ОКРУГА КАЛИФОРНИИ

13                       ЗАПАДНОЕ ПОДРАЗДЕЛЕНИЕ

14

15   СОЕДИНЕННЫЕ ШТАТЫ АМЕРИКИ          Дело № 2:25 - CV- 04631

16                Истец,                **ЖАЛОБА О КОНФИСКАЦИИ**

17                против                раздел 18 Кодекса США § 981 (a) (1) (A)
                                        и (C)
     ВИРТУАЛЬНОЙ ВАЛЮТЫ И               (ФБР)
18   $2,061, 517.68 В ВАЛЮТЕ США,

19                Ответчики.

20

21

22

23

24        Истец Соединенные Штаты Америки предъявляет настоящий иск ответчикам

25   Виртуальной Валюте и 2 061 517,68 долларов США в валюте США и утверждает

26   следующее:

27

28

Case 2:25-cv-04631-SB-MAR    Document 57-4    Filed 02/10/26    Page 86 of 145    Page
ID #:367
Дело 2:25-cv-04631        Документ 1      подан 22 мая 2025      страница 2 из 18      ID страницы #2

**ЮРИСДИКЦИЯ И МЕСТО РАССМОТРЕНИЯ**

1.    Истец, Соединенные Штаты Америки, подает настоящий иск о конфискации имущества в соответствии с разделом 18 Кодекса США $981 (a) (1) (A) и (C).[1]

2.    Данный суд обладает юрисдикцией в отношении данного вопроса в соответствии с разделом 28 Кодекса США §§ 1345 и 1355.

3.    Место проведения разбирательства находится в этом округе в соответствии с разделом 28 Кодекса США §§ 1355 и 1395.

**ЛИЦА И ОРГАНИЗАЦИИ**

4.    Истцом являются Соединенные Штаты Америки

5.    Ответчики Virtual Currency («ответчик Виртуальная Валюта») и 2 061 517,68 долл. США в валюте США («Валюта ответчика») совместно именуются в настоящем документе как «активы ответчика». Ответчик Виртуальная Валюта[2] состоит из следующего:

        a.    USDT[3], переданные правительству после выдачи 29 июля 2024 года федерального ордера на арест, состоят из эквивалентной суммы USDT, замороженной правительством 25 августа 2023 года, связанной с адресами виртуальной валюты, перечисленными ниже (совместно именуемыми «Адреса USDT»), а более конкретно описываемыми как (i) 1 867 051,090192 USDT, связанные с адресами виртуальной валюты, заканчивающимися на «d774», «43ac» и «2cfd» в сети Ethereum; и (ii) 131 864,958226 USDT, связанные с адресами виртуальной валюты, заканчивающимися на «diwg» и «Qnq1» в сети Tron;

---

[1] Все даты, указанные в Иске, совпадают или близки к указанным датам, а все суммы являются приблизительными.

[2] Виртуальные валюты — это цифровые токены, имеющие ценность и распространяемые в качестве заменителей традиционной фиатной валюты, а также отправляемые и получаемые с адресов виртуальной валюты.

[3] USDT также известен как Tether и представляет собой тип виртуальной валюты «стейблкоин», стоимость которой привязана к доллару США.

1
2
       b.    Виртуальная валюта, изъятая после выдачи федерального ордера на арест 25 августа 2023 года из кошельков виртуальной валюты («кошельки августа 2023 года»), которые более конкретно описываются как (i) 0.98764847 BTC, 0.748382350077596 ETH, 2 225.664765 TRX, 27 440.236603 USDT в сети Ethereum и 12 786.27805 USDT в сети Tron; (ii) 0.0356658763729553 ETH, 1000 USDT в сети Ethereum и 88.306384186 TON в сети Ethereum; (iii) 0.116887384939969 ETH и 50 USDT в сети Ethereum; (iv) 0.00008155 BTC; (v) 80 248.604484476 TON в сети Ethereum; (vi) 63 776.869432785 EVER; (vii) 0.00154878 ETH; (viii) 162.86215848 BTC; (ix) 1.44223059 BTC; (x) 78.74 XMR; (xi) 47.81 XMR; (xii) 1.84681961 XMR; (xiii) 0.0235862 XMR; (xiv) 125.0562078 XMR; (xv) 0.04399859 XMR; (xvi) 0.1599822 BTC; и (xvii) 5.31848493 BTC; и

       c.    Виртуальная валюта, изъятая после выдачи федерального ордера на арест 18 апреля 2025 г. из кошельков виртуальной валюты («кошельки апреля 2025 г.»), которые более конкретно описываются как (i) 22 622.300445 TRX и 718 191.493006 USDT в сети Tron; (ii) 30.86066699 BTC; и (iii) 0.015326022542196328 ETH и 262.30293 USDT в сети Ethereum.

      6.    Валюта ответчика представляет собой эквивалент доллара США монеты USD («USDC»)[4], замороженной правительством, связанной с указанными ниже адресами виртуальной валюты (совместно именуемыми «Адреса USDC»), переданной правительству 27 октября 2023 года после выдачи федерального ордера на арест содержимого адресов USDC, и более конкретно описывается как (i) 839 993.06 USDC, связанных с адресом виртуальной валюты, заканчивающимся на «d774» в сети Ethereum, (ii) 74 248.29 USDC, связанных с адресом виртуальной валюты, заканчивающимся на «TEPd» в сети Tron; (iii)

---

[4] USDC — это виртуальная валюта типа «стейблкоин», стоимость которой привязана к доллару США.

1   49 914.71 USDC, связанных с адресом виртуальной валюты, заканчивающимся на

2   «43ac» в сети Ethereum; и (iv) 1 097 361.62 USDC, связанных с адресом

3   виртуальной валюты, заканчивающимся на «2cfd» в сети Ethereum.

4       7.   Активы ответчика были арестованы Федеральным бюро расследований

5   по адресу 11000 Wilshire Boulevard, Suite 1700 в Лос Анджелесе,

6   Калифорния, и в настоящее время находятся или будут переданы на хранение

7   Службе маршалов США в этом округе, где они будут оставаться под

8   юрисдикцией этого суда в течение всего периода рассмотрения данного иска.

9       8.   Интересы Рустама Рафаилевича Галлямова и жертв сговора Qakbot

10  могут пострадать в результате данного разбирательства.

11                      ОСНОВАНИЕ ДЛЯ КОНФИСКАЦИИ

12  **I.   Галлямову предъявлено обвинение в организации схемы заражения
         компьютеров жертв и вымогательства у жертв выкупа.**

13

14      9.   Qakbot (или Qbot) — вредоносное компьютерное программное

15  обеспечение, разработанное, внедренное и контролируемое с 2008 года

16  членами киберпреступного сговора во главе с Галлямовым. Начиная как

17  минимум с 2019 года, соучастники сговора Qakbot заразили сотни тысяч

18  компьютеров жертв в Центральном округе Калифорнии и в других местах

19  вредоносным[5] ПО Qakbot, получив тем самым несанкционированный доступ и

20  контроль над этими компьютерами. Эту сеть зараженных компьютеров обычно

21  называли ботнетом Qakbot.[6]

22      10.  После того как в августе 2023 года бот-сеть Qakbot была

23  прервана в результате международных правоохранительных действий,

24  соучастники сговора Qakbot продолжили искать и получать

25  _____

26  [5] «Вредоносное ПО» — это вредоносное компьютерное программное обеспечение, предназначенное для того, чтобы заставить компьютер жертвы вести себя таким образом, который несовместим с поведением владельца или пользователя компьютера-жертвы и, как правило, неизвестен ему.

27  [6] «Ботнет» — это сеть зараженных компьютеров (каждый из которых — «бот»), зараженных вредоносным ПО и находящихся под контролем какой-либо группы.

28                              4

Case 2:25-cv-04631-SB-MAR    Document 57-4    Filed 02/10/26    Page 89 of 145    Page
ID #:370
Дело 2:25-cv-04631    Документ 1    подан 22 мая 2025    страница 5 из 18    ID страницы #5

1   несанкционированный доступ к компьютерам жертв, используя иные средства,

2   помимо ботнета Qakbot. Одним из методов, которые они использовали, было

3   проведение спам-бомбер атак[7] на сотрудников компаний-жертв, а затем выдача

4   себя за работников сферы информационных технологий, чтобы обманом

5   заставить жертв запустить вредоносный код или иным образом предоставить

6   доступ к компьютерам компании.

7       11.    Соучастники сговора Qakbot использовали свой

8   несанкционированный доступ к компьютерам жертв, чтобы облегчить дальнейшее

9   заражение этих компьютеров дополнительным вредоносным программным

10  обеспечением в форме программ-вымогателей. В сотрудничестве с группой

11  Qakbot злоумышленники, занимающиеся распространением программ-вымогателей,

12  включая Prolock, Doppelpaymer, Egregor, REvil, Conti, Name Locker, Black

13  Basta и Cactus, проникли в компьютерные сети жертв и внедрили программы-

14  вымогатели. Как правило, в ходе таких атак с компьютеров жертв также

15  похищались данные. Затем у жертв вымогали деньги, чтобы восстановить

16  доступ к их данным и не допустить дальнейшего распространения их личных

17  данных злоумышленниками.

18      12.    Жертвы программ-вымогателей обычно платили выкуп в биткойнах

19  (BTC). Галлямов и заговорщики соучастники сговора Qakbot получали долю

20  выкупа за каждую жертву, чьи компьютеры были скомпрометированы в

21  результате сговора Qakbot.

22      13.    2 мая 2025 года по делу № 2:25-CR-340-SB большое жюри

23  Центрального округа Калифорнии вынесло обвинительное заключение, обвиняющее

24  Галлямова в нарушении раздела 18 Кодекса США §§ 371 (сговор с целью

25  нарушения раздела 18 Кодекса США § 1030) и 1349 (сговор с целью нарушения

26  _____

27      [7] «Атака спам-бомбер» — это тип кибератаки, при которой почтовый ящик жертвы заполняется сообщениями,
    используя автоматизированные методы для регистрации жертвы в спам-сообщениях.

28                                      5

1  раздела 18 Кодекса США § 1343) за его роль в сговоре Qakbot. Обвинительное

2  заключение также включает в себя требование конфискации имущества, согласно

3  которому в случае вынесения обвинительного приговора Галлямов должен будет

4  лишиться всех отслеживаемых доходов, таких как активы ответчика,

5  приобретенные от сговора Qakbot.

6      14.    Как обсуждается ниже, активы ответчика подлежат конфискации в

7  соответствии с разделом 18 Кодекса США § 981 (a) (1) (A) и (C), поскольку

8  они являются отслеживаемыми доходами и были связаны с преступлениями по

9  отмыванию денег, связанными с выплатой выкупов за компьютеры, зараженные

10  программой-вымогателем в результате компьютерных вторжений со стороны

11  участников сговора Qakbot.

12      15.    Виртуальные валюты, обсуждаемые в данном иске, включают:

13          a.    BTC — виртуальная валюта, существующая на блокчейне

14  Bitcoin.[8]

15          b.    Ether («ETH») — виртуальная валюта, существующая в

16  блокчейне Ethereum (также называемом сетью Ethereum).

17          c.    Стейблкоин USDT («Tether»), существующий на нескольких

18  блокчейнах, включая блокчейны Ethereum и Tron.

19          d.    Стейблкоин USDC, существующий на нескольких блокчейнах,

20  включая блокчейны Ethereum и Tron.

21          e.    Tron («TRX») — виртуальная валюта, существующая на

22  блокчейне Tron (также называемом сетью Tron).

23          f.    Toncoin («TON»), виртуальная валюта, работающая на

24  блокчейне Ethereum; и

25  _____

26      [8] Многие виртуальные валюты публично регистрируют все свои транзакции с виртуальной валютой (а также баланс каждого адреса виртуальной валюты) в так называемом «блокчейне». Блокчейн по сути представляет собой публичный реестр, управляемый децентрализованной сетью компьютеров и содержащий неизменяемые и исторические записи каждой транзакции с использованием технологии этого блокчейна. Существуют разные блокчейны для разных типов виртуальных валют.

27

28                                  6

g.   Monero («XMR») — виртуальная валюта с повышенной конфиденциальностью, работающая на блокчейне Monero.

## II.   Активы ответчика представляют собой отслеживаемые выкупные и отмытые доходы.

16.   В рамках схемы получения выкупа и отмывания денег, после получения первоначального дохода от выкупа, соучастники сговора Qakbot осуществили несколько транзакций, перемещая виртуальную валюту через ряд посреднических адресов способом, типичным для схем отмывания денег, и намеревались скрыть преступное происхождение доходов. Эти транзакции включали ненужные или дублирующие транзакции в кошельки или адреса и из них, а также через децентрализованные сервисы на блокчейне, чтобы затруднить отслеживание и избежать внимания правоохранительных органов. Как описано ниже, выкупные средства также смешивались со средствами других жертв, а также средствами неизвестного происхождения, что еще раз доказывает намерение соучастников сговора скрыть преступное происхождение виртуальной валюты.

### A.   В кошельках августа 2023 года содержались выкупы и отмытые доходы.

17.   На основании изучения записей транзакций на блокчейне, записей поставщиков услуг виртуальных активов, сообщений и записей соучастников сговора Qakbot, а также анализа с использованием коммерческих инструментов анализа блокчейнов сотрудники правоохранительных органов пришли к выводу, что многочисленные депозиты, внесенные на кошельки в августе 2023 года, представляли собой выкупы, уплаченные группам вымогателей, которые, в свою очередь, платили Галлямову.

18.   Переводы выкупов на кошельки августа 2023 года в основном поступали с групп адресов, которые правоохранительные органы идентифицировали как принадлежащие группам вымогателей или известным

1  злоумышленникам, занимающимся распространением программ-вымогателей.

2  Анализ, проведенный правоохранительными органами, показал, что выкупы,

3  уплаченные жертвами, часто собирались или объединялись в кластерах адресов,

4  связанных с этой группой вирусов-вымогателей, прежде чем части выкупа

5  распределялись, в том числе и Галлямову. Анализ, проведенный

6  правоохранительными органами, также показал, что иногда виртуальная валюта,

7  хранившаяся в кошельках августа 2023 года, конвертировалась из BTC в другие

8  формы виртуальной валюты с использованием сервисов на основе блокчейна или

9  поставщиков услуг виртуальных активов.

10      19.    Анализ транзакций с использованием кошельков августа 2023 года в

11  период с сентября 2022 года по апрель 2023 года показал, что выплаты от

12  выкупов, произведенные Галлямову в BTC, составили более 80 процентов от

13  стоимости виртуальной валюты, изъятой из кошельков августа 2023 года.

14      20.    Выплаты выкупа в кошельки за август 2023 года включают, помимо

15  прочего, следующее:

16          a.    13 октября 2022 года юридическая фирма из Нью-Йорка

17  выплатила выкуп в размере 15.61359 BTC группе распространителей программ-

18  вымогателей. Этот платеж был проведен через ряд посреднических адресов,

19  связанных с установленным соучастником сговора Qakbot («Соучастник 1»). В

20  тот же день 1.561359 BTC, обозначенные Соучастником 1 как 10%-ный платеж

21  Галлямову за выкуп юридической фирмы в Нью-Йорке, были переведены на адрес,

22  указанный в кошельках за август 2023 года. Источником средств для этого

23  платежа стал выкуп в размере 39.999865 BTC, выплаченный 12 мая 2022 года

24  маркетинговой компанией из Висконсина другой группе распространителей

25  программ-вымогателей, связанной с Qakbot.

26          b.    16 ноября 2022 года технологическая компания из Индианы

27  стала жертвой атаки программы-вымогателя и заплатила выкуп. 28 ноября 2022

28

Case 2:25-cv-04631-SB-MAR    Document 57-4    Filed 02/10/26    Page 93 of 145    Page
ID #:374
Дело 2:25-cv-04631    Документ 1    подан 22 мая 2025    страница 9 из 18    ID страницы #9

1    года был сделан депозит в размере 15.006 BTC с кластера адресов, связанных

2    с Соучастник 1, на адрес в кошельках за август 2023 года. Галлямов

3    определил этот платеж сообщнику как свою долю выкупа, уплаченного

4    технологической компанией из Индианы.

5            c.    6 декабря 2022 года медиакомпания из Миссури выплатила

6    выкуп в размере 58.4521985 BTC группе распространителей программ-

7    вымогателей. После прохождения через ряд промежуточных адресов 19.1543 BTC

8    выкупа были выплачены на адрес, указанный в кошельках августа 2023 года.

9    Галлямов зафиксировал этот платеж 20 декабря 2022 года в своей платежной

10    книге и сообщил сообщнику, что это его доля в предстоящем выкупе,

11    уплаченном музыкальной компанией из Теннесси в связи с атакой программы-

12    вымогателя.

13            d.    В марте 2023 года технологическая компания из Колорадо

14    выплатила выкуп в размере 179.760005 BTC группе распространителей программ-

15    вымогателей. Галлямов зафиксировал в своей платежной книге платеж в размере

16    17.976 BTC от 20 марта 2023 года, который был переведен на адрес, указанный

17    в кошельках за август 2023 года, в качестве своей доли выкупа, уплаченного

18    технологической компанией из Колорадо.

