TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section
JAMES E. DOCHTERMAN (Cal. Bar No. 256396)
Assistant United States Attorney
Asset Forfeiture and Recovery Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-2686
    Facsimile:  (213) 894-6269
    E-mail: James.Dochterman@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>VIRTUAL CURRENCY AND $2,061,517.68 IN U.S. CURRENCY,<br><br>        Defendants.<br><br>CONCORD MUSIC GROUP, INC., DISH NETWORK CORPORATION, AND MINTO HOLDINGS, INC.,<br><br>        Claimants. | Case No. 2:25-cv-04631-SB-MAR<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST THE INTERESTS OF RUSTAM RAFAILEVICH GALLYAMOV; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF AUSA JAMES E. DOCHTERMAN**<br><br>DATE: April 3, 2026<br>TIME: 8:30 A.M.<br>ROOM: 6C<br><br>Before the Honorable<br>Stanley Blumenfeld Jr.<br>United States District Judge |

//

//

PLEASE TAKE NOTICE that on Friday, April 3, 2026, at 8:30 a.m., plaintiff United States of America (the "government" or "plaintiff") will present a Motion for the Entry of Default Judgment against only the interests of potential claimant Rustam Rafailevich Gallyamov before the Honorable Stanley Blumenfeld Jr., First Street U.S. Courthouse, 350 W. 1st Street, Los Angeles, CA 90012.

The motion is brought pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Rule 55-1 of the Local Rules of Practice for the Central District of California.  The motion is based upon this Notice of Motion and Motion for Default Judgment, the accompanying Memorandum of Points and Authorities, the Declaration of AUSA James E. Dochterman, other facts appearing in the court's file, and such further evidence, oral or documentary, as may be presented prior to or at the hearing on this motion.

DATED: February 20, 2026        Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery
Section

 /s/ James E. Dochterman
JAMES E. DOCHTERMAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

# TABLE OF CONTENTS

I. THE POTENTIAL CLAIMANT IS IN DEFAULT ...................................................... 1

II. ARGUMENT ................................................................................................................. 3

    A. THE STANDARD FOR ENTRY OF JUDGMENT BY DEFAULT .......... 3

        1. THE *EITEL* FACTORS .................................................................. 3

        2. PROCEDURAL REQUIREMENTS ...................................... 4

        3. FAILURE TO FILE A VALID CLAIM AND ANSWER ................. 5

    B. THE FACTS DEEMED ADMITTED BY THE FAILURE TO FILE A CLAIM OR ANSWER ESTABLISH THAT THE DEFENDANT ASSETS CONSTITUTE FORFEITABLE PROCEEDS OF MONEY LAUNDERING AND FRAUD. ......................................................................... 6

    C. THE COMPLAINT'S ALLEGATIONS ESTABLISH THAT THE DEFENDANT ASSETS ARE SUBJECT TO FORFEITURE ..................... 8

    D. THE PROPOSED DEFAULT JUDGMENT ................................................ 8

III. CONCLUSION ............................................................................................................. 9

i

## TABLE OF AUTHORITIES

**CASES**

*Angelo Iafrate Const., LLC v. Potashnick Const., Inc.*,
     370 F.3d 715 (8th Cir. 2004) ....................................................................4

*Eitel v. McCool*,
     782 F.2d 1470 (9th Cir. 1986) ...............................................................3, 4

*Geddes v. United Financial Group*,
     559 F.2d 557 (9th Cir. 1977) ....................................................................3

*PepsiCo v. Triunfo-Mex, Inc.*,
     189 F.R.D. 431 (C.D. Cal. 1999) ..............................................................3

*TeleVideo Systems, Inc. v. Heidenthal*,
     826 F.2d 915 (9th Cir. 1987) ....................................................................3

*United States v. $ 50,200.00 in U.S. Currency*,
     76 F. Supp. 2d 1247 (D. Wy. 1999) ..........................................................5

*United States v. $104,674.00*,
     17 F.3d 267 (8th Cir. 1994) ......................................................................5

*United States v. $148,840.00 In U.S. Currency*,
     521 F.3d 1268 (10th Cir. 2008) ................................................................5

*United States v. $515,060.42 in U.S. Currency*,
     152 F.3d 491 (6th Cir. 1998) ....................................................................5

*United States v. 1,071,251.44 of Funds Associated with Mingzheng Int'l Trading
     Ltd.*,
     324 F. Supp. 3d 38 (D.D.C. 2018) ............................................................1

