UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> VIRTUAL CURRENCY et al., <br><br> Defendants. | Case No. 2:25-cv-04631-SB-MAR <br><br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [DKT. NO. 61] |

The United States government brought this in rem civil forfeiture action against Defendants Virtual Currency and $2,061,517.68 in U.S. currency, alleging that the currency constitutes traceable proceeds of the Qakbot ransomware and money-laundering scheme. Potential claimant Rustam Rafailevich Gallyamov has not filed a claim, an answer, or otherwise appeared. The government now moves for default judgment against his interests. For the following reasons, the government's motion is granted.

I.

As alleged in the complaint, Qakbot was a malicious computer software developed and deployed by members of a cybercriminal conspiracy led by Rustam Rafailevich Gallyamov. Since at least 2019, the Qakbot conspirators have infected hundreds of thousands of victims' computers, gaining unauthorized access to install ransomware, steal data, and extort victims.

Ransomware victims typically paid the ransom in Bitcoin, and Gallyamov and his coconspirators received a share of each ransom payment. The conspirators then engaged in multiple transactions—moving the virtual currency through a series of intermediary addresses and stablecoins to conceal the origin of the proceeds—before depositing the currency into the Defendant Virtual Currency wallets and addresses controlled by Gallyamov.

1

The Qakbot conspiracy was disrupted in August 2023 by an international law enforcement action, and the Federal Bureau of Investigation seized the Defendant currency pursuant to multiple warrants. Dkt. No. 1 ¶¶ 5–7. On May 2, 2025, a grand jury indicted Gallyamov for his role in the Qakbot conspiracy, charging him with conspiracy to commit computer fraud and abuse and wire fraud. Case No. 2:25-CR-00340-SB-1, Dkt. No. 1. The indictment includes a forfeiture allegation for all traceable proceeds, including the currency in this case.

The government filed this civil forfeiture action on May 22, 2025, against seized assets consisting of $2,061,517.68 in U.S. dollar equivalent USD Coin traceable to four virtual currency addresses. Dkt. No. 1. Other claimants— Concord Music Group, Inc., DISH Network Corporation, Minto Holdings, Inc., and Marathon Fasteners and Hardware Inc.—have appeared and asserted interests in the assets. Dkt. Nos. 33, 35, 38–41, 49, 51, 59, 70. The clerk's office entered default against Gallyamov on February 27, 2026. Dkt. No. 69. The government seeks default judgment to extinguish the interests of Gallyamov, who has failed to appear.

II.

Before a court may rule on an application for default judgment, it must first determine whether the application complies with Federal Rule of Civil Procedure 55 and the Supplemental Rules for Certain Admiralty and Maritime Claims (Supplemental Rules). *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); Supplemental Rule A(2) (providing that the FRCP applies "except to the extent that they are inconsistent with these Supplemental Rules"); *United States v. Approximately $16,755.00 in U.S. Currency*, No. 1:12-CV-01010, 2013 WL 5718570, at *2 (E.D. Cal. Oct. 18, 2013), *report and recommendation adopted*, No. 1:12-CV-01010, 2013 WL 6198938 (E.D. Cal. Nov. 26, 2013) (applying Supplemental Rules to civil forfeiture default judgment motion). And under Local Rule 55-1, the application for default judgment must set forth: (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that notice of the application has been served on the defaulting party. L.R. 55-1.

The government's motion satisfies the applicable procedural requirements. Process was executed on the Defendant currency by the U.S. Marshals Service on August 26, 2025, pursuant to a warrant issued on May 23, 2025. Dkt. Nos. 8, 56;

2

*see* Supplemental Rule E(4)(a) (requiring marshal to execute process pursuant to warrant).  The government published notice of the civil forfeiture on the official government forfeiture website (www.forfeiture.gov) for 30 consecutive days beginning August 19, 2025.  Dkt. No. 54 (declaration of publication); *see* Supplemental Rule G(4)(a)(iv)(C) (permitting notice by publication through government forfeiture site).  Direct notice was sent to Gallyamov via the Central Authority of the Russian Federation pursuant to a Mutual Legal Assistance Treaty on November 20, 2025.  Dkt. No. 57-4.  Notice was therefore "sent by means reasonably calculated to reach the potential claimant," as required.  Supplemental Rule G(4)(b)(iii)(A), (D); *see United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, 324 F. Supp. 3d 38, 47 (D.D.C. 2018) (finding notice via MLAT sufficient to warrant entry of default judgment).  The government also alleges that Gallyamov is not an infant, an incompetent person, or subject to the Servicemembers Civil Relief Act.  L.R. 55-1.

In accordance with the direct notice sent to Gallyamov, his deadline to file a claim expired on December 29, 2025, and the time to file an answer expired on January 20, 2026.  Dkt. No. 57 (request for clerk's entry of default, detailing service on Gallyamov); *see* Supplemental Rule G(5)(a)(ii), (b) (setting deadlines for claims and responsive pleadings).  Gallyamov failed to file a claim or an answer.  The government also served Gallyamov with notice of this motion, and he has not filed an opposition.  Dkt. No. 61 at 3.

### III.

### A.

Once procedural requirements are met, "[g]ranting or denying a motion for default judgment is a matter within the court's discretion."  *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 919 (C.D. Cal. 2010).  The Court considers the seven factors outlined in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

782 F.2d 1470, 1471–72 (9th Cir. 1986).  Factual allegations—other than those relating to damages—are considered admitted upon default.  Fed. R. Civ. P. 8(b)(6); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

B.