19            e.    В сентябре 2022 года банк в Мэриленде стал жертвой атаки

20    вируса-вымогателя и заплатил выкуп в размере около 175 000 долларов США в

21    BTC. 19 октября 2022 года 0.8935 BTC, идентифицированные Соучастником 1

22    Галлямову как 10%-ный платеж за выкуп банка Мэриленда, были переведены на

23    адрес, указанный в кошельках за август 2023 года.

24            f.    14 ноября 2022 года 8.631 BTC был переведен на адрес в

25    кошельках августа 2023 года из группы адресов, связанных с Соучастником 1.

26    Галлямов записал этот платеж в своей платежной книге как свою долю выкупа,

27    уплаченного австрийской гостиничной компанией.

28                                      9

g.    14 ноября 2022 года 5.5335 BTC было переведено на адрес в кошельках августа 2023 года из группы адресов, связанных с Соучастником 1. Галлямов записал этот платеж в своей платежной книге как свою долю выкупа, уплаченного инженерной фирмой из Иллинойса.

h.    26 сентября 2022 года 1.0315 BTC было переведено на адрес в кошельках августа 2023 года из группы адресов, связанных с Соучастником 1. Галлямов идентифицировал этот платеж сообщнику как свою долю выкупа, выплаченного канадской компанией по производству мебели для дома. Источником средств для выплаты 1.0315 BTC стал выкуп в размере 5.14250156 BTC, уплаченный юридической фирмой из Кентукки группе распространителей программ-вымогателей.

i.    13 марта 2023 года 4.9209 BTC были переведены на адрес в кошельках августа 2023 года. Галлямов указал этот платеж в своей платежной книге как свою долю выкупа, уплаченного морской инженерной компанией из Вирджинии. Источником средств для этой выплаты в размере 4.9209 BTC, в свою очередь, стал выкуп в размере 243.9422269 BTC, уплаченный юридической аутсорсинговой компанией из Северной Дакоты.

j.    7 марта 2023 года юридическая фирма из Нью-Йорка выплатила выкуп в размере 40.204 054 BTC группе распространителей программ-вымогателей. 13 марта 2023 года 4.0204 BTC из этого выкупа были зачислены на адрес в кошельках за август 2023 года. Галлямов указал этот платеж в своей платежной книге как свою долю выкупа, уплаченного нью-йоркской юридической фирмой.

k.    30 ноября 2022 года банк в Алабаме выплатил выкуп в размере 11.595551815 BTC группе распространителей программ-вымогателей. 29 декабря 2022 года 1.1599433 BTC из этого выкупа были зачислены на адрес в кошельках

1   за август 2023 года. Галлямов записал этот платеж в своей платежной книге

2   как свою долю выкупа, уплаченного банком в Алабаме.

3         l.   13 марта 2023 года производственная компания из Мичигана

4   выплатила выкуп в размере 4.08106996 BTC группе распространителей программ-

5   вымогателей. 16 марта 1.9895 BTC из этого выкупа были зачислены на адрес в

6   кошельках за август 2023 года. Галлямов указал этот платеж в своей

7   платежной книге как свою долю выкупа, уплаченного транспортной компанией из

8   Северной Каролины. Затем, 13 апреля 2023 года, дополнительно 1.6683 BTC из

9   суммы выкупа были переведены на другой адрес в кошельках за август 2023

10  года. Галлямов указал этот платеж в своей платежной книге как свою долю

11  выкупа, уплаченного нью-йоркской продовольственной компанией.

12        m.   29 сентября 2022 года 63.14 BTC были зачислены на адрес в

13  кошельках августа 2023 года. Этот платеж был отправлен с кластера адресов,

14  связанных с группой распространителей программ-вымогателей, связанной с

15  Qakbot. Адрес, отправивший 63.14 BTC, получил в общей сложности 143,50 BTC

16  в предыдущей транзакции и отправил 40.459948 BTC на кластер адресов,

17  связанных с Соучастником 1. Галлямов предоставил адрес, на который

18  поступило 63.14 BTC, Соучастнику 1, который отправил Галлямову следующий

19  расчет, указывающий, что 63.14 BTC представляли собой долю Галлямова в

20  выкупе: "143.5 - 12% = 128.26 /2 = 63,14."

21      **B.   Адреса USDC и USDT содержали выкуп и отмытые средства, которые использовались для продвижения сговора Qakbot**

22

23      21.   В том же файле, в котором правоохранительные органы обнаружили

24  информацию о кошельках за август 2023 года, следователи также выявили

25  сведения, идентифицирующие адреса USDC и адреса USDT. Эти адреса

26  соответствовали виртуальной валюте, хранящейся на учетных аппаратных

27  кошельках, принадлежащих Галлямову.

28

Case 2:25-cv-04631-SB-MAR    Document 57-4    Filed 02/10/26    Page 96 of 145    Page
ID #:377
Дело 2:25-cv-04631    Документ 1    подан 22 мая 2025    страница 12 из 18    ID страницы #12

22.   Адреса кошельков, хранившиеся в этих устройствах учета,
находились на блокчейнах Ethereum и Tron, которые способны хранить
несколько типов виртуальной валюты или токенов на одном адресе кошелька.
Четыре адреса USDC совпадают с четырьмя из шести адресов USDT, причем как
USDC, так и USDT были извлечены из одних и тех же адресов реестра. Большая
часть виртуальных активов, хранящихся на адресах USDT и адресе USDC,
хранилась на четырех перекрывающихся адресах кошельков.

23.   Преступники часто конвертируют отмытую виртуальную валюту в
стейблкоины и переводят эти доходы на адреса пула, а затем используют
отмытые средства для оплаты расходов или соучастников. Эти переводы
осуществляются с целью скрыть истинный источник средств и не допустить
привлечения внимания правоохранительных органов к преступной деятельности,
связанной с отмываемыми средствами. Перемещая преступные доходы по
многочисленным адресам, прежде чем поместить их на счета общего
пользования, такие как адреса USDT и адреса USDC, Галлямов пытался скрыть
характер, источник, местонахождение, владельца или контроль над
процессами.

24.   На основе изучения записей транзакций блокчейна, записей
поставщиков услуг виртуальных активов, сообщений и записей участников
сговора Qakbot, а также анализа с использованием коммерческих инструментов
анализа блокчейнов сотрудники правоохранительных органов определили
источники финансирования адресов USDT и адресов USDC. Финансирование
осуществлялось в основном за счет USDC и USDT, поступивших с бирж
виртуальных валют за пределами США в 2021 и 2022 годах.

25.   Анализ транзакций с использованием адресов USDT и адресов USDC
показывает, что они использовались в операциях по отмыванию денег, а также
для осуществления выплат выкупов соучастникам сговора Qakbot с целью

содействия осуществлению сговора. Такие транзакции включают, но не ограничиваются следующим:

a.    2 августа 2022 года получение 1381 USDT от соучастника.

b.    17 апреля 2023 г. отправка 50 000 USDT на адрес, указанный в кошельках за август 2023 г., смешав полученные средства с выкупом.

c.    3 июля 2023 года отправка 130 000 USDT двумя транзакциями на адрес, указанный в кошельках за август 2023 года, смешав полученные средства с выкупом.

d.    19 августа 2023 года отправка 10 000 USDT на адрес, указанный в кошельках августа 2023 года, смешав полученные средства с выкупом.

e.    1 февраля 2022 года отправка 200 000 USDT на адрес, предоставленный физическим лицом, которое обменяло USDT на фиатную валюту за определенную комиссию.

f.    24 февраля 2023 года отправка 300 000 USDT на адрес, предоставленный физическим лицом, которое обменяло USDT на фиатную валюту за определенную комиссию.

g.    25 июля 2023 года отправка 133 900 USDT на адрес, предоставленный физическим лицом, которое обменяло USDT на фиатную валюту за определенную комиссию.

26.    Отправка платежей на адреса, указанные соучастниками сговора Qakbot для оплаты, включая следующее:

a.    3 апреля 2022 года отправка 1800 USDT соучастнику.

b.    4 июля 2022 года отправка 1800 USDT соучастнику.

c.    8 июля 2022 года отправка 1800 USDT соучастнику.

d.    15 июля 2022 года отправка 20 400 USDT одному соучастнику и 15 000 USDT второму соучастнику.

1           e.    2 сентября 2022 года отправка 1800 USDT соучастнику.

2           f.    29 декабря 2022 года отправка 3000 USDT одному

3 соучастнику, 3600 USDT второму соучастнику и 6400 USDT третьему

4 соучастнику.

5           g.    30 декабря 2022 года отправка по 15 000 USDT каждому из

6 трех соучастников.

7           h.    3 апреля 2023 года отправка 1500 USDT одному соучастнику и

8 3250 USDT второму соучастнику.

9           i.    30 июня 2023 года отправка 21 400 USDT соучастнику.

10    **C.**    **Кошельки за апрель 2025 года, в которых был получен выкуп и отмытые доходы.**

11       27.    На основании изучения записей транзакций на блокчейне, записей

12 поставщиков услуг виртуальных активов, сообщений и записей соучастников

13 сговора Qakbot, а также анализа с использованием коммерческих инструментов

14 анализа блокчейнов сотрудники правоохранительных органов пришли к выводу,

15 что многочисленные депозиты, внесенные на кошельки в августе 2025 года,

16 представляли собой выкупы, уплаченные группам распространителей программ-

17 вымогателей, которые, в свою очередь, платили Галлямову. Выплаты выкупа

18 кошелькам за август 2023 года включают, но не ограничиваются, следующее:

19           a.    В декабре 2024 года компания из Нью-Джерси стала жертвой

20 атаки программы-вымогателя и 23 декабря 2024 года выплатила выкуп в

21 размере 15.94 BTC. Этот платеж был немедленно разделен: 12.754 BTC были

22 отправлены на адрес в кошельках апреля 2025 года. Впоследствии средства

23 были переведены с этого адреса кошелька серией переводов в BTC на сумму

24 около 40 000–50 000 долларов США каждый поставщикам услуг виртуальных

25 активов за пределами США.

26           b.    В январе 2025 года компания из Висконсина стала жертвой

27 атаки программы-вымогателя и 16 января 2025 года выплатила выкуп в размере

28

1  20.274 BTC. Этот платеж был немедленно разделен: 14.189 BTC были

2  отправлены на адрес в кошельках апреля 2025 года. Впоследствии средства

3  были выведены с этого адреса кошелька посредством серии переводов на

4  некастодиальные мгновенные криптовалютные биржи.

5          c.    В январе 2025 года компания из Пенсильвании стала жертвой

6  атаки программы-вымогателя и 17 января 2025 года выплатила выкуп в размере

7  28.31 BTC. Этот платеж был немедленно разделен: 19.8142 BTC были

8  отправлены на адрес в кошельках апреля 2025 года.

9          d.    В январе 2025 года компания из Мэриленда стала жертвой

10  атаки вируса-вымогателя и 24 января 2025 года выплатила выкуп в размере

11  9.417 BTC на адрес, указанный в кошельках за апрель 2025 года.

12

13                    **ПЕРВОЕ ТРЕБОВАНИЕ О ЗАЩИТЕ ПРАВ**

14      28.    Пункты с 1 по 27 включены посредством ссылки, как если бы они

15  были полностью изложены в настоящем документе.

16      29.    На основании вышеизложенного истец утверждает, что активы

17  ответчика представляют собой имущество, вовлеченное в многочисленные или

18  предпринятые попытки совершения транзакций с нарушением раздела 18 Кодекса

19  США § 1956(a)(1)(A)(i), (a)(1)(B)(i), (a)(2)(A), (a)(2)(b)(i) и/или (h),

20  или имущество, прослеживаемое к такому имуществу, при этом указанная

21  незаконная деятельность является нарушением раздела 18 Кодекса США §§ 1030

22  (относительно компьютерного мошенничества и злоупотребления) и/или 1343

23  (мошенничество с использованием электронных средств связи). Таким образом,

24  активы ответчика подлежат конфискации в соответствии с разделом 18 Кодекса

25  США § 981 (a)(1)(A).

26                    **ВТОРОЕ ТРЕБОВАНИЕ О ЗАЩИТЕ ПРАВ**

27

28

Case 2:25-cv-04631-SB-MAR    Document 57-4    Filed 02/10/26    Page 100 of 145    Page
ID #:381
Дело 2:25-cv-04631    Документ 1    подан 22 мая 2025    страница 16 из 18    ID страницы #16

1    30.    Пункты с 1 по 27 включены посредством ссылки, как если бы они

2    были полностью изложены в настоящем документе.

3    31.    На основании вышеизложенного истец утверждает, что активы

4    ответчика представляют собой имущество, вовлеченное в многочисленные или

5    предпринятые попытки совершения транзакций в нарушение раздела 18 Кодекса

6    США § 1957(a), при этом указанная незаконная деятельность является

7    нарушением раздела 18 Кодекса США §§ 1030 ( компьютерного мошенничества и

8    злоупотребления) и/или 1343 (мошенничество с использованием электронных

9    средств связи). Таким образом, активы ответчика подлежат конфискации в

10    соответствии с разделом 18 Кодекса США § 981(a)(1)(A).

11                    **ТРЕТЬЕ ТРЕБОВАНИЕ О ЗАЩИТЕ ПРАВ**

12    32.    Пункты с 1 по 27 включены посредством ссылки, как если бы они

13    были полностью изложены в настоящем документе.

14    33.    На основании вышеизложенного истец утверждает, что активы

15    ответчика представляют собой или получены из доходов, которые можно

16    отследить или сговором с целью совершения нарушений раздела 18 Кодекса США

17    §§ 1030 (относящихся к компьютерному мошенничеству и злоупотреблению), что

18    является определенной незаконной деятельностью, как определено в разделе 18

19    Кодекса США §§ 1956(c)(7)(D), и/или 1343 (мошенничество с использованием

20    электронных средств связи), что является определенной незаконной

21    деятельностью, как определено в разделе 18 Кодекса США §§ 1956(c)(7)(A) и

22    1961(1)(B). Таким образом, активы ответчика подлежат конфискации в

23    соответствии с разделом 18 Кодекса США § 981(a)(1)(C).

24                        **ИСКОВОЕ ТРЕБОВАНИЕ**

25    В этой связи истец Соединенные Штаты Америки ходатайствует о:

26    (a)    надлежащем судебном решении о конфискации имущества ответчика;

27

1        (b)    том, чтобы всем заинтересованным сторонам было направлено

2    надлежащее уведомление с требованием явиться и предоставить причины, по

3    которым не следует выносить постановление о конфискации;

4        (c)    чтобы этот суд постановил конфисковать активы ответчика в пользу

5    Соединенных Штатов Америки для распоряжения ими в соответствии с законом; и

6        (d)    для любой другой и дальнейшей компенсации, которую этот Суд

7    сочтет справедливой и надлежащей, вместе с расходами и выплатами по данному

8    иску.

9      Датировано: 22 мая, 2025 года     БИЛАЛ А. ИССАЙЛИ
                             Прокурор Соединенных Штатов

10                                 КРИСТИНА Т. ШЭЙ
                             ПОМОЩНИК ПРОКУРОРА СОЕДИНЕННЫХ ШТАТОВ

11                                 НАЧАЛЬНИК, УГОЛОВНЫЙ ОТДЕЛ
                             ДЖОНАТАН ГАЛАТЗАН

12                                 ПОМОЩНИК ПРОКУРОРА СОЕДИНЕННЫХ ШТАТОВ
                             НАЧАЛЬНИК ПОДРАЗДЕЛЕНИЯ ПО КОНФИСКАЦИИ
                             И ВОЗВРАТУ АКТИВОВ

13

14                              *(подпись) Джеймс Е. Дохтерман*
                             ―――――――――――――――――――――――

15                                 ДЖЕЙМС Е. ДОХТЕРМАН
                             ПОМОЩНИК ПРОКУРОРА СОЕДИНЕННЫХ ШТАТОВ

16                                 ПОДРАЗДЕЛЕНИЕ КОНФИСКАЦИИ И ВОЗВРАТА
                             АКТИВОВ

17                                 Адвокаты Истца
                             СОЕДИНЕННЫЕ ШТАТЫ АМЕРИКИ

18

19

20

21

22

23

24

25

26

27

28

**ВЕРИФИКАЦИЯ**

1

Я, Джейкоб Т. Фредерик, настоящим заявляю, что:

2

1.    Я специальный агент Федерального бюро расследований.

3

2.    Я прочитал вышеуказанный иск о конфискации и знаком с его

4

содержанием.

5

3.    Информация, содержащаяся в иске, либо известна мне лично,

6

либо была предоставлена мне официальными правительственными

7

источниками, либо была получена в соответствии с законным процессом. Я

8

проинформирован и считаю, что изложенные в иске утверждения являются

9

правдивыми.

10

Я заявляю под страхом наказания за лжесвидетельство в соответствии

11

с законами Соединенных Штатов Америки, что вышеизложенная информация

12

является верной.

13

22 мая 2025 года в Лос Анджелесе, Калифорния.