United States v. 2007 Chrysler 300 Touring VIN:2C3KA53G27H883668, 2011
     WL 1119701, at *4 (D.N.M. Mar. 10, 2011) ............................................5

*United States v. Currency, U.S. $42,500.00*,
     283 F.3d 977 (9th Cir. 2002) ....................................................................8

*United States v. Currency $267,961.07*,
     916 F.2d 1104 (6th Cir. 1990) ..................................................................5

*United States v. Funds Up to & including the Amount of $56,634 in U.S. Currency
     on Deposit in Banesco (Int'l, Panama, Acct.# XXXXXXXXXXX, Titled in
     the Name of Inversiones Cendeno C.A.*,
     79 F. Supp. 3d 112 (D.D.C. 2015)............................................................5

*United States v. One 1985 Cadillac Seville*,
     866 F.2d 1142 (9th Cir. 1989) ..................................................................5

*United States v. One 2001 Cadillac Deville Sedan*,
     335 F. Supp. 2d 769 (E.D. Mich. 2004) ...................................................5

**FEDERAL STATUTES**

18 U.S.C. §§ 371 ...................................................................................................... 6,

18 U.S.C. § 981(a)(1)(A) ..................................................................................... 1, 8, 10

18 U.S.C. § 981(a)(1)(C) ..................................................................................... 1, 8, 10

18 U.S.C. § 983(c)(1) ...................................................................................................... 8

18 U.S.C. § 1030 ...................................................................................................... 3, 4, 6, 8

18 U.S.C. § 1343 ...................................................................................................... 3, 4, 6, 8

18 U.S.C. § 1349 ...................................................................................................... 6, 8

18 U.S.C. § 1956(a)(1)(A)(i) ......................................................................................... 3

18 U.S.C. § 1956(a)(1)(B)(i) ......................................................................................... 3

18 U.S.C. § 1956(a)(2)(A) ............................................................................................. 3

18 U.S.C. § 1956(a)(2)(b)(i) .......................................................................................... 3

18 U.S.C. § 1956(a)(2)(h) .............................................................................................. 3

18 U.S.C. § 1957(a) ....................................................................................................... 4

50 App. U.S.C. § 521, Servicemembers Civil Relief Act of 2003 ......................... 2, 5, 11

**RULES**

Supplemental Rule C(6) ................................................................................................ 5

Supplemental Rule E(4)(b) ....................................................................................... 1, 10

Supplemental Rule G(4)(a)(iv)(C) ............................................................................ 1, 10

Supplemental Rule G(4)(b) ........................................................................................... 2

Supplemental Rule G(4)(b)(iii) ..................................................................................... 2

Supplemental Rule G(5) ........................................................................................... 2, 11

Fed.R. Civ. P. 55(a) ....................................................................................................... 3

Fed. R. Civ. P. 55(b)(2) ........................................................................................... 3, 5, 8

Local Rule 55 .................................................................................................................. 5

**TREATIES**

1999 U.S.-Russian Federation Mutual Legal Assistance Treaty ................................ 1, 10

iii

**SECONDARY SOURCES**

10A Wright, Miller & Kane, *Federal Practice* and Procedure *3d* § 2688 ....................................................................................8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      THE POTENTIAL CLAIMANT IS IN DEFAULT**

On May 22, 2025, the government filed a Verified Complaint for Forfeiture ("Complaint") as to the defendants, Virtual Currency and $2,061,517.68 in U.S. Currency (the "defendants" or "defendant assets"), pursuant to 18 U.S.C. § 981(a)(1)(A) and (C). Dkt. 1; *see also* Declaration of AUSA James E. Dochterman ("Dochterman Decl.") at ¶ 2.

Process was served upon the defendant asset by the United States Marshals Service ("USMS") in accordance with Supplemental Rule E(4)(b) on August 26, 2025. Dochterman Decl., Ex. A. Beginning on August 19, 2025, notice of Civil Forfeiture was posted on an official government internet site (www.forfeiture.gov) for at least 30 consecutive days, as required by Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Dochterman Decl., Ex. B.