The *Eitel* factors weigh in favor of granting default judgment against Gallyamov.

1.

First, the Court considers the second and third factors:  the merits of the government's substantive claims and the sufficiency of the complaint.  In a civil forfeiture action, the complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  Supplemental Rule G(2)(f).  The government bears the burden of proof to establish, "by a preponderance of the evidence, that the property is subject to forfeiture," and, where the theory is that the property was involved in the commission of a crime, the government must "establish that there was a substantial connection between the property and the offense."  18 U.S.C. § 983(c)(1), (3).

The government alleges that the Defendant currency is subject to forfeiture because it was involved in money laundering transactions (18 U.S.C. §§ 1956, 1957) and is derived from proceeds traceable to computer fraud and abuse (18 U.S.C. § 1030) and wire fraud (18 U.S.C. § 1343).  *See* 18 U.S.C. §§ 981(a)(1)(A), (C), (D) (rendering property involved in violations of §§ 1956, 1957, 1030, or 1343 subject to civil forfeiture).  An individual commits computer fraud when he knowingly transmits a program, code, or command that intentionally causes damage to a computer or transmits a communication containing a demand for money in relation to that damage with the intent to extort.  18 U.S.C. § 1030 (5), (7).  An individual commits wire fraud when he devises a scheme to defraud through false pretenses and executes the scheme by transmitting writings, signs, or signals via wire communications.  18 U.S.C. § 1343.

The uncontested allegations in the complaint are sufficient to establish that Gallyamov conspired to commit computer and wire fraud.  As alleged, he and his coconspirators intentionally transmitted Qakbot malware to gain unauthorized access to hundreds of thousands of computers, ultimately deploying ransomware that encrypted and stole the victims' data.  Dkt. No. 1 ¶¶ 9–10.  Utilizing interstate wire communications, they extorted the victims for payments in exchange for unlocking their systems or preventing the public dissemination of their private

4

data. *Id.* ¶¶ 11–12. The complaint establishes a substantial connection between the Defendant currency and these alleged offenses by detailing how the victims' ransom payments were funneled through a series of intermediary addresses and stablecoins to conceal their origin and how federal investigators traced the funds through the review of blockchain transactions and virtual asset service records. *Id.* ¶¶ 17–27. The allegations, therefore, sufficiently demonstrate that the government could meet its burden at trial to prove the funds constitute proceeds traceable to violations of §§ 1030 and 1343, subjecting them to forfeiture.

2.

The remaining *Eitel* factors also favor default judgment.

The amount of money at stake, although substantial (over $2 million), is directly tied to the traceable proceeds of the alleged extortion and money-laundering scheme. The amount is thus tailored and proportional to the specific misconduct. *See United States v. $136,800 in U.S. Currency*, No. 2:19-CV-05893-CAS, 2020 WL 919152, at *5 (C.D. Cal. Feb. 24, 2020) (finding the fourth *Eitel* factor favored default judgment where funds were substantial but tied to federal law violations).

The government and the victim-claimants would be prejudiced if default judgment is not entered against Gallyamov, as it would delay resolution and the distribution of the assets to the victims of the ransom attacks. *See United States v. Approximately $194,752 in U.S. Currency*, No. 11-CV-1400, 2011 WL 3652509, at *3 (N.D. Cal. Aug. 19, 2011) (finding possibility of prejudice factor satisfied where government moved for default judgment in civil asset forfeiture case because "absent some resolution, the United States would be without a remedy"). Gallyamov, as an indicted defendant in the Qakbot conspiracy, is in a distinct position from other claimants, who are the alleged victims of the conspiracy. Adjudicating his interests now is therefore appropriate so the remaining victim-claimants may seek resolution of their claims. *See* Fed. R. Civ. P. 54 (permitting entry of judgment against fewer than all claims or parties if the court "determines that there is no just reason for delay").

Finally, because Gallyamov has not appeared or responded to the complaint, there is no dispute of material fact regarding his interests. *See United States v. $99,870.00 in U.S. Currency*, No. 2:15-CV-04663-ODW, 2015 WL 7194295, at *4 (C.D. Cal. Nov. 16, 2015) (so finding). Nor is there evidence to suggest that his default results from excusable neglect, given that he was served with both the complaint and this motion. *See Craigslist, Inc. v. Kerbel*, No. 11-CV-3309, 2012

5

WL 3166798, at *8 (N.D. Cal. Aug. 2, 2012) (finding excusable neglect unlikely "when Plaintiffs served not only the summons and complaint, but also the request for entry of default on the Defendant but still received no response").  Although public policy favors deciding cases on the merits, Gallyamov's failure to appear renders adjudication of his claimed interests on the merits impossible.

*     *     *     *

In sum, the *Eitel* factors weigh in favor of granting default judgment.

IV.

For the foregoing reasons, the government's motion for default judgment is granted.  The Court therefore orders as follows:

1.  A default judgment is entered against the interests of potential claimant Rustam Rafailevich Gallyamov in the Defendant currency.

2.  Any and all interests of Rustam Rafailevich Gallyamov in the Defendant currency are hereby extinguished and forfeited to the United States of America.

This judgment does not adjudicate or extinguish the claims filed by Concord Music Group, Inc., DISH Network Corporation, Minto Holdings, Inc., and Marathon Fasteners.

Date: April 3, 2026

_____
Stanley Blumenfeld, Jr.
United States District Judge

6