14

15

16
                                        (Подпись) _____
                                        Джейкоб Т. Фредерик

17

18

19

20

21

22

23

24

25

26

27

28

1  БИЛАЛ А. ИССАЙЛИ
   Прокурор Соединенных Штатов
2  КРИСТИНА Т. ШЭЙ
   ПОМОЩНИК ПРОКУРОРА СОЕДИНЕННЫХ ШТАТОВ
3  НАЧАЛЬНИК, УГОЛОВНЫЙ ОТДЕЛ
   ДЖОНАТАН ГАЛАТЗАН
4  ПОМОЩНИК ПРОКУРОРА СОЕДИНЕННЫХ ШТАТОВ
   НАЧАЛЬНИК ОТДЕЛА ПО КОНФИСКАЦИИ И ВОЗВРАТУ АКТИВОВ
5  ДЖЕЙМС Е. ДОХТЕРМАН (Кал. номер лицензии 256396)
   ПОМОЩНИК ПРОКУРОРА СОЕДИНЕННЫХ ШТАТОВ
6  ПОДРАЗДЕЛЕНИЕ КОНФИСКАЦИИ И ВОЗВРАТА АКТИВОВ
        312 Норс Сринг Стрит, 11-й этаж
7       Лос Анджелес, Калифорния 90012
        Телефон: (213) 894-2686
8       Факсимиле: (213) 894-6269
        Электронная почта:   James.Dochterman@usdoj.gov
9
   Адвокаты Истца
10 СОЕДИНЕННЫЕ ШТАТЫ АМЕРИКИ

11

12                    ОКРУЖНОЙ СУД СОЕДИНЕННЫХ ШТАТОВ

13                  ОТ ЦЕНТРАЛЬНОГО ОКРУГА КАЛИФОРНИИ

14                       ЗАПАДНОЕ ПОДРАЗДЕЛЕНИЕ

15 СОЕДИНЕННЫЕ ШТАТЫ АМЕРИКИ            Дело № 2:25 - CV-04631

16          Истец,                     **УВЕДОМЛЕНИЕ ИСТЦА (СОЕДИНЕННЫЕ ШТАТЫ
                                       АМЕРИКИ) О СООТВЕТСТВУЮЩЕЙ**
17          против                     **ГРАЖДАНСКОЙ КОНФИСКАЦИИ И УГОЛОВНЫХ
                                       ДЕЛАХ В СООТВЕТСТВИИ С ПРАВИЛОМ 83-**
18 ВИРТУАЛЬНОЙ ВАЛЮТЫ И                **1.3.2 ПРАВИЛ МЕСТНОЙ ЮРИСДИКЦИИ**
   $2,061,517.68 В ВАЛЮТЕ США,
19
20          Ответчики.

21

22

23

24      ПОЖАЛУЙСТА, ОБРАТИТЕ ВНИМАНИЕ, что истец, Соединенные Штаты Америки,

25 настоящим подает настоящее Уведомление о соответствующей гражданской

26 конфискации и уголовных делах в соответствии с Правилом Местной Юрисдикции

27 83-1.3.2 следующим образом:

28

Case 2:25-cv-04631-SB-MAR    Document 57-4    Filed 02/10/26    Page 104 of 145    Page
ID #:385
Дело 2:25-cv-04631    Документ 4    подан 22 мая 2025    страница 2 из 3    ID страницы #2
26

1    Настоящий гражданский <u>вещный иск</u> против ответчиков Виртуальная Валюта

2    и $2 061 517,68 в в валюте США (совместно - "активы ответчика") связан с

3    делом <u>Соединенные Штаты против v. Рустама Рафаилквича Галлямова,</u> Дело №.

4    25-cr-00340-SB («Уголовное дело»). Настоящее дело о гражданской конфискации

5    и ранее возбужденное Уголовное дело связаны между собой, поскольку они (a)

6    вытекают из одной и той же или тесно связанной сделки, события или

7    происшествия (Правило Местной Юрисдикции 83-1.3.2(a)); (b) требуют

8    разрешения одних и тех же или существенно связанных или схожих вопросов

9    права и факта (Правило Местной Юрисдикции 83-1.3.2(b)); или (c) затрагивают

10   одного или нескольких ответчиков по уголовному делу и повлекли бы за собой

11   существенное дублирование работы, если бы рассматривались разными судьями

12   (Правило Местной Юрисдикции 83-1.3.2(c)).

13       (e)    Исковое заявление по настоящему гражданскому иску о конфискации

14   имущества содержит ссылку на уголовное дело и обвиняемый Галлямов указан

15   как лицо, интересы которого могут быть ущемлены гражданским иском о

16   конфискации имущества. <u>См.</u> ¶¶ 8 и 13 искового заявления о конфискации  и

17   обвинительное заключение. Кроме того, в обвинительном заключении Галлямову

18   предъявлены обвинения в нарушении статей 371 (сговор с целью нарушения

19   статьи 1030 раздела 18 Кодекса США) и 1349 (сговор с целью нарушения

20   статьи 1043 раздела 18 Кодекса США) раздела 18 Кодекса США и требуется

21   конфискация всех активов, представляющих собой отслеживаемые доходы от

22   преступлений, в которых обвиняется Галлямов, в то время как в настоящем

23   гражданском иске о конфискации предусматривается конфискация активов

24   ответчика на том основании, среди прочего, что они представляют собой

25   отслеживаемые доходы от нарушений, предусмотренных статьями 1030 и 1343

26   раздела 18 Кодекса США. <u>См.</u> пункты один и два обвинительного заключения о

27   конфискации и третье требование о возмещении ущерба. Кроме того, как

28

1  уголовное дело, так и гражданский иск о конфискации связаны с

2  деятельностью Галлямова и  соучастников сговора Qakbot, которые заразили

3  сотни тысяч компьютеров жертв и вымогали у жертв выкуп. См. ¶¶ 1-11 и 19-

4  25 обвинительного заключения и ¶¶ 9-12 искового заявления о конфискации.

5  Соответственно, настоящий гражданский иск о конфискации имущества связан с

6  уголовным делом в соответствии с Правилами Местной Юрисдикции 83-1.3.2(a),

7  (b) или (c).

8   Датировано: 22 мая, 2025          Передано с уважением,

9                                     БИЛАЛ А. ИССАЙЛИ
                                      Прокурор Соединенных Штатов
10                                    КРИСТИНА Т. ШЭЙ
                                      ПОМОЩНИК ПРОКУРОРА СОЕДИНЕННЫХ ШТАТОВ
11                                    НАЧАЛЬНИК, УГОЛОВНЫЙ ОТДЕЛ
                                      ДЖОНАТАН ГАЛАТЗАН
12                                    ПОМОЩНИК ПРОКУРОРА СОЕДИНЕННЫХ ШТАТОВ
                                      НАЧАЛЬНИК ПОДРАЗДЕЛЕНИЯ ПО КОНФИСКАЦИИ
13                                    И ВОЗВРАТУ АКТИВОВ

14                                     (подпись) Джеймс Е. Дохтерман
15                                    ДЖЕЙМС Е. ДОХТЕРМАН
                                      ПОМОЩНИК ПРОКУРОРА СОЕДИНЕННЫХ ШТАТОВ
16                                    ПОДРАЗДЕЛЕНИЕ КОНФИСКАЦИИ И ВОЗВРАТА
                                      АКТИВОВ

17
                                      Адвокаты Истца
18                                    СОЕДИНЕННЫЕ ШТАТЫ АМЕРИКИ

19

20

21

22

23

24

25

26

27

28

# ОКРУЖНОЙ СУД СОЕДИНЕННЫХ ШТАТОВ
## Центральный Округ Калифорнии

### УВЕДОМЛЕНИЕ О НАЗНАЧЕНИИ СУДЬЯМ СОЕДИНЕННЫХ ШТАТОВ

Данное дело назначено следующим судьям:

Окружной Судья    **Мааме Эвуси-Менса Фримпонг**
Судья-магистрат    **Марго А. Роккони**

Номер дела во всех документах, поданных в Суд, должен выглядеть следующим образом:

### 2:25-cv-04631 MEMF (MARx)

Окружные судьи Центрального округа Калифорнии передают все ходатайства, связанные с раскрытием информации, назначенному судье-магистрату в соответствии с Общим постановлением № 05-07. Ходатайства, связанные с раскрытием информации, должны быть зарегистрированы для слушания назначенным судьей-магистратом. Дополнительную информацию можно найти в Процедурах и Расписании назначенных судей, которые доступны на веб-сайте Суда по адресу www.cacd.uscourts.gov/judges-requirements.

Секретарь суда, Окружной суда США

23 мая 2025                                    кем    *(подпись) Джанин Тиллман*
_____                                    _____
Дата                                    Заместитель секретаря суда

## ВНИМАНИЕ

*Сторона, подавшая документ, инициирующий возбуждение дела по данному делу (например, иск или уведомление об отзыве), должна направить копию настоящего Уведомления всем сторонам, которым был направлен документ, инициирующий возбуждение дела. Кроме того, если в данном случае инициирующий дело документ был подан в электронном виде, сторона, которая его подала, должна по получении настоящего Уведомления незамедлительно предоставить обязательные копии всех ранее поданных документов вновь назначенному окружному судье. См. ПЛ.М.Ю. 5-4.5. Копию настоящего уведомления следует прикрепить к первой странице обязательной копии документа, инициирующего рассмотрение дела.*

CV-18 (08/19)    УВЕДОМЛЕНИЕ О НАЗНАЧЕНИИ СУДЬЯМ СОЕДИНЕННЫХ ШТАТОВ

## ОКРУЖНОЙ СУД СОЕДИНЕННЫХ ШТАТОВ
### Центральный Округ Калифорнии

| | |
|---|---|
| СОЕДИНЕННЫЕ ШТАТЫ АМЕРИКИ<br><br>Истец(ы)<br><br>против<br>ВИРТУАЛЬНАЯ ВАЛЮТА, и др.<br><br>Ответчик(и). | НОМЕР ДЕЛА:<br><br>2:25-cv-04631-MEMF-MAR |
| | **УВЕДОМЛЕНИЕ СТОРОНАМ ПРОГРАММЫ ADR, УПРАВЛЯЕМОЙ СУДОМ** |

**УВЕДОМЛЕНИЕ СТОРОНАМ:**

Политика данного Суда направлена на поощрение урегулирования гражданских споров, когда это отвечает наилучшим интересам сторон. Суд поддерживает любые разумные средства, включая альтернативное разрешение споров (АРС), для достижения этой цели. *См*П.М.Ю. 16-15 За исключением тех случаев, когда это разрешено судьей первой инстанции, стороны во всех гражданских делах должны участвовать в процессе ADR до начала судебного разбирательства. *См*П.М.Ю. 16-15.1

Окружной судья, которому было поручено рассмотрение вышеупомянутого дела, участвует в программе альтернативного разрешения споров (ADR), которая предположительно направляет это дело либо в Судебную Медиационную комиссию, либо в частную организацию. *См* Общие постановление № 11-10, §5. Дополнительную информацию о Медиационной комиссии можно найти на веб-сайте Суда www.cacd.uscourts.gov в разделе «ADR».

В соответствии с П.М.Ю. 26-1(с) адвокатам предписывается предоставить и обсудить со своими клиентами прилагаемое Уведомление сторонам об альтернативном разрешении споров *до* проведения конференции сторон, предусмотренной Федеральным гражданским процессуальным кодексом. 26(ф) На основании консультаций с клиентами и обсуждений с адвокатом противоположной стороны адвокаты должны указать в своем совместном заявлении следующее: 1) является ли дело наиболее подходящим для посредничества с нейтральной стороны из Судебной Медиационной комиссии или частного посредничества; и 2) когда должна произойти медиация. *См.* П.М.Ю. 26-1(с)

На первоначальном совещании по планированию адвокаты должны быть полностью готовы обсудить свои предпочтения относительно направления дела в Судебную Медиационную комиссию  или в частную медиацию, а также сроки проведения медиации. Суд вынесет постановление/направит дело на альтернативное разрешение спора во время или примерно в то же время, что и запланированная конференция.

Секретарь суда, Окружной суда США

23 мая 2025                            кем    *(подпись) Джанин Тиллман*

_____
Дата                                              Заместитель секретаря суда

## ОКРУЖНОЙ СУД СОЕДИНЕННЫХ ШТАТОВ
### Центральный Округ Калифорнии

### УВЕДОМЛЕНИЕ СТОРОНАМ: СУДЕБНАЯ ПОЛИТИКА ПО УРЕГУЛИРОВАНИЮ СПОРОВ
### И ИСПОЛЬЗОВАНИЕ АЛЬТЕРНАТИВНОГО РАЗРЕШЕНИЯ СПОРОВ (ADR)
**Адвокаты обязаны предоставить настоящее Уведомление своим клиентам и обсудить его со своими клиентами.**

Несмотря на усилия судов по достижению справедливого, своевременного и беспристрастного решения во всех случаях, судебные разбирательства стали зачастую длительным и дорогостоящим процессом, По этой причине политика этого Суда заключается в том, чтобы поощрять стороны пытаться урегулировать свои споры, когда это возможно, путем альтернативных методов разрешения споров.

Альтернативное разрешение споров может сократить как время, необходимое для разрешения дела, так и расходы на судебное разбирательство, которые могут быть существенными. Варианты альтернативного разрешения споров включают медиацию, арбитраж (обязательный или необязательный), независимую оценку (NE), примирительную процедуру, мини-судебное разбирательство и установление фактов. Альтернативное разрешение споров может осуществляться либо по решению суда, либо в частном порядке.

Судебная Программа альтернативного разрешения споров (ADR) предлагает медиацию  группой квалифицированных и беспристрастных адвокатов, которые будут способствовать справедливому, быстрому и экономичному разрешению гражданских исков. Каждый из членов комиссии посредников имеет не менее десяти лет юридического опыта и назначается судом. Они добровольно выделяют свое время на подготовку и первые три часа сеанса медиации. Это экономически эффективный способ для сторон изучить потенциальные пути урегулирования.

Данный суд требует, чтобы адвокаты обсуждали со своими клиентами доступные варианты альтернативного разрешения споров и поручает им приходить на первоначальное совещание по планированию разбирательства подготовленными к обсуждению выбора сторон варианта альтернативного разрешения споров. Доступны следующие варианты альтернативного разрешения споров: конференция по урегулированию спора с участием судьи-магистрата, назначенного для ведения дела, или судьи-магистрата в Санта-Барбаре, Судебнаю Медиационнаю комиссия и частная медиация. Адвокаты также обязаны сообщить клиенту о выборе варианта альтернативного разрешения споров до первоначальной встречи по планированию. *См* П.М.Ю. 26-1(c) и Фед.Пр.Гражд.Судпр. 26(ф)

Клиенты и их адвокаты должны тщательно взвесить предполагаемые расходы на судебный процесс, неопределенность относительно результата, время, которое потребуется для рассмотрения дела в суде, время, которое займет апелляция в случае обжалования решения, нагрузку на время клиента, а также расходы и издержки судебного разбирательства в зависимости от задействованных сумм или ставок.

Ежегодно в этом округе возбуждаются тысячи гражданских дел, однако до суда доходит, как правило, не более одного процента. Большинство дел урегулируются сторонами, прекращаются добровольно, разрешаются по решению суда или с помощью других форм альтернативного разрешения споров либо прекращаются судом ввиду необоснованности или по другим причинам, предусмотренным законом.

Дополнительную информацию о программе Суда по альтернативному разрешению споров, Медиационной комиссии и профилях медиаторов можно найти на веб-сайте Суда www.cacd.uscourts.gov в разделе «Альтернативное разрешение споров».

**ОКРУЖНОЙ СУД СОЕДИНЕННЫХ ШТАТОВ**
**Центральный Округ Калифорнии**

| | |
|---|---|
| СОЕДИНЕННЫЕ ШТАТЫ АМЕРИКИ<br><br>Истец(ы)<br><br>против<br><br>ВИРТУАЛЬНАЯ ВАЛЮТА, и др.<br><br>Ответчик(и). | НОМЕР ДЕЛА:<br><br>2:25-cv-04631-MEMF-MAR<br><br>**Уведомление адвокату о согласии на рассмотрение дела судьей-магистратом США** |

Сторонам сообщается, что они могут согласиться на рассмотрение дела любым судьей-магистратом, участвующим в Программе добровольного согласия на рассмотрение дела судьями-магистратами, для проведения всех дальнейших разбирательств по делу в соответствии с разделом 28 Кодекса США § 636(c) и Правилом 73 Федеральных правилам гражданского судопроизводства. Список согласия и форма согласия доступны на веб-сайте суда по адресу http://www.cacd.uscourts.gov/judges-requirements/court-programs/voluntary-consent-magistrate-judges-program. Чтобы подтвердить возможность конкретного судьи-магистрата назначить судебное разбирательство в сроки, желаемые сторонами, и/или готовность удовлетворить любые другие особые просьбы сторон, обратитесь к помощнику камеры судьи-магистрата до подачи согласия.

Поскольку судьи-магистраты не рассматривают уголовные дела, судебные разбирательства по гражданским делам не рискуют быть перенесенными из-за судебного разбирательства по уголовным делам, которое обычно имеет приоритет. Кроме того, в некоторых случаях судья-магистрат может назначить более раннюю дату судебного разбирательства, чем окружной судья. Стороны могут выбрать любого судью-магистрата  из трех отделений Центрального округа Калифорнии. Могут быть и другие преимущества или недостатки, которые вам следует учесть.