**Notice to Rustam Rafailevich Gallyamov**

On November 20, 2025, the United States Department of Justice, Office of International Affairs, sent notice of the Complaint to potential claimant Rustam Rafailevich Gallyamov ("Gallyamov") via the Central Authority of the Russian Federation pursuant to the 1999 U.S.-Russian Federation Mutual Legal Assistance Treaty ("Treaty"). The notice was sent by electronic transmission to Russian authorities. Dochterman Decl., Ex. C. Because this is an *in rem* case, the government's internet publication, coupled with the public indictment and MLAT transmission, arguably satisfies the reasonable steps the government must take to provide notice to potential claimant Gallyamov under the Supplemental Rules and due process. *See United States v. 1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, 324 F. Supp. 3d 38, 47 (D.D.C. 2018) (where the United States contacted embassies in China, the United Kingdom, and Switzerland and effected service consistent with those countries' laws, consisting of international package service as to China and the United Kingdom and a MLAT request to Switzerland "[t]hat is more than sufficient under Supplemental Rule

1

G(4)(b) to warrant entry of a default judgment") (emphasis added); *United States v. Funds Up to & including the Amount of $56,634 in U.S. Currency on Deposit in Banesco (Int'l, Panama, Acct.# XXXXXXXXXXX, Titled in the Name of Inversiones Cendeno C.A.,.*, 79 F. Supp. 3d 112, 114 (D.D.C. 2015) (where Panama froze funds but failed to provide contact information for the account holders for the defendant bank account, the government's efforts to provide notice "constituted notice 'sent by means reasonably calculated to reach the potential claimant[s]' as required by Supplemental Rule G(4)(b)(iii).") (citation omitted).

In accordance Supplemental Rule G(5), the time for potential claimant Gallyamov to file a claim in this action expired on December 29, 2025, and the time for filing an answer expired on January 20, 2026. *Id*. at ¶ 6.

Also in accordance with Supplemental Rule G(5), all interested parties who did not receive direct notice were required to file a claim no later than 60 days after the first day of publication of an official internet government forfeiture site and an answer within 21 days thereafter. The first day of publication of this action on the government forfeiture site was August 19, 2025. Accordingly, the time to file a claim for all interested parties expired on October 18, 2025, and the time for filing an answer expired on November 8, 2025. *Id*. at ¶ 7.

On February 10, 2026, the government filed an application for entry of clerk's default (Dkt. 57), but the clerk has not issued the default.

Plaintiff has not received a filed claim or answer from potential claimant Gallyamov. *Id*. at ¶ 8.

On information and belief, potential claimant Gallyamov is not a minor or incompetent person. *Id*. at ¶ 9.

On information and belief, potential claimant Gallyamov (who is believed to be a Russian citizen) is not in the in the U.S. military; accordingly, the Servicemembers Civil Relief Act of 2003 does not apply. *Id*. at ¶ 10.

On the date of this filing, this Notice of Motion and Motion for Default Judgment will be sent to OIA for further action regarding transmittal to Gallyamov. *Id*. at ¶ 15.

## II.    ARGUMENT

### A.    THE STANDARD FOR ENTRY OF JUDGMENT BY DEFAULT

#### 1.    THE *EITEL* FACTORS

After the Clerk has entered default for failure to plead or otherwise defend an action, the Court may enter judgment by default on the plaintiff's complaint. Fed. R. Civ. P. 55(a), 55(b)(2). Default judgments "are more often granted then denied." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999). When exercising this discretion, courts typically consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (the "Eitel factors"). Furthermore, when considering whether to grant default judgment, courts generally assume the factual allegations of the complaint to be true. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987).

The Eitel Factors in this case weigh heavily in support of default judgment against potential claimant Gallyamov. As discussed in detail below, the government has established that the defendant assets constitute property involved in multiple or attempted transactions in violation of: money laundering under 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i), (a)(2)(A), (a)(2)(b)(i) and/or (h) (for violation of 18 U.S.C. §§ 1030 (relating to computer fraud and abuse) and/or 1343 (wire fraud)), or

3

property traceable to such property; and/or engaging in monetary transactions derived from specified unlawful activities under (aka "transactional money laundering")18 U.S.C. § 1957(a) (for violation of 18 U.S.C. §§ 1030 (relating to computer fraud and abuse) and/or 1343 (wire fraud)); and/or property constituting or are derived from proceeds traceable to, or a conspiracy to commit violations under 18 U.S.C. §§ 1030 (computer fraud and abuse) and/or 1343 (wire fraud).