Истец или отзывающая сторона должны вручить настоящее уведомление каждой из указанных сторон в деле.

## ОКРУЖНОЙ СУД СОЕДИНЕННЫХ ШТАТОВ
**Центральный Округ Калифорнии**

| | |
|---|---|
| СОЕДИНЕННЫЕ ШТАТЫ АМЕРИКИ | НОМЕР ДЕЛА: |
| ИСТЕЦ(ы) | 2:25-cv-04631-MEMF-MAR |
| против | |
| Виртуальная Валюта | |
| ОТВЕТЧИК(И). | **РАСПОРЯЖЕНИЕ О ПЕРЕВОДЕ (СООТВЕТСТВУЮЩИЕ ДЕЛА)** |

### СОГЛАСИЕ

Настоящим я даю согласие на перенос вышеуказанного дела в мой график в соответствии с Общим Постановлением суда по вопросам распределения дел и обязанностей между окружными судьями.

| 27 июня, 2025 | Стэнли Блюменфельд, Мл. [подпись] |
|---|---|
| Дата | Окружной Судья Соединенных Штатов |

### ОТКЛОНЕНИЕ

Настоящим я отказываюсь перенести вышеуказанное дело в мой календарь по изложенным ниже причинам:

_____
_____
_____
_____

| Дата | Окружной Судья Соединенных Штатов |
|---|---|

### ПРИЧИНА ПЕРЕВОДА, УКАЗАННАЯ АДВОКАТОМ

Дело____2:25-cr-00340-SB____и настоящее дело:

☑ A.  Возникает из одних и тех же или тесно связанных между собой сделок, событий или явлений; или

☑ B.  Призыв к решению одних и тех же или существенно связанных или схожих вопросов права и факта; или

☐ C.  Так как другие причины повлекут за собой существенное дублирование работы, если дело будет рассматриваться разными судьями; или

☐ D.  Вовлечение одного или нескольких ответчиков по общему уголовному делу, что может повлечь за собой существенное дублирование работы, если дело будет рассматриваться разными судьями (применимо только к гражданским искам о конфискации).

### УВЕДОМЛЕНИЕ АДВОКАТУ ОТ СЕКРЕТАРЯ

В соответствии с вышеуказанным переводом любые вопросы раскрытия информации, которые переданы или могут быть переданы судье-магистрату, настоящим передаются от  судьи-магистрата [сведения отсутствуют]____  судье-магистрату  [сведения отсутствуют]_____

Во всех документах, впоследствии подаваемых по данному делу, пожалуйста, замените инициалы SB (MARx) после номера дела на инициалы предыдущего судьи, чтобы номер дела выглядел следующим

образом: 2:25-cv-04631 SB (MARx). Это очень важно, поскольку документы направляются назначенным

судьям с использованием этих инициалов.

Case 2:25-cv-04631-SB-MAR   Document 57-4   Filed 02/10/26   Page 113 of 145   Page
ID #:394
Дело No. 2:25-cv-04631-SB-MAR   Документ 11   подан 30 июня 2025   страница 1 из 20   ID страницы
#139

1

2

3

4

5

6

7

8           **ОКРУЖНОЙ СУД СОЕДИНЕННЫХ ШТАТОВ
            ЦЕНТРАЛЬНЫЙ ОКРУГ КАЛИФОРНИИ**

9

10    СОЕДИНЕННЫЕ ШТАТЫ АМЕРИКИ          Дело No. 2:25-cv-04631-SB-MAR

              Истец(ы)
11

12              против                  **РАСПИСАНИЕ ГРАЖДАНСКИХ ДЕЛ,
                                         ПОРУЧЕНО СУДЬЕ СТЭНЛИ
13                                       БЛЮМЕНФЕЛЬДУ-МЛАДШЕМУ.**
      ВИРТУАЛЬНАЯ ВАЛЮТА, и др.
14                                          **[Обновлено 3/1/2024]**

15           Ответчик(и).

16

17

18        **ВНИМАТЕЛЬНО ПРОЧИТАЙТЕ ЭТО ПОСТАНОВЛЕНИЕ, ПОТОМУ ЧТО ОНО
          РЕГУЛИРУЕТ ДАННОЕ ДЕЛО И ЧАСТИЧНО ОТЛИЧАЕТСЯ ОТ ПРАВИЛ
19        МЕСТНОЙ ЮРИСДИКЦИИ ПРАВИЛ. НЕСОБЛЮДЕНИЕ МОЖЕТ ПРИВЕСТИ К
                                     САНКЦИЯМ.**
20

21

22        Адвокат истца должен немедленно вручить настоящее постановление всем сторонам,

23    включая любых новых участников процесса. Если данное дело было передано из суда штата,

24    ответчик, который передал дело, должен вручить этот приказ всем остальным сторонам.

25    Ниже приведено содержание по гиперссылке.

26

27

28

---

### СОДЕРЖАНИЕ

| | |
|---|---|
| 1. **АДВОКАТ** | 9. **Односторонние Заявления Ex Parte** |
| 2. **Коммуникация с Камерами Судей** | 10. **Перенос рассмотрения дела** |
| 3. **Ходатайства** | 11. **Коллективные иски** |
| 4. **Сбор и Истребование Доказательств** | 12. **Дела ЭРИСА (заявления о пособиях)** |
| 5. **Требования к Подаваемым в Суд Документам** | 13. **Аппеляции по Банкротству** |
| 6. **Основные Требования к Ходатайствам** | 14. **Согласие судьи-магистрата** |
| 7. **Особые Требования к Ходатайствам** | 15. **Санкции за Несоблюдение Требований** |
| 8. **Слушания** | |

---

1.  **АДВОКАТ**

   a.  **Вежливость.** Все адвокаты должны незамедлительно ознакомиться и соблюдать Правила вежливости и профессионализма Суда, доступные по адресу (https://www.cacd.uscourts.goy/attorneys/admissions/civility-and-(professionalism-guidelines). НЕСОБЛЮДЕНИЕ МОЖЕТ ПРИВЕСТИ К САНКЦИЯМ.

   b.  **Присутствие Ведущего Адвоката** Только один адвокат стороны может быть назначен ведущим адвокатом (и это назначение должно быть указано в деле, если у стороны более одного адвоката). Ведущий адвокат должен присутствовать на всех заседаниях, проводимых данным судом. В отношении разбирательств, не назначенных Судом (например, слушания по ходатайствам), ведущим адвокатам рекомендуется разрешать младшим юристам принимать в них полноценное участие. Только один адвокат может быть назначен для поддержания ходатайства без одобрения суда.

   c.  **Стороны, представляющие свои интересы самостоятельно (также известные как истцы «Pro Se»).** Стороны, выступающие в суде собственной персоной (судебные истцы pro se), обязаны соблюдать все Правила Местной юрисдикции, включая Правило 16 («Предварительные совещания; Планирование; Управление»). В настоящем Постановлении термин «адвокат» включает в себя и стороны в судебном процессе,

представляющие свои интересысамостоятельно. Только физические лица могут представлять себя сами. Корпорация или другое юридическое лицо должно быть представлено адвокатом, и если адвокат хочет отказаться от иска, он должен уведомить юридическое лицо о суровых последствиях необеспечения замены адвоката до подачи заявления об отказе от иска, т. е. дело юридического лица как истца будет отклонено, а юридическое лицо как ответчик будет признан неявившимся без уважительных причин. См. Правила Местной Юрисдикции 83-2.3.4.

    **d.**    **Обязанность Уведомить о Соглашении.** Адвокат должен немедленно уведомить суд, если (1) дело или любой рассматриваемый вопрос были урегулированы или (2) ходатайство находится на рассмотрении и стороны ведут серьезные переговоры, которые, по всей вероятности, урегулируют дело или рассматриваемое ходатайство (как более подробно обсуждается в пункте 8(f) ниже). Непредоставление своевременного уведомления об урегулировании может повлечь за собой санкции.

    **e.**    **Запрет «Уведомления о недоступности».** «Уведомление о недоступности» не имеет юридической силы и не должно подаваться.

**2.**    <u>**Коммуникация с Камерами Судей**</u>

Адвокат не должен (1) инициировать контакт с помощником секретаря суда камеры Судьи (CRD) по телефону или (2) связываться с CRD по поводу статуса рассматриваемого дела. Адвокату также не следует обращаться к CRD для получения информации о судебной процедуре, если ответ можно легко получить, ознакомившись с Правилами Местной Юрисдикции и регламентом суда. Любой соответствующий запрос, направленный к CRD, должен быть направлен по электронной почте с копией всем сторонам и списком адресов электронной почты и номеров телефонов всех адвокатов в тексте письма.

**3.**    <u>**Ходатайства**</u>

    **a.**    **Подача Иска** Истец(и) должен(ны) незамедлительно вручить иск в соответствии с П.4 Федерального гражданского процессуального кодекса и доказательства подачи согласно П.4(1) Федерального гражданского процессуального кодекса П.4(1) Любой ответчик, включая любое «неустановленное лицо» или вымышленного ответчика,

1   которому не были вручены документы в течение 90 дней после подачи дела, должен

2   быть исключен из участников процесса в соответствии с П.4(м) Федерального

3   гражданского процессуального кодекса П.4(м)

4   **b.    Действия при смене Юрисдикции.** Любой ответ, зарегистрированный в суде штата,

5   должен быть повторно зарегистрирован в данном суде в качестве дополнения к

6   уведомлению о смене Юрисдикции. Любое ходатайство, находящееся на рассмотрении

7   в  суде штата до момента снятия дела, должно быть повторно рассмотрено в

8   соответствии с Правилом 7 Правил Местной Юрисдикции. Если передаваемое

9   заявление содержит «формальное исковое заявление» (т. е. ходатайство с отметкой

10  «галочкой»), сторона (или стороны), подавшая (подавшая) такое исковое заявление,

11  должна (должны) подать в суд исковое заявление, соответствующее федеральным

12  правилам, в течение 30 дней с момента подачи уведомления об удалении. см.

13  Федеральный гражданского процессуального кодекса П. 7, 7.1, 8, 9, 10, и 11.

14  Измененная жалоба, поданная в течение 30 дней после удаления для замены

15  стандартной жалобы в соответствии с настоящей инструкцией, считается измененной

16  жалобой с «разрешения суда» в соответствии с Правилом 15(а)(2).

17  **c.    Статус Фиктивных Номинальных Ответчиков.**

18  i.    Истец должен идентифицировать и вручить уведомление любому фиктивному

19  номинальному ответчику (ответчикам) до даты обязательной плановой

20  конференции (MSC), проводимой в соответствии с П. 16 (b) Федерального

21  гражданского процессуального кодекса

22  ii.   Все ответчики, обозначенные как неустановленное лицо, оставшиеся таковыми в

23  течение 60 дней после MSC (или на дату, указанную в постановлении о графике,

24  если применимо), исключаются из участников процесса в соответствии с

25  настоящим Постановлением без дальнейшего уведомления, *если только* истец не

26  запросит и не обоснует необходимость дополнительного времени в совместном

27  отчете для MSC, а Суд не предоставит такое продление.

28

1    iii.    Прежде чем перейти к замене неустановленного ответчика на ответчика, истец

2    должен запросить согласие адвоката для всех ответчиков, включая адвоката,

3    представляющего ответчика, обозначенного как неустановленное лицо. В случае

4    отказа, истец должен подать ходатайство, запрашиваемое в установленном

5    порядке. В делах о по иску гражданина одного штата к гражданину другого штата

6    при коллизии относящихся к нему правовых норм в этих штатах, в ходатайстве

7    истца должно быть указано нивелирует ли  добавление новой стороны принцип

8    спора о юрисдикции при коллизии относящихся к ней правовых норм. *См* раздел

9    28 Кодекса США § 1447(c), (e).

10    **4.    СБОР И ИСТРЕБОВАНИЕ ДОКАЗАТЕЛЬСТВ**

11    **a.    Направление Судье-магистрату.** Все вопросы сбора и истребования доказательств

12    передаются назначенному судье-магистрату. Для обеспечения правильной

13    маршрутизации все документы по сбору и истребованию доказательств должны иметь в

14    заголовке слова «МАТЕРИАЛЫ ПО СБОРУ И ИСТРЕБОВАНИЮ

15    ДОКАЗАТЕЛЬСТВ». Не передавайте копии документов для суда Судье Блюменфельду.

16    Решение судьи-магистрата является окончательным и подлежит ограниченному

17    пересмотру, требующему доказательства того, что решение является явно ошибочным

18    или противоречит закону. Любая сторона может подать и вручить ходатайство о

19    пересмотре в течение 14 дней с момента (i) вручения письменного решения или (ii)

20    устного решения, за которым явно не последует письменное решение. В ходатайстве

21    необходимо указать, какие части решения явно ошибочны или противоречат закону,

22    подкрепленные аргументами и авторитетными источниками. Адвокат должен передать

23    заверенную копию ходатайства и ответов судебному секретарю  судьи-магистрата во

24    время подачи заявления.

25    **b.    Постановления об обеспечении сбора и истребования доказательств.** Предлагаемые

26    запросы для обеспечения сбора и истребования доказательств должны быть

27    представлены назначенному судье-магистрату. Такие распоряжения не должны

28

1    подразумевать разрешение, без дополнительного распоряжения судьи Блюменфельда,

2    на подачу в закрытом порядке процессуальных документов или документов, поданных

3    в связи с распорядительным ходатайством, ходатайством о сертификации

4    коллективного иска или судебным разбирательством у судьи Блюменфельда. Наличие

5    защитного предписания само по себе не оправдывает подачу искового заявления или

6    других документов в закрытом порядке, полностью или частично.

7    **c.**    **Записи о Несовершеннолетних.** В случаях, когда необходим доступ к записям в

8    отношении несовершеннолетних, стороны должны определить необходимые записи и

9    подать все запросы на такие записи в соответствующий суд штата как можно раньше —

10    как правило, не позднее MSC. Если стороны этого не сделают, суд вряд ли отсрочит

11    рассмотрение дела по причине задержки в получении записей о несовершеннолетних.

12    **5.**    **ТРЕБОВАНИЯ К ПОДАВАЕМЫМ В СУД ДОКУМЕНТАМ**

13    **a.**    **Возможность Текстового Поиска.** Все документы, включая письменные заявления,

14    ходатайства и вещественные доказательства, представляемые в суд, должны быть

15    доступны для текстового поиска (т. е. распознаваться с помощью OCR).

16    **b.**    **Документы с Заявлениями, Вещественными Доказательствами и Прочими**

17    **Приложениями.**

18    За исключением документов в поддержку ходатайств о вынесении решения в порядке

19    упрощенного судопроизводства (см. Регламент MSJ), если поданное или

20    представленное заявление содержит заявления, вещественные доказательства или

21    другие приложения, каждое приложение должно быть подано как отдельное

22    приложение к основной записи в реестре с описанием приложения (например, Dkt. 29-1

23    Заявление Смита, 29-2 Доп. 1 - Лицензионное соглашение, 29-3 Запрос на судебное

24    уведомление). Суд может отклонить или отказать в рассмотрении ходатайств,

25    соглашений или других документов с приложениями, которые не поданы в

26    соответствии с настоящим Постановлением.

27

28

1    **c.    Искусственный Интеллект.** Любая сторона, использующая генеративный

2    искусственный интеллект (такой как ChatGPT, Harvey, CoCounsel или Google Bard) для

3    создания любой части краткого изложения, искового заявления или другого документа,

4    должна приложить к документу отдельное заявление, раскрывающее использование

5    искусственного интеллекта и удостоверяющее, что заявитель проверил исходный

6    материал и подтвердил, что искусственно сгенерированный контент является точным и

7    соответствует обязательствам заявителя по Правилу 11.

8    **d.    Предлагаемые Постановления.** Каждая сторона, подающая ходатайство или

9    добивающаяся разрешения любого вопроса, должна вручить и представить

10    предлагаемое постановление, в котором излагается требуемая правовая защита или

11    действие, а также краткое изложение обоснования решения с соответствующими

12    ссылками.

13    i.    <u>Шаблоны.</u> Воспользуйтесь шаблоном «Предлагаемого Постановления» или

14    «Постановления о переносе рассмотрения дела» (в зависимости от того, какой

15    из них применим), размещенным на <u>веб-странице судьи Блюменфельда</u> в

16    разделе «Постановления и Дополнительные Документы». Невыполнение

17    данного требования может привести к отклонению прошения. Предлагаемые

18    постановления *не* должны содержать: (1) имена адвокатов, адреса и т. д. на

19    титульной странице; (2) нижний колонтитул с названием документа или другой

20    информацией; или (3) водяной знак или обозначение названия фирмы.

21    Предлагаемые постановления должны быть оформлены таким же образом как и

22    ходатайства. *См. ниже* параграф 6(c) (iii).