Furthermore, there is no dispute as to material facts because the potential claimant has not filed a valid claim or answer in this case and there is no evidence that the default is due to excusable neglect. Finally, while policy considerations favor a decision on the merits, it is not possible to decide this case on the merits solely with respect to the defendant assets and the potential claimant's interests therein, because the potential claimant has not filed a claim or answer to contest the forfeiture. In addition to the Eitel factors, a court may grant a default judgment "if the liability of the defaulting party is based on independent wrongful acts or a legal theory distinct from the one under which the answering party prevailed."[1] Mirroring the Default Motion, the government asserts that potential claimant and indicted defendant Gallyamov occupies a starkly distinct position apart and aside from the victims, *i.e.* Mr. Gallyamov is responsible for the fraud and theft that injured the victim claimants. All other claims, actual or potential, are necessarily filed by victims seeking recompense for the harm inflicted on them by Gallyamov. Accordingly, there is no just reason to delay adjudicating Gallyamov's interests so that the remaining parties may move freely towards an equitable resolution. Therefore, default judgment is appropriate.

## 2.    PROCEDURAL REQUIREMENTS

A party seeking default judgment must establish: (a) when and against what party the default was entered; (b) the identification of the pleading to which default was entered; (c) whether the defaulting party is an infant or incompetent person, and if so,

---

[1] *Angelo Iafrate Const., LLC v. Potashnick Const., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004).

4

whether that person is represented by a general guardian, committee, conservator or other representative; (d) that the Servicemembers Civil Relief Act (50 App. U.S.C. § 521) does not apply; and (e) that notice has been served on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2). C.D. Cal. L.R. 55. As set forth above, these procedural requirements have been met.

### 3. FAILURE TO FILE A VALID CLAIM AND ANSWER

In order to contest a forfeiture action, a claimant must have Article III and statutory standing. *United States v. $148,840.00 In U.S. Currency*, 521 F.3d 1268, 1273 n.3 (10th Cir. 2008); *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491 (6th Cir. 1998); *United States v. One 1985 Cadillac Seville*, 866 F.2d 1142 (9th Cir. 1989). A verified claim is a prerequisite to establishing statutory standing. *United States v. 2007 Chrysler 300 Touring VIN:2C3KA53G27H883668*, No. CIV 10-0246 JB WDS, 2011 WL 1119701, at *4 (D.N.M. Mar. 10, 2011). The known potential claimant Gallyamov was informed by the government of the requirements to file a claim on or before December 29, 2025, and an answer within 21 days thereafter.[2] Having failed to do so, potential claimant Gallyamov has no statutory standing in this matter. *United States v. One 2001 Cadillac Deville Sedan*, 335 F. Supp. 2d 769, 772-3 (E.D. Mich. 2004) (claimant who did not comply with Supplemental Rule C(6) by filing a verified claim lacks statutory standing); *United States v. $50,200.00 in U.S. Currency*, 76 F. Supp. 2d 1247, 1253 (D. Wy. 1999) (same); *United States v. $104,674.00*, 17 F.3d 267, 268 (8th Cir. 1994) (strict compliance with Supplemental Rule C(6) is required); *United States v. Currency $267,961.07*, 916 F.2d 1104, 1108 (6th Cir. 1990) (same). Therefore, potential claimant Gallyamov is properly in default and the facts of the Complaint are to be deemed admitted.

---

[2] The deadline to file a claim and an answer within 21-days after complaint notice passed on January 20, 2026.

**B.     THE FACTS DEEMED ADMITTED BY THE FAILURE TO FILE A CLAIM OR ANSWER ESTABLISH THAT THE DEFENDANT ASSETS CONSTITUTE FORFEITABLE PROCEEDS OF MONEY LAUNDERING AND FRAUD.**

The government alleged the following facts in the Complaint[3]:

**Investigation Background**

Qakbot (or Qbot) was a malicious computer software developed, deployed and controlled since 2008 by members of a cybercriminal conspiracy led by Gallyamov. From at least 2019, Qakbot conspirators infected hundreds of thousands of victim computers in the Central District of California and elsewhere with the Qakbot malware, thereby gaining unauthorized access to and control of those computers. In August 2023, the Qakbot network was disrupted in an international law enforcement action. Qakbot conspirators used their unauthorized access to victim computers to facilitate the further infection of those victim computers with additional malicious software in the form of ransomware. Typically, as part of these ransomware attacks, data was also stolen from victim computers. Victims were then extorted to regain access to their data and prevent the further dissemination of their private data by the attackers. After ransomware victims paid ransoms in Bitcoin (BTC), Gallyamov and the Qakbot conspirators received a share of the ransom for each victim whose computers were compromised by the Qakbot conspiracy. On May 2, 2025, in case No. 2:25-CR-340-SB, a grand jury in the Central District of California returned an indictment charging Gallyamov with violations of 18 U.S.C. §§ 371 (conspiracy to violate 18 U.S.C. § 1030) and 1349 (conspiracy to violate 18 U.S.C. § 1343) for his role in the Qakbot conspiracy.