23    ii.    <u>Электронная почта</u> Суд требует строгого соблюдения Правила 5-4.4.2 Правил

24    Местной Юрисдикции, которое гласит, что «копия предлагаемого документа в

25    формате Microsoft Word вместе с копией основного документа в формате PDF,

26    поданного в электронном виде, должна быть отправлена по электронной почте

27    на общий адрес электронной почты камеры назначенного судьи». Суд не будет

28    рассматривать ходатайство об урегулировании спора, одностороннее

1    ходатайство (ex parte) или иное ходатайство о возмещении ущерба до тех пор,

2    пока не получит по электронной почте соответствующее предлагаемое

3    постановление. Заявка может быть аннулирована в случае несвоевременного

4    выполнения требований.

5    e.    **Копии для Камеры Судей**. Копии для Камеры (бумажные копии, направленные в

6    Камеры при электронной регистрации документа) требуются только для следующих

7    документов: (1) ходатайства (ходатайства, возражения, ответы и сопутствующие

8    документы[9]), включая ходатайства перед началом процесса (in limine); (2)

9    односторонние ходатайства (ex parte) о временных запретительных судебных приказах;

10    и (3) досудебные документы (меморандумы фактов и законов, списки свидетелей и

11    вещественных доказательств, заявление досудебного совещания, инструкции

12    присяжным, формы вердиктов и т. д.). Копии для Камеры должны соответствовать

13    правилам, изложенным ниже.

14    i.    Своевременность и место расположения Незамедлительно доставляйте копии

15    документов для Камеры в почтовый ящик судьи Блюменфельда, расположенный

16    снаружи офиса секретаря на 4-м этаже здания суда на Первой улице.

17    Соответствующие документы не будут рассматриваться до тех пор, пока не

18    будут представлены копии для Камеры. Задержка в представлении таких копий

19    приведет к задержке рассмотрения заявления.

20    ii.    Формат. Копии для Камер, которые не обязательно должны быть на синей

21    подложке, должны быть копиями поданного документа, т. е. они должны иметь

22    информацию о деле в верхней части каждой страницы. Документы, содержащие

23    выделение цветом, цветные фотографии, «красные линии» и т. п., должны быть

24    напечатаны в цвете. Короткие документы следует скрепить степлером или

25    скрепкой в верхнем левом углу. Документы большего размера следует

26    доставлять в папке с тремя кольцами. Папки должны быть не больше 4 дюймов.

27

28    [9]

1  Папки должны иметь как титульный лист, так и этикетку на корешке, на

2  которой указаны название дела, номер дела и описание содержимого.

3      iii.  <u>Вещественные Доказательства</u> Разделите все экспонаты табуляцией-

4  разделителем справа или внизу документа. Если объем доказательств

5  превышает 50 страниц, копия судебной палаты должна: (1) включать

6  оглавление; и (2) быть в папке с тремя кольцами, где каждый экземпляр отделен

7  разделителем-закладкой справа или снизу. Если объем доказательств превышает

8  200 страниц, оглавление и доказательства необходимо поместить в папку с

9  наклонными D-образными кольцами.

10  **f.**  **Уведомления о Несоответствии** Если поданное заявление не соответствует правилам

11  суда, канцелярия может выдать уведомление о несоответствии, в котором обычно

12  указывается, что никаких действий не требуется, если только суд не вынесет иного

13  решения. Стороны не должны считать несоответствующую требованиям подачу

14  документов  аннулированной, если только Суд отдельно не распорядится о его

15  аннулировании. Уведомление о несоответствии само по себе не освобождает ни одну из

16  сторон от ее обязательств в отношении подачи заявления (например, своевременной

17  подачи возражения или явки на слушание, о котором было объявлено).

18  **6.**  <u>**Основные Требования к Ходатайствам**</u>

19  **a.**  **Требование «Встретиться и посовещаться».** Правило 7-3 Правил Местной

20  Юрисдикции требует, чтобы адвокат провел предварительную конференцию «для

21  тщательного обсуждения . сути рассматриваемого предложения и любое возможное

22  решение».

23      i.  <u>Предмет регулирования.</u> Это требование применяется во всех случаях, включая

24  случаи, когда сторонами в судебном процессе являются лица, представляющее

25  себя на суде без участия адвоката, и распространяется на все вопросы. Если

26  стороны не могут полностью разрешить спор, они должны попытаться сузить

27  круг спорных вопросов. Стороны должны встречаться и проводить совещания

28  лично или посредством видеоконференции; переписка по электронной почте

Case 2:25-cv-04631-SB-MAR    Document 57-4    Filed 02/10/26    Page 122 of 145    Page
ID #403
Дело No. 2:25-cv-04631-SB-MAR    Документ 11    подан 30 июня 2025    страница 10 из 20    ID страницы
#1039

1    недостаточна. Ходатайство, не подкрепленное приведенным ниже

2    подтверждением, может быть отклонено или может быть вынесен отказ по

3    совокупности.

4        ii.    Удостоверение. Сторона, подающая ходатайство, должна приложить к концу

5            поданного ходатайства подписанное удостоверение следующего содержания:

6            *«Я подтверждаю, что стороны встретились лично или посредством*

7            *видеоконференции, тщательно обсудили каждый вопрос, поднятый в*

8            *ходатайстве, и добросовестно попытались разрешить ходатайство*

9            *полностью или частично».*

10            Если сторона, не подавшая ходатайство, отказывается от добросовестного

11            участия, то ходатайствующая сторона должна подробно объяснить отказ.

12        iii.    Санкции. Невыполнение любой из сторон добросовестно требования «встречи и

13            совещания» влечет за собой приказ о представлении оснований для санкций,

14            включая, в соответствующих случаях, отклонение ходатайства, признание

15            ходатайства без возражений и/или наложение денежных санкций.

16    **b.**    **Время подачи и рассмотрения ходатайств.** Этот суд рассматривает гражданские

17        ходатайства по пятницам в 8:30 утра.

18        i.    Праздники. Если пятница — выходной день суда, выберите другую пятницу.

19            Возражения или ответные документы, требуемые для подачи в пятницу на

20            которую выпадает выходной день, могут быть поданы в следующий

21            понедельник.

22        ii.    Закрытые Даты. Даты, когда слушания не проводяться, сообщаются по крайней

23            мере за четыре недели заранее, а даты закрытых слушаний указываются на веб-

24            странице судьи Блюменфельда. Ходатайство, поданное в закрытый день

25            слушания, будет отклонено или отложено по усмотрению суда. *Сторона,*

26            *которая ждет слишком долго и подает ходатайство о проведении слушания в*

27            *день, который оказывается невозможным, рискует, что ходатайство будет*

28            *отклонено и не будет рассмотрено вообще.*

Case 2:25-cv-04631-SB-MAR    Document 57-4    Filed 02/10/26    Page 123 of 145    Page
ID #:404
Дело No. 2:25-cv-04631-SB-MAR    Документ 11    подан 30 июня 2025    страница 11 из 20    ID страницы
#1139

iii.  <u>Неподача возражений.</u> Несвоевременное возражение по ходатайству, скорее всего, приведет к тому, что ходатайство будет удовлетворено после истечения срока подачи возражения. См. Правило 7-12 Правил Местной Юрисдикции (несвоевременная подача заявки «может считаться согласием на удовлетворение ходатайства.»)

iv.  <u>Отзыв</u> Если стороны урегулируют вопрос(ы), представленный(е) в ходатайстве, путем мирового соглашения или иным образом, суд должен быть уведомлен об этом немедленно, чтобы избежать ненужной судебной работы.

c.  **Длина, Сноски и Формат Ходатайств**

i.  <u>Длина</u> Если не указано иное, объем любого поддерживающего или оппонирующего меморандума не должен превышать 7000 слов (или 25 страниц с двойным интервалом, если он написан от руки), а объем любого ответного меморандума не должен превышать 4000 слов (или 15 страниц с двойным интервалом, если он написан от руки) — за исключением только индексов и приложений. Адвокат должен подтвердить соблюдение количества слов в соответствии с  Правилом 11-6.2. Правил Местной Юрисдикции Редко можно найти веские причины для расширения этих ограничений. Меморандум, превышающий допустимую длину, может быть аннулирован.

ii.  <u>Сноски</u> Используйте не более восьми сносок в любой поддерживающей или опровергаемой части и не более пяти сносок в любом ответе. Цитаты, подтверждающие утверждение в основном тексте, должны быть включены в основной текст, а не в сноски.

iii.  <u>Формат.</u> Шрифт и интервалы должны соответствовать Правилу 11-3.1.1 Правил Местной Юрисдикции, за исключением того, что стороны обязаны использовать только шрифт Times New Roman размером 14 пунктов. Сноски должны быть набраны тем же шрифтом и того же размера, что и основной текст меморандума, и разделены 12-пунктным интервалом.

1        iv.    <u>Реплики на ходатайства сторон.</u> Целью краткого ответа является лаконичный

2             ответ на аргументы второй стороны. В Реплике не следует повторять

3             предысторию или правовые стандарты, содержащиеся в ходатайстве, а также не

4             следует повторять аргументы, за исключением случаев, когда это необходимо

5             для ответа на возражения.

6     **d.**      **Ссылки На Авторитетные Источники.** Любой аргумент или юридическое заявление,

7       не подкрепленные правовым авторитетным источником, могут считаться

8       «отклоненными или утратившими силу» в объеме, разрешенном законом. Стороны

9       должны соблюдать форматирование Bluebook и требования к цитированию,

10       изложенные ниже.

11      i.    <u>Закрепление цитат.</u> Ссылки на дела должны содержать как цитируемое дело, так

12         и конкретную страницу, на которую делается ссылка.

13      ii.    <u>Строковые цитаты.</u> Сторонам не следует использовать строковые ссылки без

14         веской причины. При использовании строковых ссылок сторона должна

15         включить в скобках пояснение к каждому цитируемому случаю.

16     iii.    <u>Правовые базы данных.</u> При цитировании неопубликованных материалов в

17         юридических базах данных по возможности ссылайтесь на Westlaw (а не на

18         Lexis). Однако стороны, не имеющие доступа к Westlaw, не будут подвергаться

19         штрафным санкциям за цитирование других источников.

20     iv.    <u>Законодательные акты США.</u> Ссылки на нормативные акты должны конкретно

21         указывать на упоминаемые разделы и подразделы. Ссылки должны указывать на

22         соответствующий официальный нормативный акт (например, на Кодекс США),

23         а не просто на популярное название закона.

24     v.    <u>Трактаты. Руководства и т.п.</u> Ссылки на трактаты, руководства и другие

25         материалы должны включать том, раздел и соответствующие страницы.

26         Прикрепите копии, если эти материалы недоступны на Westlaw, особенно это

27         касается исторических материалов (например, более ранней законодательной

28         истории).

Case 2:25-cv-04631-SB-MAR    Document 57-4    Filed 02/10/26    Page 125 of 145    Page
Дело No. 2:25-cv-04631-SB-MAR    Документ 11 ID #:406    страница 13 из 20    ID страницы
#1339    подан 30 июня 2025

1

**7.    ОСОБЫЕ ТРЕБОВАНИЯ К  ХОДАТАЙСТВАМ**

2

    **a.**    **Ходатайства в соответствии с Правилом 12.** Большинство ходатайств об отклонении

3

или снятии, особенно ходатайств, касающихся предполагаемых недостатков жалобы,

4

ответа или встречного иска, которые могут быть исправлены путем внесения поправок,

5

можно избежать, если стороны проведут добросовестное совещание, как того требует

6

Правило 7-3 Правил Местной Юрисдикции. Как правило, Суд предоставляет

7

разрешение на внесение поправок при удовлетворении ходатайства об отклонении, если

8

только не ясно, что жалоба не подлежит исправлению. *См. Rosenberg Bros & Co.*

9

*против Арнольда*, 283 F.2d 406, 406 (9th Cir. 1960) (требующий «крайней

10

либеральности» в отношении поправок). Если к обоснованно поданному ходатайству

11

применяется стандарт «крайней либеральности» Девятого округа, Суд может в

12

упрощенном порядке удовлетворить ходатайство с разрешением на внесение поправок.

13

Добросовестная «встреча и совещание» может помочь избежать такого дорогостоящего

14

и неэффективного процесса. Если суд удовлетворит ходатайство об отклонении с

15

разрешением на внесение поправок, истец должен подать измененную жалобу в течение

16

срока, установленного судом. Несвоевременная подача измененной жалобы приведет к

17

отклонению иска с предубеждением.

18

    **b.**    **Ходатайства О Внесении Поправок** В ходатайстве о внесении поправок в исковое

19

заявление должно быть описано и изложено действие предлагаемой поправки, а также

20

оно должно сопровождаться «отредактированной» версией предлагаемого измененного

21

искового заявления с указанием всех дополнений и исключений из предыдущей версии

22

искового заявления. Отредактированная версия должна быть доставлена в Камеру (в

23

бумажной форме) и по электронной почте (в электронной форме с использованием

24

Word). Перед подачей ходатайства отредактированная версия также должна быть

25

вручена адвокату противоположной стороны не позднее, чем за два часа до

26

конференции согласно Правила 7-3 Правил Местной Юрисдикции; и если истец

27

позднее изменит представленную версию, адвокатам потребуется снова встретиться для

28

обсуждения пересмотренного ходатайства. В дополнение к требованиям Правил

Case 2:25-cv-04631-SB-MAR    Document 57-4    Filed 02/10/26    Page 126 of 145    Page
ID #:407
Дело No. 2:25-cv-04631-SB-MAR    Документ 11    подан 30 июня 2025    страница 14 из 20    ID страницы
#1439

1   Местной Юрисдикции, все измененные исковые заявления должны иметь порядковый

2   номер для различения каждой поправки (например, «Первая измененная жалоба»,

3   «Вторая измененная жалоба»).

4   c.    **Ходатайства О Вынесении Решения В Порядке Упрощенного Судопроизводства.**

5   Пожалуйста, обратитесь к Постановлению судьи Блюменфельда относительно:

6   Ходатайства о вынесении решения в порядке упрощенного судопроизводства можно

7   найти по адресу https://www.cacd.uscourts.gov/honorable-stanley-blumenfeld-jr.

8   d.    **Ходатайства Об Исчерпании PLRA.** Вопрос об исчерпании прав в соответствии с

9   Законом о Реформе Тюремного Судопроизводства (PLRA) должен быть поднят в начале

10   судебного разбирательства. Альбино против Бака, 747 F.3d 1162, 1170 (9th Cir. 2014).

11   Сторона, стремящаяся получить судебное определение по любому спору о

12   существенных фактах, исключающему вынесение решения в порядке упрощенного

13   судопроизводства по вопросу об исчерпании прав, должна подать в этот Суд

14   ходатайство о проведении слушания *в течение 14 дней с момента подачи*

15   *постановления об отклонении решения в порядке упрощенного судопроизводства.*

16   Несвоевременная подача запроса может быть истолкована как отказ от вопроса об

17   исчерпании прав.

18   e.    **Ходатайства О Вынесении Заочных Решений.** Если суд не вынесет иного

19   постановления, ходатайства о вынесении заочного решения должны быть поданы в

20   течение 14 дней с момента (1) признания невыполнения обязательств последним

21   оставшимся ответчиком или (2) урегулирования всех претензий ко всем ответчикам,

22   которые не объявили невыполнения обязательств. В ходатайстве должно быть указано

23   как содержание иска, так и персональная юрисдикция. См. B re Tuli, 172 F.3d 707, 712

24   (9th Cir. 1999). Истец, ходатайствующий о вынесении заочного решения и желающий

25   потребовать возмещения гонораров адвокатов и судебных издержек, должен приложить

26   к ходатайству должным образом обоснованное ходатайство о возмещении гонораров

27   адвокатов и судебных издержек вместе с ходатайством о вынесении заочного решения.

28   Невыполнение этого требования приведет к отклонению любого последующего

1  ходатайства о возмещении гонораров адвокатов и судебных издержек при отсутствии

2  уважительной причины. Суд может отменить слушание по ходатайству о вынесении

3  заочного решения, если своевременно не подано возражение, и об этом следует указать

4  в уведомлении о ходатайстве. Если суд не распорядится иначе, заявитель должен

5  явиться на слушание ходатайства подготовленным, изложить свои доводы и ответить на

6  любое предварительное мнение даже при отсутствии возражений.

7  **f.    Ходатайства О Возмещении Расходов На Адвоката.** Ходатайство о возмещении

8  расходов на оплату услуг адвоката должно быть подкреплено документацией,

9  подтверждающей количество оплаченных часов, за которые истец хочет получить

10  возмещение. Для любого ходатайства, требующего возмещения гонорара в размере

11  более 50 000 долларов США, истец должен дополнительно предоставить по

12  электронной почте в CRD таблицу Excel, в которой указаны часы, за которые истец

13  требует возмещения, используя формат, приведенный в следующем примере:

| **Дата** | **Имя** | **Должность** | **Задача** | **Категория** | **Часы** | **Стоимость** | **Сумма** |
|---|---|---|---|---|---|---|---|
| **3/2/23** | **Джон Смит** | **Помощник** | **Исследование Выбора Права Для Подачи Ходатайства Об Отклонении** | **МТД** | **0.7** | **$300** | **$210.00** |
| **3/5/23** | **Джейн Доу** | **Партнер** | **Разговаривала С Клиентом О Медицинской Истории** | **СС** | **0.2** | **$500** | **$100.00** |
| **3/5/23** | **Джерри Ро** | **Помощник адвоката** | **Собирал папку по делу** | **АДМ** | **01** | **$150** | **$15.00** |

21  Если стороны используют сокращения в столбце «Категория» (как в приведенном

22  примере), они должны включить легенду, разъясняющую значение каждого

23  сокращения.