Currently, the government has received claims from Dish Network Corporation, Concord Music Group, Inc., and Minto Holdings, Inc., which assert interests in the defendant assets.  Accordingly, the government does not seek default judgment as to

---

[3] Only the applicable facts are included; the full factual basis can be found in the Complaint (Dkt. 1).

these claimants, but *only* against Gallyamov's interests.

**Traceable Proceeds of Money Laundering and Fraud**

In the absence of a claim and answer, these facts are deemed admitted as concerns Gallyamov's interests, to wit: Qakbot conspirators engaged in multiple transactions moving virtual currency ransom fraud proceeds through a series of intermediary addresses with the intention to conceal the criminal origin of the ransom fraud proceeds.

After careful review of all relevant documents, including but not limited to blockchain transaction records, records of virtual assets service providers, Qakbot conspirator communications and records, and analysis using commercial blockchain analysis tools, law enforcement officers determined that numerous deposits made to the August 2023 Wallets (*See* Dkt. 1, ¶ 5.b (enumerating multiple groups of various cryptocurrencies and amounts)) consisted of ransom proceeds paid to ransomware groups, which in turn transferred ransom proceeds to Gallyamov.

Ransom deposits to the August 2023 wallets came primarily from clusters of addresses identified by law enforcement as belonging to ransomware groups or known ransomware actors. Further analysis by law enforcement showed that victims' ransom payments were often collected or pooled in clusters of addresses associated with the ransomware group before ransom payment shares were parceled out, including to Gallyamov. Last, August 2023 Wallets transactions between September 2022 and April 2023 showed that ransom payments made to Gallyamov in BTC made up more than 80 percent of the value of the virtual currency seized from the August 2023 wallets.

In addition to the August 2023 Wallets, investigators also found details identifying the USDC Addresses and the USDT Addresses, which corresponded to virtual currency stored on ledger hardware wallets owned by Gallyamov. After careful review of the all relevant documents, law enforcement officers identified the funding sources for the USDT Addresses and the USDC Addresses, which primarily originated from virtual currency exchanges outside the United States in 2021 and 2022. Analysis of these transactions showed that they were used in money laundering transactions and were also

7

used to make payments of ransom proceeds to Qakbot coconspirators to facilitate the operation of the conspiracy.

Lastly,  law enforcement officers determined that numerous deposits made to the April 2025 Wallets consisted of ransoms paid to ransomware groups, which in turn paid Gallyamov.

**C.     THE COMPLAINT'S ALLEGATIONS ESTABLISH THAT THE DEFENDANT ASSETS ARE SUBJECT TO FORFEITURE**

Plaintiff alleges that the defendant assets are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C) because they constitute traceable proceeds of and were involved in money laundering offenses pertaining to the payment of ransoms for computers infected by ransomware as a result of computer intrusions by members of the Qakbot conspiracy.

Here, the facts alleged in the Complaint establish that the defendant assets constitute or are derived from proceeds traceable to violations of 18 U.S.C. §§ 371 (conspiracy to violate 18 U.S.C. § 1030) and 1349 (conspiracy to violate 18 U.S.C. § 1343).  To prevail on its claim here, the government must establish the elements of the claim by a preponderance of the evidence. 18 U.S.C. § 983(c)(1). In making that showing, the government may rely upon both circumstantial and direct evidence. *United States v. Currency, U.S. $42,500.00,* 283 F.3d 977, 980 (9th Cir. 2002) (forfeiture determination is based on the aggregate of facts, including circumstantial evidence).

**D.     THE PROPOSED DEFAULT JUDGMENT**

Because the facts admitted by the defaulting party establish that the defendant assets are subject to forfeiture, judgment by default against the interests of the potential claimant Gallyamov should be entered pursuant to Federal Rule of Civil Procedure 55(b)(2).

Once a court has decided that judgment should be entered by default, the court must determine the character of the recovery to grant the plaintiff.  10A Wright, Miller & Kane, *Federal Practice and Procedure 3d* § 2688.  The proposed default judgment

grants the very relief sought in the complaint (forfeiture of the defendant assets to the United States of America for disposition according to law).

## III.   CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant this motion for a default judgment against Gallyamov.

DATED: February 20, 2026          Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section

 /s/James E. Dochterman
JAMES E. DOCHTERMAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

9