24  **g.    Заявления на Опечатывание.** Если суд ранее предоставил разрешение на

25  опечатывание конкретного вещественного доказательства, сторонам не нужно

26  подавать новое заявление о приобщении этого вещественного доказательства к делу в

27  рамках нового процесса. Стороны могут просто подать опечатанное доказательство

28

Case 2:25-cv-04631-SB-MAR    Document 57-4    Filed 02/10/26    Page 128 of 145    Page
ID #:409
Дело No. 2:25-cv-04631-SB-MAR    Документ 11    подан 30 июня 2025    страница 16 из 20    ID страницы
#1639

1    вместе с заявлением о том, что суд уже разрешил опечатывание доказательства, со

2    ссылкой на соответствующее постановление.

3    **8.    СЛУШАНИЯ ПО ХОДАТАЙСТВАМ**

4        **a.    Дистанционное Присутствие.** Заочное участие не допускается при отсутствии

5        уважительной причины, указанной в заявлении, одновременно поданном вместе с

6        ходатайством или возражением. При отсутствии одновременной подачи заявления,

7        сторона, ходатайствующая об удаленном присутствии, должна представить заявление,

8        подтверждающее, что сторона не может явиться лично из-за непредвиденных и

9        неизбежных чрезвычайных обстоятельств и что сторона подала запрос

10       незамедлительно после того, как узнала о чрезвычайной ситуации. Инструкции по

11       дистанционному участию в слушании можно найти на веб-странице судьи

12       Блюменфельда. Адвокаты, участвующие в процессе удаленно, несут ответственность

13       за обеспечение надежности своего оборудования и интернет-соединения в месте, где

14       они будут участвовать, а также за обеспечение достаточности такого соединения для

15       бесперебойного видеоучастия.

16       **b.    Рассмотрение без присутствия сторон.** Суд может исключить ходатайство из

17       рассмотрения, если придет к выводу, что устные прения не принесут пользы

18       решению.

19       **c.    Время.** Если устные доводы разрешены, сторонам будет предоставлено в общей

20       сложности 20 минут, разделенных поровну между сторонами, если суд не укажет

21       иное. Если суд сочтет, что рассмотрение вопроса требует меньше или больше

22       времени, он сообщит об этом адвокату на слушании.

23       **d.    Предварительные Постановления.** Суд часто выносит письменные

24       предварительные постановления и публикует их на веб-странице судьи

25       Блюменфельда накануне слушания, в 18:00. Цель предварительного постановления —

26       задать направление обсуждению на слушании. Ни одна из сторон не имеет права

27       подавать письменный ответ на предварительное решение без разрешения суда.

28       Предварительное решение не является окончательным решением Суда, и сторонам

Case 2:25-cv-04631-SB-MAR    Document 57-4    Filed 02/10/26    Page 129 of 145   Page
ID #:410
Дело No. 2:25-cv-04631-SB-MAR    Документ 11    подан 30 июня 2025    страница 17 из 20    ID страницы #1739

1  «*категорически запрещено* приобщать его к делу в качестве доказательства или иным

2  образом.

3  **e.    Устная Аргументация.** Если вынесено предварительное решение, стороны должны

4  быть готовы объяснить, почему анализ верен или неверен. Кроме того, суд часто

5  проверяет обоснованность своих доводов, задавая вопросы, и ожидает от адвокатов

6  прямых и откровенных ответов.

7  **f.    Урегулирование.** Адвокат должен уведомить суд не позднее, чем за две недели до

8  назначенного слушания, если стороны ведут переговоры об урегулировании, которые

9  могут сделать ходатайство недействительным, и должен немедленно уведомить суд,

10  если соглашение достигнуто. Запоздалое уведомление об урегулировании приводит к

11  напрасной трате скудных судебных ресурсов и подвергает виновные стороны

12  санкциям, а также может привести к вынесению предварительного решения.

13  **9.    ОДНОСТОРОННИЕ ЗАЯВЛЕНИЯ EX PARTE**

14  Сторона, требующая судебной защиты в одностороннем порядке, включая временный

15  запретительный судебный приказ, должна соблюдать Правило 7-19 Правил Местной Юрисдикции.

16  **a.    Уведомление.** Заявитель должен (1) уведомить другую сторону (или стороны) о том,

17  что документы по оспариванию должны быть поданы не позднее, чем через 48 часов

18  после вручения или до 15:00 первого дня заседания суда после вручения, в

19  зависимости от того, что наступит позже, и (2) сообщить Суду в заявлении, возражает

20  ли какая-либо из сторон на оспаривание заявления. Если оспаривающая сторона не

21  раскрыла свою позицию заявителю до подачи заявления, то оспаривающая сторона

22  должна как можно скорее уведомить CRD по электронной почте о том, намерена ли

23  она оспаривать заявления.

24  **b.    Подача.** Заявление не будет рассмотрено до тех пор, пока не будет предоставлена

25  копия для Камеры суда. После того, как заявление будет передано на рассмотрение,

26  Суд вынесет решение по представленным документам, если не решит назначить

27  слушание. Не обращайтесь в Камеру по поводу статуса поданного заявления.

28

Case 2:25-cv-04631-SB-MAR    Document 57-4    Filed 02/10/26    Page 130 of 145   Page
ID #:411
Дело No. 2:25-cv-04631-SB-MAR    Документ 11    подан 30 июня 2025    страница 18 из 20    ID страницы
#1839

1      **c.**     **Не Освобождение от Обязательства.** Заявление или условие не освобождают

2  стороны от основного обязательства (например, приближающегося истечения

3  крайнего срока). Сторонам не следует предполагать, что невстречающее возражений

4  ходатайство или условие в одностороннем порядке будут удовлетворены; а поданное

5  в последнюю минуту и отклоненное ходатайство или условие, может привести к

6  невыполнению стороной своих обязательств или к невыполнению основного

7  обязательства.

8  **10.**   **ПЕРЕНОС РАССМОТРЕНИЯ ДЕЛА**

9      Суд продлевает сроки досудебного и судебного разбирательства только при своевременном

10  представлении уважительной причины. Суд применяет один и тот же стандарт уважительной

11  причины ко всем ходатайствам о продлении срока — независимо от того, оспариваемым, не

12  оспариваемым или совместно запрашиваемым.

13      **a.**     **Уважительная Причина.** Уважительная причина требует конкретной, подробной и

14  незаключительной демонстрации осмотрительности с самого начала дела,

15  описывающего: (1) вся соответствующая работа, выполненная ранее (включая время

16  завершения каждого пункта), (2) вся соответствующая работа, которую еще предстоит

17  выполнить, (3) почему оставшаяся работа не могла быть выполнена ранее (включая

18  усилия, предпринятые для завершения каждого оставшегося пункта), и (4) почему

19  запрашиваемое количество времени необходимо для завершения оставшейся работы.

20      **b.**     **Осмотрительность.** Приказ об управлении делом (CMO), который стороны получат

21  после MSC, содержит приложение с информацией, которую необходимо представить

22  в форме таблицы для демонстрации осмотрительности. Обычно добросовестность *не*

23  достигается, когда какая-либо сторона выбирает стратегию инсценирования

24  раскрытия информации (или других задач) или личные показания, которые мешают

25  завершить дело в установленные сроки. Более того, желание участвовать в

26  переговорах по урегулированию не является веской причиной для продления

27  существующих сроков. Сторонам настоятельно рекомендуется договориться об

28

Case 2:25-cv-04631-SB-MAR    Document 57-4    Filed 02/10/26    Page 131 of 145    Page
ID #:412
Дело No. 2:25-cv-04631-SB-MAR    Документ 11    подан 30 июня 2025    страница 19 из 20    ID страницы
#1939

1    оперативном обмене первоначальной раскрытой информацией и активно приступить к

2    раскрытию информации в MSC.

3        **c.**    **Предлагаемое Постановление.** Стороны должны заполнить и предоставить шаблон в

4    расширении СМО <u>на веб-странице судьи Блюменфельда</u> в разделе «Приказы и

5    дополнительные документы». Пожалуйста, соблюдайте выделенные указания в конце

6    документа. Зарегистрируйте предлагаемое постановление и отправьте электронную

7    копию в формате Word на электронную почту палаты судьи Блюменфельда

8    (SB_Chambers@cacd.uscourts.gov). Неправильное использование и подача шаблона

9    расширения СМО приведут к удалению заявки или ее отклонению в упрощенном

10    порядке.

11        **d.**    **Отказывание с Предубеждением.** Отказ в удовлетворении запроса на продление

12    срока, включая отказ в порядке упрощенного судопроизводства, осуществляется *с*

13    *предубеждением*. В связи с этим стороны должны представить всю имеющуюся

14    информацию, свидетельствующую о том, что незаконченное раскрытие информации

15    или другие судебные задачи не могут быть завершены в установленные сроки,

16    несмотря на всю разумную осмотрительность с самого начала дела. Ни одной из

17    сторон не разрешается повторно подавать отклоненный запрос на продление срока с

18    информацией, которая была ранее подана или доступна.

19               \*    \*    \*

20    Несоблюдение вышеуказанных процедурных требований, включая использование и

21    надлежащую подачу таблицы в приложении к Постановлению MSC и шаблона расширения

22    СМО, может привести к отклонению запроса на продление или его упрощенному

23    исполнению. Ненадлежащая повторная подача отклоненного запроса на продление может

24    привести к санкциям.

25    **11.**    <u>**КОЛЛЕКТИВНЫЕ ИСКИ**</u>

26    Стороны предполагаемого коллективного иска должны действовать осмотрительно и

27    немедленно начать раскрытие информации, чтобы ходатайство о признании иска коллективным

28    можно было подать оперативно. Ходатайство о признании иска коллективным должно быть подано

1  не позднее 120 дней с даты, первоначально установленной для проведения конференции по

2  планированию, если суд не распорядится иначе.

3  **12.    ДЕЛА ЭРИСА (ЗАЯВЛЕНИЯ О ПОСОБИЯХ)**

4      Стороны могут получить постановление MSC в обычном порядке. Поскольку к делам ERISA

5  не применяется обычный график предварительного и судебного разбирательств, сторонам

6  необходимо только представить совместный отчет о состоянии, в котором указаны любые особые

7  вопросы, которые следует рассмотреть. После подачи жалобы стороны должны незамедлительно

8  приступить к составлению административного протокола и брифингу. При необходимости суд

9  рассмотрит ходатайства об определении стандарта проверки, разрешения на раскрытие информации

10  и объема административной документации. Адвокатам не рекомендуется подавать ходатайства о

11  вынесении решения в порядке упрощенного судопроизводства или частичного упрощенного

12  судопроизводства для определения существа дела. См. дело Кирни против Standard Insurance Co.,

13  175 F.3d 1084, 1095 (9th Cir. 1999) (в полном составе) (с учетом разницы в процедурах между

14  Правилом 56 и Правилом 52). Судебное разбирательство, обычно ограничивающееся устными

15  прениями по административному делу, будет назначено в течение шести месяцев с момента подачи

16  первоначальной жалобы, если в отчете о состоянии дела не будет указано уважительной причины

17  для предоставления дополнительного времени. Если суд придет к выводу, что устные доводы не

18  принесут пользы решению, вопрос может быть передан на рассмотрение по документам.

19  **13.    АППЕЛЯЦИИ ПО БАНКРОТСТВУ**

20      Адвокат должен соблюдать положения Уведомления об апелляции из суда по делам о

21  банкротстве, выданного во время подачи апелляции в окружной суд. Дело считается принятым к

22  производству с момента подачи ответного заявления апеллянта. Суд рассматривает апелляции по

23  делам о банкротстве на бумажном носителе и обычно не назначает эти вопросы к слушанию.

24  **14.    СОГЛАСИЕ СУДЬИ-МАГИСТРАТА**

25      Стороны могут согласиться на то, чтобы судья-магистрат председательствовал на протяжении

26  всего рассмотрения дела, включая судебное разбирательство. Стороны могут выбрать любого

27  судью-магистрата из Списка Добровольного Согласия, размещенного на веб-сайте Центрального

28  Округа. Если стороны согласны, они должны связаться с судебным секретарем выбранного  судьи-

1  магистрата в зале суда, чтобы подтвердить его или ее участие, и после подтверждения

2  незамедлительно подать ″Уведомление о предоставлении согласия» вместе с приложенной к нему

3  формой CV-11D *(Заявление о согласии на рассмотрение дела  судьей-магистратом США)*

4  прикрепленной к нему.

5  **15.   САНКЦИИ ЗА НЕСОБЛЮДЕНИЕ ТРЕБОВАНИЙ**

6       Если, без удовлетворительных объяснений, адвокат не представляет требуемый отчет согласно

7  Совместному правилу 26(f) или требуемые досудебные документы, не является на какое-либо

8  запланированное судебное разбирательство или иным образом не выполняет судебные

9  постановления или правила, Суд принимает любые меры, которые он сочтет необходимыми,

10  включая: (i) прекращение дела в связи с невыполнением обязательства по судебному

11  преследованию, если такое невыполнение допущено истцом; (ii) отмена ответа, влекущая за собой

12  невыполнение обязательства, если такое невыполнение допущено ответчиком; (iii) наложение

13  денежных санкций на виновную сторону и адвоката,

14

15

16

17

18

19

20

21  и/или (iv) где это применимо, отмена статуса pro hac vice (особый случай) допущенных таким

22  образом адвокатов.

23

24

25

26  Дата 30 июня, 2025                         (Подпись)

27                                   Стэнли Блюменфельд, Мл.
                                      Окружной Судья Соединенных Штатов

28                                  147

**Офис секретарей судебных заседаний**

**Заказывание Стенограмм**

Стенограммы гражданских и уголовных дел окружного суда можно заказать, заключив финансовые соглашения с отдельными судебными секретарями. Чтобы узнать, к какому секретарю судебных заседаний следует обратиться по конкретному судебному делу до апреля 2002 года, обратитесь к соответствующей записи в реестре гражданских или уголовных дел, который теперь доступен в электронном виде на сайте PACER. Для конкретных судебных дел после апреля 2002 года расписания работы секретарей судебных заседаний размещены на веб-сайте. Перейдите в раздел «Расписание секретаря судебных заседаний», затем в "просмотрите все "и выберите дату, которая необходима.. Заказы стенограмм судебных заседаний судов судей-магистратов должны передаваться в Отдел протоколов судебных заседаний Отдела Документации. Пожалуйста, посетите веб-сайт для получения необходимых телефонных номеров, соответствующих тарифов и информации о назначениях секретарей судебных заседаний. Для получения более подробной информации вы можете позвонить в офис планировщика секретарей судебных заседаний по телефону 213-894-0658.

**Заказ Подключения В Реальном Времени**

Подключение к системе отчетности в реальном времени следует запросить до начала судебного разбирательства. Пожалуйста, свяжитесь с офисом планировщика секретарей судебных заседаний, чтобы запросить подключение в режиме реального времени. За связь в режиме реального времени существует отдельная плата. Пожалуйста, посмотрите плату за стенограммы для определения стоимости. Единственными секретарями судебных заседаний, которые могут подключаться к системе реального времени и взимать за это плату, являются сертифицированные на федеральном уровне секретари судебных заседаний, работающие в режиме реального времени. Многие секретари судебных заседаний предоставят возможность подключения в режиме реального времени, если заказаны ежедневные стенограммы. Адвокат должен принести свой собственный ноутбук.

**Заказ Ежедневных Стенограмм**

Запрос на ежедневную стенограмму следует подать как можно раньше до начала судебного разбирательства. Пожалуйста, сообщите об этом в офис планировщика секретарей судебных заседаний как минимум за неделю до даты начала судебного разбирательства, чтобы запросить ежедневную расшифровку стенограмм. Ежедневная рассылка не начнет работу до тех пор, пока не будут урегулированы финансовые вопросы. Пожалуйста, не приходите в суд в первый день судебного разбирательства и не запрашивайте ежедневную стенограмму, поскольку секретарям судебных заседаний нужно время на подготовку.

**Сенсорные Экраны**

Сенсорные экраны доступны в лобби каждого отделения. Это устройство предоставляет адреса судов, часы работы, номера телефонов, ежедневный главный календарь и еженедельный календарь после вынесения обвинительного приговора.

**СОЕДИНЕННЫЕ ШТАТЫ ОКРУЖНОЙ СУД**

**ЦЕНТРАЛЬНЫЙ ОКРУГ КАЛИФОРНИИ**

~~~~~

**ЗАПАДНОЕ ПОДРАЗДЕЛЕНИЕ**
ЗДАНИЕ СУДА СОЕДИНЕННЫХ ШТАТОВ
Офис Секретаря Суда, Комната G-8
312 Норс Спринг Стрит, 11-й этаж
Лос Анджелес, Калифорния 90012
(213) 894-1565

~~~~~

**ЮЖНОЕ ПОДРАЗДЕЛЕНИЕ**
Федеральное Здание Имени Рональда Рейгана и
Здание Суда
Офис Секретаря Суда, Комната 1-053
411 Вэст 4th Стрит
Санта Ана, Калифорния 92701-4516
(714) 338-4750

~~~~~

**ВОСТОЧНОЕ ПОДРАЗДЕЛЕНИЕ**
ЗДАНИЕ СУДА СОЕДИНЕННЫХ ШТАТОВ
Офис Секретаря Суда, Комната 134
3470 Твэлф Стрит
Риверсайд, Калифорния 92501
(951) 328-4450

~~~~~

**www.cacd.uscourts.gov**

**ОКРУЖНОЙ СУД СОЕДИНЕННЫХ ШТАТОВ**

**ЦЕНТРАЛЬНЫЙ ОКРУГ КАЛИФОРНИИ**

[Печать:]
ОКРУЖНОЙ СУД СОЕДИНЕННЫХ ШТАТОВ
ЦЕНТРАЛЬНЫЙ ОКРУГ КАЛИФОРНИИ



**Офис Секретаря Суда**

**Услуги для Адвокатов и Неограниченного круга лиц**

**Октябрь 2010**

Окружной суд Соединенных Штатов Центрального округа Калифорнии является одним из крупнейших федеральных судов в стране. Офис секретаря суда подготовил эту брошюру, чтобы предоставить адвокатам и неограниченному кругу лиц краткий справочник по услугам, доступным в настоящее время. Мы всегда приветствуем любые отзывы и предложения о том, как мы можем улучшить качество наших услуг.

### Вебсайт

Информацию об окружном суде можно получить в Интернете. Пользователи могут получить информацию о процедурах приема адвокатов и подачи заявлений; просматривать главные и ежедневные календари, требования к явке в суд, правила местной юрисдикции, правила судопроизводства, а также недавно вынесенные и опубликованные заключения; получать подробную информацию о помощи адвокатов и доступных судебных услугах; загружать судебные формы и быть в курсе последних нововведений в офисе секретаря суда. Зайдите на вебсайт суда по ссылке: www.cacd.uscourts.gov.

### Часы Работы Офиса

Часы работы офиса секретаря суда с 10:00 утра - 4:00 дня, с понедельника по пятницу, за исключением праздничных дней соблюдается суд. Услуга предоставления ящика для документов прекращена. Для экстренной подачи документов с 16:00 до 17:00 звоните в Западное отделение. 213-894-2127; Южное отделение: 714-338-4764/4760; Восточное отделение: 951-328-4470. После 5:00 p.m., звоните 213-894-2485.

### ВебPACER

«Публичный доступ к электронным судебным записям» (PACER) — это электронная поисковая система на основе браузера, которая предоставляет сводки уголовных и гражданских дел, а также информацию об уголовных делах с помощью компьютерного терминала. PACER также обеспечивает доступ к изображениям электронно поданных документов. Служба PACER доступна 24 часа в день, включая выходные дни. Чтобы установить аккаунт PACER, свяжитесь с сервисным центром PACER (800) 676-6856

### Архив

Все находящиеся на рассмотрении уголовные, гражданские, мировые и многоокружные судебные дела (MDL) можно бесплатно просмотреть в офисе секретаря суда. Материалы дела и реестр могут быть просмотрены в тот же день, когда они были запрошены, за исключением случаев, когда запрошенные материалы недоступны.
Некоторые закрытые дела находятся в хранилище суда и могут быть заказаны, просмотрены, а копии получены непосредственно в Национальном Управлении Архивов и Документации (NARA) по телефону 951-956-2000. Для получения файла вам необходимо предоставить регистрационный номер NARA, местонахождение и номер ящика. Эту информацию можно получить на веб-сайте суда по адресу www.cacd.uscourts.gov/nara. Если нет никаких результатов поиска, позвоните в Западное отделение: 213-894-3863, направьте сообщение в отдел записей по электронной

почте _cacd@cacd.uscourts.gov_; Южное отделение 714- 338-4785; Восточное отделение: 951-328-4450. Чтобы определить, в каком офисе секретаря хранится дело, которое вы хотите просмотреть, обратитесь к префиксу номера дела (две цифры после букв обозначают год подачи; например, 09 — это 2009 год) следующим образом:

**Западное Отделение (Лос Анджелес)**
CV 09-0000 – гражданское.   CR 09-0000 – уголовное
**Южное Отделение (Санта Ана)**
SACV 09-0000 – гражданское.       SACR 09-0000 – уголовное
**Восточное Отделение (Риверсайд)**
EDCV 09-0000 – гражданское. EDCR 09-0000 – уголовное

За копии, заверения и демонстрационные материалы взимается плата. Более подробную информацию о закрытых или архивных судебных записях можно найти на веб-сайте суда по адресу www.cacd.uscourts.gov/records.

### Услуга ксерокопирования

Услуги ксерокопирования предоставляются сторонними копировальными службами. Обратите внимание, что официальные заверенные копии и документы по-прежнему необходимо получать в офисе секретаря суда. Для получения информации о вариантах оплаты обратитесь к соответствующим поставщикам услуг: Западное Отделение: 213-253-9413; Южное отделение: 714-543-8123; Восточное Отделение: 951-328-4470.

### Услуги Устного Переводчика

Отдел устных переводчиков канцелярии суда предоставляет услуги устных переводчиков для всех судебных разбирательств, инициированных Соединенными Штатами, в которых требуется использование языка, отличного от английского. Отдел также выдает рекомендации переводчиков в ответ на запросы юридических фирм и общественности в случаях, когда переводчик не назначается судом. Для получения дополнительной информации позвоните по телефону 213-894-4370 или посетите веб-сайт суда www.cacd.uscourts.gov/interpreters.

### Секция Присяжных

Веб-сайт суда предлагает ценную информацию будущим присяжным. Вы можете увидеть ответы на часто задаваемые вопросы, прочитать Общий приказ 07-10 относительно отбора членов большого и малого жюри присяжных; загрузить справочник присяжных; просмотреть информацию о присяжных для всех трех отделений; и проверить свой статус/инструкции с помощью Автоматизированной системы информации о присяжных (AJIS). Вопросы и комментарии отправляйте в отдел присяжных по адресу jury@cacd.uscourts.gov. В совещательных комнатах присяжных имеется проводной и беспроводной доступ в Интернет.

### Рабочий Кабинет Адвоката

Для адвокатов, рабочий кабинет расположен на втором этаже здания суда на Спринг-стрит, на первом этаже здания Roybal Federal Building, на десятом этаже здания Ronald Reagan Federal Building и U.S. Courthouse и на третьем этаже здания

Riverside Courthouse. В рабочих помещениях имеются персональные компьютеры Pentium с доступом к Westlaw, WordPerfect и PACER, лазерные принтеры, проводной и беспроводной доступ в Интернет, шкафчики для хранения вещей, копировальные аппараты и отдельные конференц-залы.

### Устройства для презентации Доказательств

В офисе секретаря суда имеются устройства для презентации доказательств, которые адвокаты могут использовать в судебных разбирательствах. Эта технология подключает проектор к мониторам, на которые выводится изображение для судьи, адвокатов и присяжных. Плата за использование оборудования не взимается, однако из-за высокого спроса на него оборудование резервируется в порядке живой очереди. Для получения дополнительной информации или бронирования оборудования посетите веб-сайт суда или свяжитесь с соответствующими подразделениями: Западное отделение: 213-894-3061; Южное отделение: 714-338-4785; и Восточное отделение: 951-328-4450 или 951-328-4451.

### Видео Конференции

Видеоконференцсвязь позволяет сторонам, находящимся за пределами здания суда, присутствовать на судебных заседаниях с помощью двусторонней аудио- и видеосвязи. Необходимо связаться с соответствующим заместителем секретаря суда, чтобы узнать, разрешено ли использование данного оборудования в зале суда для конкретного слушания или судебного разбирательства. Плата за телефон минимальна, но за использование оборудования плата не взимается. Для получения дополнительной информации или бронирования оборудования посетите веб-сайт суда или свяжитесь со справочной службой по помещениям и оснащению суда по телефону 213-894-3061.

### Электронная подача документов

За некоторыми исключениями, все дела подлежат электронной подаче в соответствии с Общим приказом 08-02 с поправками, внесенными Общим приказом 08-11. Посетите веб-страницу CM/ECF по адресу www.cacd.uscourts.gov/cmecf или позвоните в справочную службу CM/ECF по телефону 213-894-0242.

### Представление себя на суде без участия адвоката

Клиника федеральной юридической консультации Pro Se (самостоятельное представительство в суде) расположена на пятом этаже, в комнате 525 здания Федерального суда по адресу 312 North Spring Street, Лос Анджелес, Калифорния. Клиника Pro Se, в которой работает юрист, предлагает информацию и рекомендации на месте лицам, представляющим себя самостоятельно, без адвоката в гражданских исках в Окружном суде США. Для получения дополнительной информации звоните по телефону 213-385-2977, доб. 270 или посетите веб-сайт суда по адресу www.cacd.uscourts.gov/prose.

## ОКРУЖНОЙ СУД СОЕДИНЕННЫХ ШТАТОВ
## ЦЕНТРАЛЬНЫЙ ОКРУГ КАЛИФОРНИИ

## УВЕДОМЛЕНИЕ АДВОКАТУ

***Суд постановил, что следующие правила должны быть доведены до вашего сведения:***

    I.    Длящееся обязательство сообщать о связанных случаях (Правило местной юрисдикции 83-1.3.3)

    II.   Вручение документов и процессуальных документов (Правило местной юрисдикции 4)

## I.   ДЛЯЩЕЕСЯ ОБЯЗАТЕЛЬСТВО СООБЩАТЬ О СВЯЗАННЫХ СЛУЧАЯХ

Стороны обязаны незамедлительно уведомлять Суд в случаях, когда одно или несколько гражданских исков или разбирательств, возбужденных ранее, и одно или несколько текущих исков или разбирательств кажутся связанными между собой.

Правило местной юрисдикции 83-1.3.3 гласит: «Длящейся обязанностью адвоката в любом случае является незамедлительное доведение до сведения суда путем подачи уведомления о связанных делах в соответствии с правилом местной юрисдикции 83-1.3 всех фактов, которые, по мнению адвоката или стороны, представляются имеющими отношение к определению того, должно ли данное исковое заявление и одно или несколько находящихся на рассмотрении исков, в соответствии с критериями и процедурами, изложенными в правиле местной юрисдикции 83-1.3, рассматриваться одним и тем же судьей».

Правило местной юрисдикции 83-1.2.1. гласит: «Не допускается отклонение иска и последующая его повторная подача с целью назначения другого судьи».

Правило местной юрисдикции 83-1.2.2 предусматривает: Если иск отклонен стороной или судом до вынесения решения, а затем те же самые или по существу те же самые требования, касающиеся тех же самых или по существу тех же самых сторон, предъявляются в другом иске, то позднее поданный иск передается судье, которому был передан первоначально поданный иск. Обязанностью каждого адвоката в любом таком позднее поданном иске является доведение этих фактов до сведения Суда в титульном листе гражданского иска и путем подачи Уведомления о связанном деле (делах) в соответствии с Правилом местной юрисдикции 83-1.3.

## II.   ВРУЧЕНИЕ ДОКУМЕНТОВ И ПРОЦЕСС

В правиле местной юрисдикции 4-2 утверждается: «За исключением случаев, когда это предусмотрено постановлением суда или требуется договорами или законами Соединенных Штатов, процессуальные документы не могут быть переданы маршалу Соединенных Штатов для вручения документов». Вручение процессуальных документов должно осуществляться в соответствии с Правилом 4 Федеральных правил гражданского судопроизводства или иным способом, предусмотренным законодательством штата, когда это применимо. Вручение документов Соединенным Штатам, их должностному лицу или агентству осуществляется в соответствии с положениями Правила 4 (i) Федеральных правил гражданского судопроизводства. Вручение документов должно осуществляться незамедлительно; необоснованная задержка может привести к отклонению иска в соответствии с Правилом местной юрисдикции 41 и Правилом 4(m) Федеральных правил гражданского судопроизводства. Доказательство вручения или отказа от вручения повестки и жалобы должны быть зарегистрированы в суде.

Это уведомление должно быть передано секретарем истцу во время подачи иска (или ответчику во время подачи уведомления о передаче), и истцом — другим сторонам в виде приложений к копиям искового заявления и повесток или ответчик — другим сторонам в виде приложений к копиям уведомления истцов о передаче в федеральный суд при его вручении.

---

CV-20 (12/08)          **УВЕДОМЛЕНИЕ АДВОКАТУ**

# ОКРУЖНОЙ СУД СОЕДИНЕННЫХ ШТАТОВ
# ЦЕНТРАЛЬНЫЙ ОКРУГ КАЛИФОРНИИ
# ПРАВИЛА ВЕЖЛИВОСТИ И ПРОФЕССИОНАЛИЗМА

## Преамбула

**В** чистом виде закон — это просто общественный механизм достижения справедливости. Как должностные лица суда, судьи и адвокаты обязаны использовать закон в этих целях, на благо народа. Даже хотя «справедливость» это высокая цель, которая не всегда достигается, когда человек становится представителем юридической профессии, он или она обязательно стремится к этой цели.

### *…растет мнение, что юристы рассматривают свою деятельность как бизнес, а не как профессию.*

К сожалению, многие не осознают, что достижение справедливости является функцией права в современном обществе. Среди общественности и самих юристов растет мнение, что юристы рассматривают свою деятельность как бизнес, а не как профессию. Рассматривая ситуацию таким образом, адвокат может определить свою конечную цель как «выигрыш» любого дела любыми возможными способами и любой ценой, не имея ни малейшего представления о том, свершилось ли правосудие. Такое отношение проявляется в целом ряде упрямых тактик раскрытия информации, отказах удовлетворить разумные запросы адвокатов противоположной стороны относительно дат, времени и места, а также в других ненужных, отнимающих много времени конфликтах между противниками. Такое поведение, как правило, увеличивает судебные издержки и часто приводит к отказу в правосудии.

Центральный округ признает, что, хотя большинство адвокатов не ведут себя описанным выше образом, в последние годы в наших судах наблюдается заметное снижение вежливости и профессионализма. Эта тревожная тенденция может иметь серьезные последствия, если мы не предпримем мер, чтобы обратить ее вспять. Невежливое поведение не является эффективной защитой; скорее, оно приводит к увеличению судебных издержек и не способствует защите законных интересов клиента. Возможно, и, не менее важно и то, что подобное поведение приводит к тому, что общественность теряет веру в юридическую профессию и ее способность приносить пользу обществу. По этим причинам мы считаем, что вежливость и профессионализм среди адвокатов, между юристом и клиентом, а также между судьей и адвокатурой имеют решающее значение для отправления правосудия.

Следующие руководящие принципы призваны побудить нас, членов коллегии адвокатов, относиться друг к другу, к нашим клиентам и к общественности с достоинством и вежливостью, как того требует наша профессия. При разработке этих рекомендаций мы во многом опирались на опыт других авторов, которые разработали аналогичные кодексы для той же цели: *«Руководящие Принципы Ведения Судебных Разбирательств Ассоциации Коллегии Адвокатов Округа Лос Анджелес»*, руководящие принципы, выпущенные другими ассоциациями адвокатов Центрального округа, *Стандарты Профессионального Поведения В Седьмом Федеральном Судебном Округе* и *Кредо Юриста Техаса* — все это предоставляет прекрасные образцы профессионального поведения в юриспруденции.

Мы рассчитываем, что судьи и адвокаты будут добровольно придерживаться этих стандартов в рамках взаимного обязательства по повышению уровня практики в наших судах. Настоящие руководящие принципы не должны использоваться в качестве основы для судебных разбирательств, санкций или штрафов.

Ничто в настоящих правилах не заменяет и не изменяет существующие Местные правила Центрального округа, а также не изменяет существующие стандарты поведения, в рамках которых может быть определена и/или рассмотрена халатность адвоката.

## I. Руководящие принципы

### A. Обязанности Адвокатов перед их Клиентами

1.  Мы будем осуществлять свою профессиональную деятельность, постоянно осознавая, что наша роль заключается в продвижении законных интересов наших клиентов. Мы приложим все усилия для достижения законных целей наших клиентов в юридических сделках и судебных разбирательствах как можно быстрее и экономичнее.

2.  Мы будем лояльны и привержены законным целям наших клиентов, но мы не допустим, чтобы эта лояльность и приверженность мешали нашей обязанности предоставлять объективные и независимые консультации.

3.  Мы будем предупреждать наших клиентов, что от них ожидаются вежливость и учтивость и это не являются признаком слабости.

4.  Мы будем относиться к противоположным сторонам и свидетелям справедливо и с должным вниманием. Клиент не имеет права требовать, чтобы мы действовали оскорбительно или допускали какое-либо оскорбительное поведение.

5.  Мы проинформируем наших клиентов о том, что не будем предпринимать действия, направленные в первую очередь на преследование или истощение финансовых ресурсов противоположной стороны.

6.  Мы сообщим нашим клиентам, что оставляем за собой право определять, следует ли предоставлять примирительные меры адвокатам противоположной стороны по всем вопросам, которые не оказывают негативного влияния на законные цели наших клиентов. Клиенты не

имеют права требовать от нас отклонить обоснованные запросы других юристов.

7. Мы проконсультируем наших клиентов относительно возможности посредничества, арбитража и других альтернативных методов разрешения и урегулирования споров.

8. При взятии на себя представительства клиентов, мы будем консультировать их о содержании настоящего кредо.

## Обязанности Адвокатов Перед Другими Адвокатами

**1. Коммуникация с Противоположными Сторонами**

a. Мы будем придерживаться всех явно выраженных обещаний и соглашений с другими юристами, как устных, так и письменных, и будем добросовестно придерживаться всех соглашений, вытекающих из обстоятельств или местных обычаев.

b. Когда мы достигаем устной договоренности по предлагаемому соглашению или условию и решаем зафиксировать ее в письменной форме, составитель должен добросовестно стремиться изложить устную договоренность точно и полно. Составитель проекта предоставит другому адвокату возможность ознакомиться с текстом. Поскольку между адвокатами происходит обмен проектами, изменения из предыдущих проектов будут указаны в проекте или иным образом явно доведены до сведения других адвокатов. Мы не будем включать в проект вопросы, по которым не было достигнуто соглашения, без явного уведомления других юристов в письменной форме о таком дополнении.

c. Мы не будем писать письма с целью приписать адвокату противоположной стороны позицию, которую он или она не занимали, или создать «запись» событий, которые не происходили. Письма, предназначенные только для фиксации фактов, следует использовать экономно и только тогда, когда это считается необходимым при данных

обстоятельствах. Если суд не разрешает или не требует иного, письма между адвокатами не следует направлять судьям.

**2. Вопросы по Составлению Расписания**

a. Мы не будем использовать никакую форму раскрытия информации или планирования раскрытия информации в качестве средства преследования.

b. Мы будем добросовестно консультироваться с другими юристами по вопросам планирования, чтобы избежать конфликтов в расписании.

c. Мы приложим все усилия, чтобы учесть ранее запланированные даты слушаний, дачи показаний, встреч, конференций, отпусков, семинаров или других мероприятий, которые могут вызвать накладки в календаре со стороны других адвокатов, если это возможно сделать без ущерба для прав клиента. Если нам пошли навстречу из-за календарного конфликта, мы уведомим тех, кто нам помог, как только конфликт будет устранен.

d. Мы уведомим других адвокатов и, при необходимости, суд или других лиц в кратчайшие сроки об отмене или переносе слушаний, допросов, заседаний или конференций. Заблаговременное уведомление позволяет избежать ненужных поездок и расходов адвоката и может позволить суду использовать ранее зарезервированное время для решения других вопросов.

e. За исключением случаев, когда время имеет решающее значение, в качестве вежливой услуги, мы удовлетворим первые запросы на разумное продление срока для ответа на срок судебного разбирательства. После первого продления любые дополнительные просьбы о предоставлении времени будут рассматриваться с учетом необходимости ускорения процесса и уважения, которое обычно следует проявлять к графику личных и профессиональных мероприятий оппонента, обоснованности запрашиваемой продолжительности продления, готовности оппонента предоставить взаимные продления, времени, фактически необходимого для выполнения задачи, а также вероятности того, что суд предоставит продление, если его об этом попросят.

f. Мы не будем запрашивать продление срока исключительно с целью неоправданной задержки или получения тактического преимущества.

g. Мы не будем применять к продлениям несправедливые и ненужные условия. Мы можем настаивать на условиях с целью сохранения прав, которые могут быть ущемлены в результате продления, или в целях поиска взаимных уступок по графику. Предоставляя продление срока, мы не будем пытаться лишить оппонента существенных прав, таких как его или ее право подать апелляцию против жалобы.

**3. Вручение Документов**

a. Мы не будем устанавливать время подачи или вручения ходатайств или исковых заявлений каким-либо образом, который несправедливо ограничит возможность другой стороны ответить.

b. Мы не будем вручать документы незадолго до судебного заседания, чтобы не помешать адвокатам противоположной стороны подготовиться к этому выступлению или, если это разрешено законом, ответить на документы.

c. Мы не будем вручать документы с целью воспользоваться известным отсутствием оппонента в офисе или в такое время или таким образом, чтобы причинить неудобства противнику, например, поздно вечером в пятницу или за день до светского или религиозного праздника.

h. Если существует вероятность, что вручение документов по почте, даже если оно разрешено, нанесет ущерб противоположной стороне, мы осуществим вручение документов лично или посредством факсимильной связи.

**4. Дача Показаний под присягой**

a. Мы примем показания под присягой только тогда, когда это действительно необходимо для установления фактов или информации или для подтверждения показаний. Мы не примем показаний

под присягой с целью преследования
или увеличения судебных издержек.

b. Во время дачи показаний под присягой мы не будем допускать никаких действий, которые были бы неуместны в присутствии судьи.

c. Во время дачи показаний под присягой мы будем задавать только те вопросы, которые, по нашему разумному мнению, необходимы для обвинения или защиты по делу. Мы не будем вникать в личные дела свидетелей или подвергать сомнению их честность, если такое расследование не имеет отношения к сути допроса. Мы воздержимся от повторяющихся или спорных вопросов, а также вопросов, заданных исключительно с целью преследования.

d. При защите показаний мы ограничим возражения теми, которые хорошо обоснованы и необходимы для защиты интересов нашего клиента. Мы признаем, что большинство возражений сохраняются и должны быть высказаны только в том случае, если форма вопроса несовершенна или запрашивается конфиденциальная информация.

e. Пока вопрос находится на рассмотрении, мы не будем посредством возражений или иным образом наставлять свидетеля или предлагать ответы.

f. Мы не будем давать указания допрашиваемому лицу отказаться отвечать на вопросы, если эти вопросы касаются конфиденциальной информации или являются явно неуместными или рассчитаны на причинение беспокойства.

g. При получении документов в соответствии с повесткой о даче показаний мы предоставим копии документов адвокату противоположной стороны за его или ее счет, даже если допрос отменен или отложен.

5. **Требование Документов**

a. Мы тщательно составляем запросы на предоставление документов, чтобы ограничить их теми документами, которые, по нашему обоснованному мнению, необходимы для обвинения или защиты по иску.

Мы не будем разрабатывать запросы на предоставление информации таким образом, чтобы беспокоить или ставить в неловкое положение сторону или свидетеля или налагать на них неоправданное бремя или расходы при реагировании.

b. Мы будем отвечать на запросы документов своевременно и разумно и не будем пытаться интерпретировать запрос в искусственно ограничительной манере, чтобы избежать раскрытия соответствующих и не имеющих юридической силы документов.

c. Мы будем удерживать документы на привилегированном основании только в тех случаях, когда это целесообразно.

d. Мы не будем предоставлять документы в беспорядочной или непонятной форме, а также таким образом, чтобы скрыть или завуалировать существование определенных документов.

e. Мы не будем задерживать предоставление документов, чтобы помешать адвокатам противоположной стороны изучить документы до запланированных показаний или по каким-либо другим тактическим причинам.

6. **Письменный опрос свидетелей**

a. Мы тщательно разработаем вопросы, чтобы ограничить их теми вопросами, которые, по нашему разумному мнению, необходимы для обвинения или защиты по иску, и не будем разрабатывать их таким образом, чтобы они преследовали сторону или возлагали на нее неоправданное бремя или расходы.

b. Мы будем отвечать на запросы своевременно и разумно и не будем пытаться интерпретировать их в искусственно ограничительной манере с целью избежать раскрытия относящейся к делу и непривилегированной информации.

c. Мы будем обосновывать наши возражения по по допросному листу на добросовестном убеждении в их обоснованности, а не на цели утаивания или задержки раскрытия соответствующей информации. Если

допросный лист содержит часть, вызывающую возражения, мы ответим на ту часть, которая не вызывает возражений.

7. **Урегулирование Споров И Альтернативные Методы Разрешения Споров**

a. За исключением случаев, когда существуют серьезные и первостепенные принципиальные вопросы, мы поднимем и рассмотрим вопрос об урегулировании в каждом случае, как только о деле станет известно достаточно, чтобы сделать обсуждение урегулирования содержательным.

b. Мы не будем ложно утверждать, что возможность мирового соглашения является средством отсрочки раскрытия информации или затягивания судебного разбирательства.

c. В каждом случае мы рассмотрим, можно ли должным образом удовлетворить интересы клиента и разрешить спор более оперативно и экономично путем арбитража, посредничества или других форм альтернативного разрешения споров.

8. **Письменные Заявления в Суд, Включая Краткие Изложения, Меморандумы, Аффидевиты, Декларации и Предлагаемые Постановления.**

a. Прежде чем подавать ходатайство в суд, мы проведем не просто формальное обсуждение его цели, а постараемся разрешить проблему с адвокатом противоположной стороны.

b. Мы не будем вынуждать нашего оппонента подать ходатайство, а затем не возражать против него.

c. При представлении в суд краткой информации или меморандумов с изложением пунктов дела и полномочий мы не будем полагаться на факты, которые не являются по существу частью материалов дела. Мы можем представлять исторические, экономические или социологические данные, если такие данные содержатся в общедоступных источниках или получены из них.

4

154

d. В гражданских исках мы устанавливаем оговорки по соответствующим вопросам, если они не оспариваются и если нет оснований для добросовестного ходатайства не устанавливать оговорки.

e. За исключением случаев, когда это прямо и неизбежно касается предмета спора, мы не будем умалять интеллект, мораль, честность или личное поведение наших оппонентов перед судом, ни в письменных заявлениях, ни в устных выступлениях.

f. Мы не будем, при отсутствии достаточных оснований, приписывать другим адвокатам дурные мотивы или ненадлежащее поведение или порочить репутацию профессии необоснованными обвинениями в неэтичности.

g. Мы не будем ходатайствовать о применении судебных санкций в отношении адвоката противоположной стороны без предварительного проведения разумного расследования и если только это не будет полностью оправдано обстоятельствами и не будет необходимо для защиты законных интересов нашего клиента.

h. Мы не будем признавать какое-либо неявку или прекращение дела без предварительного уведомления адвоката противоположной стороны, если нам известна его или ее личность.

i. Когда адвокату необходимо подготовить проект постановления, отражающий решение суда, мы подготовим постановление, которое будет точно и полностью отражать решение суда. Мы оперативно подготовим и представим проект постановления другим юристам и попытаемся урегулировать любые разногласия до того, как проект постановления будет представлен в суд.

**9. Односторонняя Коммуникация с Судом**

a. Мы будем избегать односторонней коммуникации ex parte по существу рассматриваемого дела с судьей (или

его/ее помощником), у которого это дело находится на рассмотрении.

b. Даже в тех случаях, когда применимые законы или правила разрешают подачу заявления или сообщения в суд в одностороннем порядке, перед подачей такого заявления или сообщения мы приложим все усилия, чтобы уведомить противоположную сторону или ее адвоката. Мы приложим разумные усилия, чтобы учесть график работы такого адвоката, чтобы противоположная сторона могла быть представлена в заявлении.

c. В тех случаях, когда правила разрешают подачу заявления или сообщения в суд в одностороннем порядке в чрезвычайной ситуации, мы направим такое заявление или сообщение только в случае действительной чрезвычайной ситуации, при которой клиенту адвоката будет нанесен серьезный ущерб в случае непредставления заявления или сообщения в порядке обычного уведомления.

**C. Обязанности Адвоката Перед Судом**

1. Во всех случаях общения с судом мы будем говорить и писать вежливо и уважительно.

2. Мы будем пунктуальны и готовы ко всем судебным заседаниям, чтобы все слушания, совещания и судебные разбирательства могли начаться вовремя; в случае задержки мы, по возможности, уведомим об этом суд и адвоката.

3. Мы будем учитывать временные ограничения и нагрузку на суд и его персонал, возникающие в их усилиях осуществлять правосудие.

4. Мы не будем допускать никаких действий, которые могут нарушить порядок в зале суда. Мы информируем наших клиентов и свидетелей, выступающих в суде, о надлежащем поведении, которое ожидается и требуется там, и, насколько это в наших силах, не позволим нашим клиентам и свидетелям создавать беспорядок или помехи.

5. Мы не будем писать письма в суд в связи с рассматриваемым делом, если

суд не попросит или не разрешит нам это.

6. Перед назначением даты слушания или судебного разбирательства, или, если это невозможно, сразу после назначения такой даты, мы попытаемся проверить наличие необходимых участников и свидетелей, чтобы иметь возможность оперативно уведомить суд о любых возможных проблемах.

7. Мы будем действовать и разговаривать вежливо с судебными приставами, судебными клерками, судебными репортерами, секретарями и помощниками юристов, понимая, что они также являются неотъемлемой частью судебной системы.

**D. Обязанности Адвоката Перед Судом**

1. Мы будем вежливы, уважительны и корректны по отношению к адвокатам, сторонам и свидетелям, которые предстанут перед нами. Кроме того, мы воспользуемся нашими полномочиями, чтобы гарантировать, что все адвокаты, стороны и свидетели, появляющиеся в наших залах суда, вели себя вежливо.

2. Мы сделаем все возможное, чтобы обеспечить вежливое отношение сотрудников суда к адвокатам, сторонам и свидетелям.

3. Мы не будем использовать оскорбительные, унизительные или оскорбительные выражения в своих мнениях или в письменном или устном общении с адвокатами, сторонами или свидетелями.

4. Мы будем пунктуальны в проведении всех слушаний, собраний и конференций.

5. Мы приложим разумные усилия для оперативного решения всех вопросов, представленных нам на решение.

6. Стремясь эффективно разрешать споры, мы будем учитывать временные ограничения и давление, налагаемое на юристов требованиями судебной практики.

7. Прежде всего, мы будем помнить, что суд — слуга народа, и мы будем подходить к выполнению своих обязанностей именно таким образом.

# PACER

**Публичный Доступ к Электронным Записям Суда**



## PACER

**Публичный Доступ к Электронным Записям Суда**

(PACER) — это электронная служба общественного доступа, которая позволяет пользователям получать информацию о делах из федеральных судов. PACER — это служба судебной системы США, предоставляемая Административным Управлением Судов США.

PACER предлагает недорогую и простую в использовании альтернативу для получения информации по делу из Системы Управления Делами И Электронными Файлами Судебных Органов (CM/ECF) без необходимости посещения здания суда. PACER позволяет пользователю Интернета запрашивать информацию о конкретном деле или стороне. Данные сразу же доступны для печати или загрузки.

## CM/ECF

CM/ECF — это система федеральных судов, используемая для управления делами и позволяющая адвокатам подавать документы по делам через Интернет.

В настоящее время ведется определение требований к следующему поколению CM/ECF. Информацию и обновления PACER и CM/ECF см. в разделе «Что нового в PACER» на веб-сайте PACER.

## РЕГИСТРАЦИЯ

Чтобы зарегистрироваться для доступа, посетите веб-сайт сервисного центра PACER по адресу www.pacer.gov. Нажмите на вкладку «Регистрация» и выберите тип учетной записи. Затем заполните онлайн-форму и укажите действующий адрес электронной почты.

- Предоставьте данные кредитной карты для создания учетной записи и получения доступа в тот же день.

- Выберите регистрацию без данных кредитной карты, и вы получите данные для входа в учетную запись по почте США, обычно в течение одной недели.

Регистрация бесплатная.

# ПРИЛОЖЕНИЕ Б

## <u>АФФИДАВИТ О ПРЕДОСТАВЛЕНИИ УВЕДОМЛЕНИЯ О КОНФИСКАЦИИ</u>

Истец:        Соединенные Штаты Америки

Адресат:     **РУСТАМ РАФАИЛЕВИЧ ГАЛЛЯМОВ,** также известный как, **он же «Кортес», он же «Томперз», он же «Чак».**

Вид:          Предоставление Уведомления о Конфискации

        Я, _____, действующий от имени Российской Федерации в соответствии с запросом об оказании правовой помощи от Соединенных Штатов Америки от 12 сентября 2025 года, удостоверяю в соответствии с инструкциями, изложенными в указанном запросе:

1.  Я предоставил копию Иска на Конфискацию (**Приложение А**) и Письмо (с приложениями) относительно Иска (**Приложение Б**) _____ числа _____ 2025 года следующим лицам:

     _____.
     (адрес электронной почты и/или почтовый адрес, город, страна)

     Одним из следующих методов (Обведите все использованные методы)

     a.  Вручение лично в руки адресату, принявшему это добровольно.
     b.  По почте или другим курьером.
     c.  По электронной почте.

     Документы, указанные в настоящем документе, были доставлены:

     _____
     (Имя и Описание Лица Получающего Документы)

     _____
     (отношение к адресату, например, Семья, Бизнес, или другое)

ИЛИ:

2. Что Иск на Конфискацию (**Приложение А**) и Письмо (с приложениями)
относительно Иска (**Приложение Б**) не были доставлены вышеуказанному адресату
по следующим причинам (пожалуйста, опишите шаги, предпринятые для попытки
найти и предоставить документы адресату):

_____

Я заявляю, что вышеизложенное является истинным и правильным.

_____

Подпись      лица      доставляющего
Аффидевит

Выполнено в этот  день _____ 2025 года.